1  DONALD F. ZIMMER, JR. (State Bar No. 112279)
2  KRISTA L. COSNER (State Bar No. 213338)
   DRINKER BIDDLE & REATH LLP
3  50 Fremont Street, 20th Floor
   San Francisco, California  94105
4  Telephone: (415) 591-7500
   Facsimile: (415) 591-7510

5  Attorneys for Defendants
6  SMITHKLINE BEECHAM CORPORATION dba
   GLAXOSMITHKLINE and McKESSON
7  CORPORATION

8

9                  UNITED STATES DISTRICT COURT

10                 NORTHERN DISTRICT OF CALIFORNIA

11                    SAN FRANCISCO DIVISION

12  DOROTHY BONE; DAVID COOK;              Case No.  CV 07 5886
    JESUS COTA; JO ELLEN GARNER;
13  BARRON GATTA; CATHY GRAY;              NOTICE OF REMOVAL AND
    FRANKLIN JENKINS; GREGORY              REMOVAL ACTION UNDER 28 U.S.C.
14  RODRIGUEZ; ROBERT RODRIGUEZ;           § 1441(B) (DIVERSITY) and 28 U.S.C. §
    ROGER TAVARES; LAVIOLA                 1441(C) (FEDERAL QUESTION) OF
15  TOWNSEND,                              DEFENDANT SMITHKLINE
                                           BEECHAM CORPORATION d/b/a
16                 Plaintiffs,             GLAXOSMITHKLINE

17         v.

18  SMITHKLINE BEECHAM
    CORPORATION dba
19  GLAXOSMITHKLINE and McKESSON
    CORPORATION,
20
                   Defendants.
21

22

23  **TO THE CLERK OF THE COURT:**

24         Defendant Smithkline Beecham Corporation d/b/a GlaxoSmithKline ("GSK"),

25  hereby removes to this court, the state action described below.  Removal is warranted

26  under 28 U.S.C. § 1441 because this is an action over which this Court has original

27  jurisdiction under 28 U.S.C. §§ 1331 and 1332.

28

DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA  94105

NOTICE OF REMOVAL AND REMOVAL                                    CASE NO.

# I.    **BACKGROUND**

1.    On October 18, 2007, Plaintiffs Dorothy Bone, David Cook, Jesus Cota, Jo Ellen Garner, Barron Gatta, Cathy Gray, Franklin Jenkins, Gregory Rodriguez, Robert Rodriguez, Roger Tavares, and Laviola Townsend ("Plaintiffs"), represented by The Miller Firm of Orange, Virginia, commenced this action in the Superior Court of the State of California for the County of San Francisco.  A true and correct copy of the Complaint in the action is attached as Exhibit "A " to the Declaration of Krista L. Cosner in Support of Notice of Removal and Removal Action under 28 U.S.C. § 1441(b) (Diversity) and 28 U.S.C. § 1441(c) (Federal Question) of Defendant SmithKline Beecham Corporation dba GlaxoSmithKline (hereinafter "Cosner Decl.").

2.    Defendants filed their answer to Plaintiffs' Complaint on November 19, 2007. *See* Cosner Decl. Exh. B.  There have been no additional proceedings in the state court action.  Cosner Decl. ¶ 3.

3.    This is one of many cases that have been filed recently in both federal and state court across the country involving the prescription drug Avandia®.  Cosner Decl. ¶ 6.  Plaintiffs' counsel, The Miller Firm, has filed Avandia cases in both state and federal courts, but only in the cases filed in California has The Miller Firm named McKesson, or any distributor, as a defendant.  Cosner Decl. ¶ 7.

4.    On October 16, 2007, the Judicial Panel on Multidistrict Litigation ("JPML") issued an order directing that then-pending Avandia-related cases be transferred and coordinated for pretrial proceedings in the United States District Court for the Eastern District of Pennsylvania, before the Honorable Cynthia M. Rufe, pursuant to 28 U.S.C. § 1407.  *See* Transfer Order, *In re Avandia Marketing, Sales Practices and Products Liability Litigation*, MDL 1871 (E.D.P.A.) (a true and correct copy of which is attached as Exhibit "C" to Cosner Decl.).  Additional Avandia-related cases pending in federal court, which are common to the actions previously transferred to the Eastern District of Pennsylvania and assigned to Judge Rufe, are treated as potential tag-along actions.  *See id.*; *see also* Rules 7.4 and 7.5, R.P.J.P.M.L. 199 F.R.D. 425, 435-36 (2001).

DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA  94105

SF1\392029\1          NOTICE OF REMOVAL AND REMOVAL                                         CASE NO.

1    GSK intends to seek the transfer of this action to that Multidistrict Litigation, *In re*

2    *Avandia Marketing, Sales Practices and Products Liability Litigation*, MDL 1871, and

3    shortly will provide the JPML with notice of this action pursuant to the procedure for

4    "tag along" actions set forth in the rules of the JPML. Cosner Decl. ¶ 8.

5         5.     As more fully set forth below, this case is properly removed to this Court

6    pursuant to 28 U.S.C. § 1441 because GSK has satisfied the procedural requirements for

7    removal and this Court has subject matter jurisdiction over this action pursuant to 28

8    U.S.C. §§ 1331 and 1332.

## II.     DIVERSITY JURISDICTION

10         6.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332

11    because this is a civil action in which the amount in controversy exceeds the sum of

12    $75,000, exclusive of costs and interest, and is between citizens of different states.

13        A.      **A.**    **Diversity Of Citizenship**

14         7.     The Complaint names eleven individual plaintiffs. *See* Cosner Decl., Exh.

15    A, ¶¶ 10-20:

16         a.     Plaintiff Dorothy Bone alleges that she is a "resident" of the State of

17    Alabama. Accordingly, at the time this action was commenced, she was a citizen of the

18    State of Alabama. *Id.* at ¶ 10.

19         b.     Plaintiff David Cook alleges that he is a "resident" of the State of

20    Ohio. Accordingly, at the time this action was commenced, he was a citizen of the State

21    of Ohio. *Id.* at ¶ 11.

22         c.     Plaintiff Jesus Cota alleges that he is a "resident" of the State of

23    California. Accordingly, at the time this action was commenced, he was a citizen of the

24    State of California. *Id.* at ¶ 12.

25         d.     Plaintiff Jo Ellen Garner alleges that she is a "resident" of the State

26    of Nevada. Accordingly, at the time this action was commenced, she was a citizen of the

27    State of Nevada. *Id.* at ¶ 13.

28         e.     Plaintiff Barron Gatta alleges that he is a "resident" of the State of

DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105

3

1    Pennsylvania. Accordingly, at the time this action was commenced, he was a citizen of

2    the State of Pennsylvania. *Id.* at ¶ 14.

3            f.     Plaintiff Cathy Gray alleges that she is a "resident" of the State of

4    Louisiana. Accordingly, at the time this action was commenced, she was a citizen of the

5    State of Louisiana. *Id.* at ¶ 15.

6            g.     Plaintiff Franklin Jenkins alleges that he is a "resident" of the State

7    of Georgia. Accordingly, at the time this action was commenced, he was a citizen of the

8    State of Georgia. *Id.* at ¶ 16.

9            h.     Plaintiff Gregory Rodriguez alleges that he is a "resident" of the

10   State of Illinois. Accordingly, at the time this action was commenced, he was a citizen of

11   the State of Illinois. *Id.* at ¶ 17.

12           i.     Plaintiff Robert Rodriguez alleges that he is a "resident" of the State

13   of Texas. Accordingly, at the time this action was commenced, he was a citizen of the

14   State of Texas. *Id.* at ¶ 18.

15           j.     Plaintiff Roger Tavares alleges that he is a "resident" of the State of

16   Hawaii. Accordingly, at the time this action was commenced, he was a citizen of the

17   State of Hawaii. *Id.* at ¶ 19.

18           k.     Plaintiff Laviola Townsend alleges that she is a "resident" of the

19   State of Illinois. Accordingly, at the time this action was commenced, she was a citizen

20   of the State of Illinois. *Id.* at ¶ 20.

21        8.     GSK is, and was at the time Plaintiffs commenced this action, a corporation

22   organized under the laws of the Commonwealth of Pennsylvania with its principal place

23   of business in Philadelphia, Pennsylvania, and therefore, is a citizen of Pennsylvania for

24   purposes of determining diversity. 28 U.S.C. § 1332(c)(1). Cosner Decl. ¶ 9.

25        9.     For the reasons set forth below, the remaining named defendant –

26   McKesson, a Delaware corporation, with its principal place of business in San Francisco,

27   California – is fraudulently joined. Therefore, its citizenship must be ignored for the

28   purpose of determining the propriety of removal. *See McCabe v. General Foods*, 811

DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105

SF1\392029\1

NOTICE OF REMOVAL AND REMOVAL

4

CASE NO.

1  F.2d 1336, 1339 (9th Cir. 1987). *See* Cosner Decl. Exh. D. ¶ 3.

2      10.    Moreover, the Pennsylvania Plaintiff, Barron Gatta, has also been

3  misjoined in an attempt to defeat diversity. *See In re Diet Drugs*, 294 F. Supp. 2d 667,

4  673 (E.D. Pa. 2003) ("the same principles of fraudulent joinder apply where a plaintiff is

5  improperly joined with another plaintiff so as to defeat diversity jurisdiction") (citations

6  omitted); *In re Rezulin Products Liab. Litig.*, 168 F.Supp. 2d. 136, 146 (S.D.N.Y. 2001).

7      11.    Because McKesson has been fraudulently joined, its presence in the lawsuit

8  should be ignored for purposes of determining diversity, and, because the joinder of the

9  Pennsylvania Plaintiff would destroy complete diversity, this Court should sever the

10  claims of the non-diverse Pennsylvania Plaintiff and retain jurisdiction over the claims of

11  the remaining diverse Plaintiffs.[1]  *See McCabe*, 811 F.2d at 1339; *see also In re Rezulin*

12  *Products Liab. Litig.*, Nos. 00 Civ. 2843 (LAK), MDL 1348, 01 Civ. 4010, 2002 WL

13  31496228 at *1 (S.D.N.Y.).

14  **B.    The Amount In Controversy Requirement Is Satisfied**

15      12.    It is apparent on the face of the Complaint that Plaintiffs seek an amount in

16  controversy in excess of $75,000, exclusive of costs and interest.

17      13.    Plaintiffs allege that, as a result of their Avandia use, they "have suffered

18  heart injury, excessive fluid retention, fluid-overload disease, liver damage, liver failure,

19  stroke and severe injury to the heart leading to cardiac arrest," and have sustained,

20  "physical and financial damages including pain and suffering." *See* Cosner Dec. Exh. A,

21  43:17-20. They further allege severe and permanent physical injuries. *See id. at* 60:20.

22      14.    Plaintiffs claim to have "suffered extensive monetary and pecuniary losses

23  and other compensatory damages," and to have "incurred and paid out necessary medical,

24  hospital, and concomitant expenses," which they allege will continue into the future. *See*

25

26      [1] Moving defendant notes that the citizenship of the California plaintiff is not diverse from that of
    McKesson. However, as set forth, the citizenship of McKesson must be ignored because McKesson is a
27  fraudulently joined defendant. Proper ignorance of McKesson's citizenship renders the California
    plaintiff diverse.
28

DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105

1    Cosner Decl. Exh. A, 51:2-4, 60:22-23.

2        15.    Plaintiffs seek actual, punitive and exemplary damages. *See* Cosner Decl.

3    Exh. A, 52:8, 60:3-4.

4        16.    Punitive damages are included in the calculation of the amount in

5    controversy. *See Bell v. Preferred Life Assurance Society*, 320 U.S. 238, 240 (1943).

6        17.    Given the allegations set forth above, the face of the Complaint makes clear

7    that Plaintiffs seek in excess of $75,000, exclusive of interest and costs. *See Simmons v.*

8    *PCR Tech.*, 209 F. Supp. 2d 1029, 1031 (N.D. Cal. 2002).

9    **C.    The Citizenship Of McKesson Must Be Ignored Because McKesson Is**

10   **Fraudulently Joined**

11       18.    A defendant is fraudulently joined, and its presence in the lawsuit is

12   ignored for purposes of determining diversity, "if the plaintiff fails to state a cause of

13   action against the resident defendant, and the failure is obvious according to the settled

14   rules of the state." *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir.

15   2001); *see also Hamilton Materials, Inc. v. Dow Chemical Corporation*, ____ F.3d. ___,

16   (9th Cir. 2007), 2007 WL 2080179 at *1 (9th Cir. 2007).

17       19.    McKesson is fraudulently joined because Plaintiffs have failed to make any

18   material allegations against it. *See Brown v. Allstate Insur.*, 17 F. Supp. 2d 1134, 1137

19   (S.D. Cal. 1998) (finding in-state defendants fraudulently joined where "no material

20   allegations against [the in-state defendants] are made"). Plaintiffs specifically allege that

21   Avandia was created and marketed by GSK; that GSK had longstanding knowledge of

22   Avandia-related dangers which GSK failed to adequately warn and disclose to

23   consumers; that GSK concealed, suppressed and failed to disclose these referenced

24   dangers; that GSK has represented and has continued to represent that it manufactures

25   and/or sells safe and dependable pharmaceuticals; that GSK has failed to adequately warn

26   or inform consumers, such as Plaintiffs or Plaintiffs' prescribing physicians of known

27   defects in Avandia; and that as a result of GSK's omissions and/or misrepresentations,

28   Plaintiffs ingested Avandia. *See* Cosner Decl. Exh. A, at ¶¶ 31:13, 35:20-22, 36:5-6,

DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA  94105

SF1\392029\1    NOTICE OF REMOVAL AND REMOVAL    CASE NO.

37:9-10, 42:12-13, 43:17-18.

20.    Plaintiffs fail to make any specific material assertions against McKesson, and do not allege that they ingested Avandia that was distributed by McKesson, compelling the conclusion that Plaintiffs have fraudulently joined McKesson in an attempt to defeat diversity jurisdiction. *See e.g., Lyons v. American Tobacco Co.*, No. Civ. A. 96-0881-BH-S, 1997 U.S. Dist. LEXIS 18365 (S.D. Ala. 1997) (holding that there is "no better admission of fraudulent joinder of [the resident defendant]" than the failure of the plaintiff "to set forth any specific factual allegations" against them). Plaintiffs cannot cure this deficiency by simply relying on allegations directed toward "Defendants" or GSK alone.

21.    In the body of the Complaint, Plaintiffs assert claims of: (1) negligence; (2) negligent failure to warn; (3) negligence per se; (4) negligent misrepresentation; (5) breach of express warranty; (6) breach of implied warranty; (7) strict products liability – defective design; (8) strict products liability – manufacturing and design defect; (9) strict products liability – failure to adequately warn; (10) fraudulent misrepresentation; and (11) violations of California Unfair Trade Practices and Consumer Protection Law.  In these allegations, Plaintiffs aver that collectively, "Defendants" or "Defendants GSK and McKesson," defectively designed and manufactured the product; concealed knowledge of unreasonably dangerous risks associated with the product; failed to conduct adequate and sufficient pre-clinical testing and post-marketing surveillance of the product; failed to provide FDA with complete and adequate information regarding the product; failed to warn consumers and/or their health care providers of certain risks associated with the product; failed to utilize adequate and non-misleading labeling; and made affirmative misrepresentations and omissions regarding the risks associated with taking Avandia.  All of these claims are substantively based on the design and manufacture of the product, failure to warn, fraudulent concealment, and inadequate pre-clinical testing and post-marketing surveillance.  As a wholesale distributor of Avandia, McKesson played no role in its testing, marketing or advertising.  All McKesson did was pass along unopened

1    boxes of Avandia, in unadulterated form, to hospitals and other businesses in the

2    healthcare industry. *See* Cosner Decl. Exh. D, ¶¶ 6-7.[2]

3        22.    Further, based on the "learned intermediary" doctrine, McKesson bore no

4    duty to warn Plaintiffs. The "learned intermediary" doctrine, the foundation of

5    prescription drug product liability law, provides that the duty to warn about a drug's risks

6    runs from the manufacturer to the physician (the "learned intermediary"), and then from

7    the physician to the patient. *See Brown v. Superior Court (Abbott Labs.)*, 44 Cal. 3d

8    1049, 1061-62, n.9 (1988); *Carlin v. Superior Court (Upjohn Co.)*, 13 Cal. 4th 1104, 1116

9    (1996). It is the physician, and only the physician, who is charged with prescribing the

10   appropriate drug and communicating the relevant risks to the patient. *See Brown*, 44 Cal.

11   3d at 1061-62.

12       23.    GSK and the FDA prepared the information to be included with the

13   prescription drug, Avandia, with the FDA having final approval of the information that

14   could be presented. Once the FDA has determined the form and content of the

15   information, it is a violation of federal law to augment the information. *See* 21 U.S.C.

16   §331(k) (prohibiting drug manufacturers and distributors from causing the "alteration,

17   mutilation, destruction, obliteration, or removal of the whole or any part of the labeling"

18   of an FDA-approved drug held for sale); *Brown v. Superior Court*, 44 Cal.3d 1049, 1069

19   n.12 (noting that the FDA regulates the testing, manufacturing, and marketing of drugs,

20   including the content of their warning labels). Therefore, any safety and warning

21   information McKesson had about Avandia would have come from GSK in the form of

22   FDA-approved packaging and labeling. McKesson could not change the labeling it was

23   _____

24   [2] The Declaration of McKesson's representative, Greg Yonko may be considered by the Court in

25   determining whether McKesson is fraudulently joined. *Maffei v. Allstate California Ins. Co.*, 412
     F.Supp.2d 1049 (E.D. Cal. 2006) ("[t]he court may pierce the pleadings, consider the entire record, and

26   determine the basis of joinder by any means available") *citing Lewis v. Time, Inc.*, 83 F.R.D. 455 (E.D.
     Cal. 1979) ("it is well settled that upon allegations of fraudulent joinder...federal courts may look beyond

27   the pleadings to determine if the joinder...is a sham or fraudulent device to prevent removal"). *See also
     Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318-19 (9th Cir. 1998) (evidence may be presented by the

28   removing party that there is no factual basis for the claims pleaded against the local defendant).

DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105

1    given by GSK as approved by the FDA without violating federal law.  No duty can be

2    found where it requires a party to violate the law to fulfill it.

3        24.    As such, given the lack of a causal connection between the injuries alleged

4    by Plaintiffs and McKesson's conduct, as well as the absence of any legal or factual basis

5    for Plaintiffs' claims against McKesson, McKesson's joinder is fraudulent and its

6    citizenship should be ignored for purposes of determining the propriety of removal.

7     **D.    The Citizenship Of The Non-Diverse Plaintiff Must Be Ignored
8        Because Plaintiff Has Been Misjoined**

9        25.    As described above, Plaintiffs in this case include Barron Gatta, who is a

10    citizen of Pennsylvania and therefore non-diverse to defendant GSK.

11        26.    Fed. R. Civ. P. 21 provides that "[p]arties may be dropped or added by

12    order of the court . . . at any stage of the action and on such terms as are just."  "[C]ourts

13    may sever misjoined parties when their claims do not arise out of the same transaction,

14    occurrence, or series of transactions or occurrences, and the claims will not involve a

15    question of law or fact common to all parties."  *In re Diet Drugs Prods. Liab. Litig.*,

16    MDL No. 1203, 04-20099, 2004 WL 2095451 (E.D. Pa. Sept. 20, 2004) (citing, *inter*

17    *alia*, Fed. R. Civ. P. 20).

18        27.    A court may ignore the citizenship of non-diverse plaintiffs who fail to

19    "make [] out at least one claim that arises out of the same transaction or occurrence or

20    series of transactions or occurrences as the other plaintiffs."  *In re Rezulin*, 2002 WL

21    31496228 at *1; *see also In re Diet Drugs*, 294 F. Supp. 2d 667, 673 (E.D. Pa. 2003)

22    ("[e]ven if a non-diverse plaintiff may have a valid cause of action against a defendant,

23    that plaintiff may not prevent removal based on diversity of citizenship if there is no

24    reasonable basis for the joinder of that non-diverse plaintiff with the other plaintiffs.").

25    In the context of pharmaceutical product liability litigation, "the joinder of plaintiffs who

26    have no connection to each other except the fact that they ingested [the same product]

27    constitutes misjoinder."  *In re Rezulin*, 2002 WL 31496228 at *1.

28        28.    Here, Plaintiffs attempt to join eleven individuals from ten different states,

DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA  94105

9

NOTICE OF REMOVAL AND REMOVAL                                  CASE NO.

1    each with his or her distinctive claim, in one action.  Except for the allegation that each

2    ingested Avandia, Plaintiffs assert no other relationship to one another.  They do not

3    allege that they received Avandia from the same physician, hospital or direct source.

4    They do not allege a common condition for which they were prescribed Avandia, and

5    they draw no similarities among their lengths of exposure to Avandia.

6         29.    Considering their geographic diversity and the absence of any factual nexus

7    between them, Plaintiffs' attempted joinder in this case will frustrate both the underlying

8    purpose of the joinder rules and GSK's right to removal.

9         30.    As Plaintiffs have been misjoined, and the misjoinder of the Pennsylvania

10   Plaintiff destroys diversity, this Court should sever the action brought by the

11   Pennsylvania Plaintiff for the purposes of maintaining GSK's right to removal of the

12   actions involving the diverse Plaintiffs.[3]  *See In re Rezulin*, 2002 WL 31496228 at *1

13   (finding Oregon, New York, and New Jersey plaintiffs misjoined and severing claims of

14   New York and New Jersey plaintiffs "so as to preserve the defendants' right to removal

15   of the remainder of the action").

16   ## III.   FEDERAL QUESTION JURISDICTION

17        31.    This Court has federal question jurisdiction over Plaintiffs' claims  under

18   28 U.S.C. § 1331 and the principles set forth in *Grable & Sons Metal Prods., Inc. v.*

19   *Darue Eng'g & Mfg.*, 125 S. Ct. 2363 (2005).

20        32.    As more fully explained below, Plaintiffs have made violations of federal

21   law critical elements of several of their claims.

22   ### A.   Plaintiffs' Claims Require Construction and Application of the FDCA and Its Implementing Regulations

23

24        33.    Count III of Plaintiffs' Complaint, "Negligence Per Se," explicitly alleges

25   that defendants violated federal law.  Plaintiffs claim, *inter alia,* that "[d]efendants

---

26       [3] Moving defendant reserves the right to ask this Court to sever the claims of the remaining

27   plaintiffs so that each plaintiff's claim may be tried separately.  Moving defendant restates that the
     presence of the California plaintiff does not destroy diversity when the citizenship of McKesson, the

28   fraudulently joined defendant, is ignored.

DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA  94105

SF1\392029\1    NOTICE OF REMOVAL AND REMOVAL    CASE NO.

1    "violated the Federal Food, Drug and Cosmetic Act, 21 U.S.C. Section 301 *et seq.*,

2    related amendments and codes and federal regulations provided thereunder, and other

3    applicable laws, statutes, and regulations." *See* Cosner Decl. Exh A, ¶ 64.

4        34.    Plaintiffs further claim that "[d]efendants' acts constituted an adulteration

5    and/or misunderstanding *[sic]* as defined by the Federal Food, Drug and Cosmetic Act,

6    21 U.S.C. § 331. . . ." *See* Cosner Decl. Exh A, ¶ 66.

7        35.    Moreover, Count II of the Plaintiffs' Complaint, "Negligent Failure to

8    Adequately Warn," and Count IX, "Strict Products Liability – Failure to Adequately

9    Warn," also require construction and application of the FDCA and implementing federal

10    regulations, which govern approval of prescription drugs and regulate prescription drug

11    manufacturers' public and promotional statements, including all aspects of warnings and

12    labeling.

13        36.    As a currently-marketed prescription drug, Avandia is subject to extensive

14    regulation by the FDA.  The FDCA requires the FDA to ensure that "drugs are safe and

15    effective" for their intended uses, 21 U.S.C. § 393(b)(2)(B), in part by "promptly and

16    officially reviewing clinical research and taking appropriate action on the marketing of

17    regulated products." 21 U.S.C. § 393(b)(1).  The Secretary of the FDA has the authority

18    to promulgate regulations to enforce the FDCA, which are codified in the *Code of*

19    *Federal Regulations*, 21 C.F.R. § 200, *et seq.  See* 21 U.S.C. § 371(a).

20        37.    To accomplish its purpose, the FDA maintains a Center for Drug

21    Evaluation and Research (the "CDER").  The CDER regulates pharmaceutical

22    companies' development, testing and research, and manufacture of drugs.  The CDER

23    examines data generated by these companies to conduct a risk/benefit analysis and make

24    an approval decision.  The CDER also ensures truthful advertising for prescription drugs,

25    in part by approving Package Inserts that properly outline benefit and risk information.

26    Once drugs are marketed, the CDER continues to monitor them for unexpected health

27    risks that may require public notification, a change in labeling, or removal of the product

28    from the market.  In short, the CDER evaluates and monitors the effectiveness and safety

1    of prescription drugs.  *See* http://www.fda.gov/cder/about/faq/default.htm.

2         38.    Promotional communications to physicians about Avandia are contained

3    within, and restricted by, warning, labeling, and promotional materials, such as the

4    Package Insert, that are approved and monitored by the FDA to ensure the provision of

5    accurate information about the drug's respective risks and benefits.  Under federal

6    regulations, even claims in promotional labeling or advertising must be consistent with

7    approved labeling.  21 C.F.R. § 202.1(e)(4) (2005).

8         39.    The FDA's responsibility to regulate prescription drugs sold in the United

9    States, and to enforce laws with respect to such drugs, inclusive of the precise content

10   and format of prescription drug labeling (*e.g.*, the instructions, warning, precautions,

11   adverse reaction information provided by manufacturers, and marketing materials), is

12   plenary and exclusive.  *See* 21 U.S.C. § 301, *et seq*

13        40.    Plaintiffs have explicitly alleged violations of federal law in their

14   "Negligence Per Se" claim, and have made alleged violations of federal law a critical

15   element of their "Negligent Failure to Adequately Warn" and "Strict Products Liability –

16   Failure to Adequately Warn" claims.  Accordingly, Plaintiffs' claims necessarily raise

17   substantial federal questions by requiring the Court to construe and apply the FDCA and

18   its implementing regulations.

19        **B.    Federal Control of Drug Labeling and Warning**

20        41.    On January 24, 2006, the FDA announced a rule that includes a detailed

21   and emphatic statement of the FDA's intention that its regulation and  approval of

22   prescription drug labeling preempt most state law claims related to the adequacy of

23   prescription drug warnings because such claims frustrate "the full objectives of the

24   Federal law."  *See* Requirements on Content and Format of Labeling for Human

25   Prescription Drug and Biologic Products, 71 Fed. Reg. 3922, 3934 (Jan. 24, 2006) ("FDA

26   believes that under existing preemption principles, FDA approval of labeling under the

27   act. . . . preempts conflicting or contrary State law.").  *See also In re Bextra and*

28   *Celebrex Marketing*, 2006 WL 2374742 (N.D. Cal., August 16, 2006) (Celebrex

1   decision); *In re Bextra and Celebrex Marketing,* 2006 WL 2472484 (N.D. Cal., August

2   24, 2006) (Bextra decision);

3       42.   Plaintiffs allege that GSK failed to disclose certain risks of Avandia. *See*

4   *e.g.,* Cosner Decl. Exh. A, ¶ 35:21-2. This allegation necessarily requires Plaintiffs to

5   establish that the FDA, which has exclusive jurisdiction over the labeling of drugs, would

6   have approved the warning the Plaintiffs allege should have been given.

7       43.   Accordingly, there is a substantial federal question with respect to whether

8   Plaintiffs can claim that GSK violated state law in light of the FDA's control of

9   Avandia's labeling and warning and its position on conflict preemption.

10      C.    **The Federal Interest In Providing A Forum**

11      44.   The federal government has a strong interest in having a federal court

12  decide several of the issues in this case. Among these issues are:

13          a.    whether any conduct of GSK violated any federal laws or regulations

14                related to the labeling and marketing of Avandia; and

15          b.    whether the FDA-approved Avandia label was false and misleading,

16                as alleged by Plaintiff, and whether a state may impose liability on

17                GSK for not providing more information on xx, as Plaintiff

18                contends GSK should have done.

19      45.   Plaintiffs' claims may be vindicated or defeated only by construction of

20  federal statutes and regulations. The availability of a federal forum to protect the

21  important federal interests at issue is therefore consistent with *Grable,* and determination

22  by a federal court of the substantial and disputed federal issues that lie at the heart of this

23  case would not "disturb any congressionally approved balance of federal and state

24  judicial responsibilities." *Grable,* 125 S. Ct. at 2368.

25  **IV.   CONFORMANCE WITH PROCEDURAL REQUIREMENTS**

26      46.   This Court has jurisdiction over this matter based on federal question and

27  diversity of citizenship, and the present lawsuit may be removed from the Superior Court

28  of the State of California for the County of San Francisco, and brought before the United

DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105

13

1    States District Court for the Northern District of California pursuant to 28 U.S.C. §§

2    1331, 1332 and 1441.

3        47.    Service of the Complaint was made upon GSK on October 25, 2007.

4    Cosner Decl. ¶ 10.  On October 24, 2007, McKesson was served with Plaintiffs'

5    Complaint. *See* Cosner Decl. Exh. D, ¶ 4.  Therefore, this Removal has been timely filed

6    within 30 days of service, pursuant to 28 U.S.C. § 1446(b).

7        48.    All of the properly joined and served defendants consent to this removal.

8    Although McKesson's consent to remove is not necessary because it is fraudulently

9    joined, McKesson nonetheless consents to removal. *See* Cosner Decl. Exh. D, ¶ 5. *See*

10   *also, e.g., Easley v. 3M Company, et al.*, 2007 WL 2888335 (N.D. Cal. 2007) *citing*

11   *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1193 n.1 (9th Cir. 1988).

12       49.    The United States District Court for the Northern District of California is

13   the federal judicial district encompassing the Superior Court of the State of California for

14   the County of San Francisco, where this suit was originally filed.  Venue therefore is

15   proper in this district under 28 U.S.C. § 1441(a).

16       50.    Pursuant to the provisions of 28 U.S.C §1 446(d), GSK will promptly file a

17   copy of this Notice of Removal with the clerk of the Superior Court of the State of

18   California for the County of San Francisco, where this suit was originally filed.

19       51.    Defendant reserves the right to amend or supplement this Notice of

20   Removal.

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

1    **WHEREFORE**, GSK respectfully removes this action from the Superior Court of

2    the State of California for the County of San Francisco to the United States District Court

3    for the Northern District of California, pursuant to 28 U.S.C. § 1441.

4

5    Dated: November 20, 2007                    DRINKER BIDDLE & REATH LLP

6

7    _____
     DONALD F. ZIMMER, JR.
     KRISTA L. COSNER

8
     Attorneys for Defendants
9    SMITHKLINE BEECHAM
     CORPORATION dba
10   GLAXOSMITHKLINE and McKESSON
     CORPORATION

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA  94105

SFI\392029\1

NOTICE OF REMOVAL AND REMOVAL

15

CASE NO.