1  GIRARDI | KEESE
   1126 Wilshire Blvd.
2  Los Angeles, CA 90017
3  (213) 977-0211
   FAX (213) 481-1554
4  THOMAS V. GIRARDI - BAR NO. 36603
   JAMES G. O'CALLAHAN, STATE BAR NO. 126975
5
6  Plaintiffs Liaison Counsel
7
8
9              SUPERIOR COURT OF THE STATE OF CALIFORNIA
10                      COUNTY OF LOS ANGELES
11 Coordination Proceeding Special Title (Rule 1550(b))
12
13 **This Document Applies to All**        )  CASE NO. JCCP No. 4247
                                           )
14 **VIOXX ® CASES**                       )  Assigned to the Honorable Victoria
                                           )  Chaney, Department 324
15                                         )
                                           )  NOTICE OF RULING
16 _____)
17 TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:
18
          Pursuant to the court's minute order, attached hereto is a copy of the court's revised ruling
19
   pertaining to the distributor defendant's demurrer in the above-captioned matter.
20
   Dated: May 22, 2006
21                                              GIRARDI AND KEESE
22
                                          By:  /s/ James G. O'Callahan
23                                              James G. O'Callahan
                                                Plaintiffs' Liaison Counsel
24
25
26
27
28

                                           -1-

EXHIBIT 3
-37-

Vince F71

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 05/16/06                                              DEPT. 324

HONORABLE VICTORIA CHANEY          JUDGE   E. SABALBURO   DEPUTY CLERK

HONORABLE #7                  JUDGE PRO TEM              ELECTRONIC RECORDING MONITOR

F. ROJAS, C.A.    Deputy Sheriff    NONE                 Reporter

JCCP4247                                    Plaintiff Counsel

COORDINATION PROCEEDING SPECIAL
TITLE RULE (1550 (b))                       Defendant Counsel

VIOXX Cases

RECEIVED MAY 17 2006 GIRARDI & KEESE

NO APPEARANCES

**NATURE OF PROCEEDINGS:**

REVISED RULING ON SUBMITTED MATTER HEARD APRIL 10, 2006

The Court hereby makes its revised ruling pursuant to the "REVISED RULING ON REQUEST FOR RECONSIDERATION" as signed and filed this date.

On its own motion the court GRANTS reconsideration of its ruling of March 3, 2006 in which it sustained the distributor defendants' demurrer to plaintiffs' cause of action for strict liability--failure to warn. Upon reconsideration, the demurrer is OVERRULED.

Counsel James G. O'Callahan is ordered to serve a copy of the court's ruling on all parties.

CLERK'S CERTIFICATE OF MAILING/
NOTICE OF ENTRY OF ORDER

I, the below named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that this date I served Notice of Entry of the above minute order of 5-16-2006 upon each party or counsel named below by depositing in the United States mail at the courthouse in Los Angeles, California, one copy of the original entered herein in a separate sealed envelope for each, addressed as shown below with the postage thereon fully prepaid.

Page   1 of   2    DEPT. 324

MINUTES ENTERED
05/16/06
COUNTY CLERK

EXHIBIT 3
-38-

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | | |
|---|---|---|
| DATE: 05/16/06 | | DEPT. 324 |
| HONORABLE VICTORIA CHANEY JUDGE | E. SABALBURO | DEPUTY CLERK |
| HONORABLE #7 JUDGE PRO TEM | | ELECTRONIC RECORDING MONITOR |
| F. ROJAS, C.A. Deputy Sheriff | NONE | Reporter |

| | |
|---|---|
| JCCP4247<br><br>COORDINATION PROCEEDING SPECIAL TITLE RULE (1550 (b))<br><br>VIOXX Cases | Plaintiff Counsel<br><br>Defendant Counsel<br><br>NO APPEARANCES |

**NATURE OF PROCEEDINGS:**

Date: 5-16-2006

John A. Clarke, Executive Officer/Clerk

By: _[signature]_
    E. Sabalburo

James G. O'Callahan
GIRARDI KEESE
1126 Wilshire Blvd.
Los Angeles, CA 90017

Page  2 of  2    DEPT. 324

| MINUTES ENTERED |
|---|
| 05/16/06 |
| COUNTY CLERK |

EXHIBIT 3
-39-

SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

FILED
LOS ANGELES SUPERIOR COURT
MAY 16 2006
JOHN A. CLARKE, CLERK
BY E. SABALBURO, DEPUTY

IN RE VIOXX CASES

CASE NO. JCCP 4247

REVISED RULING ON REQUEST FOR RECONSIDERATION

Hearing date:   4/11/06
Ruling date:    5/16/06

After considering the moving, opposition and reply papers and the arguments of counsel at the hearing, the court now rules as follows:

**On its own motion the court GRANTS reconsideration of its ruling of March 3, 2006 in which it sustained the distributor defendants' demurrer to plaintiffs' cause of action for strict liability—failure to warn. Upon reconsideration, the demurrer is OVERRULED.**

I.  INTRODUCTION

In their first cause of action plaintiffs allege strict liability—failure to warn—against "Pharmaceutical Distributor Does 101 to 200." (Compl., p. 13.) In sustaining the distributor defendants' demurrer to this cause of action the court on March 3, 2006 ruled that

> Pharmacists cannot be held strictly liable for defects in prescription pharmaceuticals or for failure to warn of such defects. (*Murphy v. E.R. Squibb &*

-1-

EXHIBIT 3
-40-

*Sons, Inc.* (1985) 40 Cal.3d 672 [pharmacists not strictly liable because they have no discretion to depart from a valid prescription, and strict liability would raise the price of prescription drugs, which is against public policy].) Neither can manufacturers. (*Brown v. Superior Court* (1988) 44 Cal.3d 1049, 1060-1061 [no strict liability against pharmaceutical manufacturers].) [¶] It would be an anomalous to hold a distributor, who stands between the manufacturer and pharmacist in the chain of distribution, to a different standard.

At a status conference on April 11, 2006, plaintiffs requested that the court sua sponte reconsider the above in light of *Carlin v. Superior Court* (1996) 13 Cal. 4th 1104 (*Carlin*), a case they did not cite in their opposition to the demurrer. In opposition, the distributor defendants argued, as they argued in their demurrer, that exemption of distributors of prescription drugs from the doctrine of strict liability is supported by California case law, public policy, and the Restatement (Third) of Torts.

The court agreed to reconsider the matter, and now reverses its earlier ruling.

## II.     DISCUSSION

### A.     Reconsideration

A court may, on its own motion, reconsider its interim rulings. (*Le Francois v. Goel* (2005) 35 Cal.4th 1094.) A court may also take under advisement a party's request that it reconsider a ruling. (*Id.* at p. 1108.)

### B.     Strict Liability

The parties well know the law of strict liability. A manufacturer may be held strictly liable for injuries caused by a defective product that it knew would not be inspected by the consumer for defects. (*Greenman v. Yuba Power Products, Inc.* (1963) 59 Cal.2d 57.) This is so because a "manufacturer, unlike the public, can anticipate or guard against the recurrence of hazards, [] the cost of injury may be an overwhelming

misfortune to the person injured whereas the manufacturer can insure against the risk and distribute the cost among the consuming public, and [] it is in the public interest to discourage the marketing of defective products." (*Brown v. Superior Court, supra*, 44 Cal.3d at p. 1056 (*Brown*).) Strict liability also applies to retailers (*Vandermark v. Ford Motor Co.* (1964) 61 Cal.2d 256) but not to "'those who sell their services for the guidance of others . . . .'" (*Murphy v. E.R. Squibb & Sons, Inc., supra*, 40 Cal.3d at p. 677 (*Murphy*), quoting *Gagne v. Bertran* (1954) 43 Cal.2d 481, 487).

There are three types of product defects for which a manufacturer and distributor may be held liable: Manufacturing defects, design defects, and deficient warnings or instructions. (*Brown, supra*, at p. 1057.) Though strong policy considerations—protection of consumers and distribution of the cost of injury—support the doctrine of strict liability generally, other policy considerations—including the "public interest in the availability of drugs at an affordable price" (*Brown, supra*, at p. 1063)—militate against applying the doctrine specifically to prescription drugs.

In its March 3 ruling the court identified two boundaries in the chain of distribution—the drug manufacturer and the ultimate retailer—where, for policy reasons, the courts have held strict liability not to apply. The court then reasoned that if strict liability does not apply at the book-ends of distribution, it doesn't apply in the middle. As will be discussed below, the court misapprehended the case law's treatment of the book-ends.

C.　**California Case Law**

In its March 3 ruling, *supra*, the court overstated the rule of *Brown* and failed to limit *Murphy* to its rationale.

In *Brown*, the court considered whether a manufacturer of prescription drugs could, like other manufacturers, be held strictly liable for injuries caused by its products. After discussing various policy considerations the court held prescription drugs should be treated differently from other products. However, *Brown* did not, as this court stated,

hold that manufacturers of prescription drugs are exempt from strict liability altogether; it held only that they may not be held strictly liable for injuries caused by design defects in their products (*id.* at p. 1065) or by failure to warn of unknowable risks (*id.* at p. 1066.) *Brown* held drug manufacturers *could* be held strictly liable for injuries caused by failure to warn of known or reasonably scientifically knowable risks. (*Id.* at p. 1069.)

Thus falls one of the book-ends relied upon by this court in its March 3 ruling, for plaintiff alleges the distributor defendants are subject to liability in the same wise as were the manufacturer defendants in *Brown*—liability for failure to warn of risks about which they knew or reasonably should have known.

The other book-end was *Murphy*. There, the court held pharmacists cannot be held strictly liable for defects in prescription pharmaceuticals or for failure to warn of such defects. (*Id.* at p. 681.) Defendants liken themselves to pharmacists and argue *Murphy* exempts them, too, from strict liability.

In *Murphy*, the plaintiff asserted that a pharmacy that sells prescription drugs "is in the same position as a retailer of any other consumer product, and that the reasons advanced in *Greenman* and *Vandermark* for imposing strict liability necessarily apply to a pharmacy." (*Murphy*, at p. 676.) The court disagreed, ultimately affirming the trial court's granting of a pharmacy defendant's motion for judgment on the pleadings. (*Id.* at p. 681.)

To understand why it did so requires close reading. First, the court noted "[i]t is critical to the issue posed to determine if the dominant role of a pharmacist in supplying a prescription drug should be characterized as the performance of a service or the sale of a product." (*Id.* at p. 677.) "'[T]hose who sell their services for the guidance of others . . . are not liable in the absence of negligence or intentional misconduct.'" (*Ibid.*, citation omitted.) The court surveyed case law, amicus briefs, and the Business and Professions and Health and Safety Codes, ultimately finding that while a "pharmacist is engaged in a hybrid enterprise, combining the performance of services and the sale of prescription drugs" (*id.* at p. 678), "[t]he Legislature must have intended . . . that even though a

-4-

EXHIBIT 3
-43-

pharmacist is paid for the medication he dispenses, his conduct in filling a prescription is to be deemed a service, and . . . is immune from strict liability" (*id.* at p. 680).

Thus falls the second book-end relied upon by this court in its March 3 ruling, for the distributor defendants cannot argue their business is, like a pharmacist, to provide a service. They are thus in a position different from that of the pharmacy in *Murphy* and cannot apply its holding to them.

The final case on point is *Carlin, supra*. There, after an extensive policy discussion the supreme court affirmed its earlier ruling in *Brown*: A manufacturer of prescription drugs "should bear the costs, in terms of preventable injury or death, of its own failure to provide adequate warnings of known or reasonably scientifically knowable risks." (*Id.* at p. 1117.)

No California case law supports defendants' argument that distributors of prescription drugs should not be held strictly liable for injuries caused by their failure to warn of known or reasonably scientifically knowable risks. The only law nearly on point is to the contrary: In general, the strict liability doctrine applies to those in the chain of distribution. (See *Vandermark v. Ford Motor Co., supra*, 61 Cal.2d at pp. 262-263 ["Retailers like manufacturers . . . . are an integral part of the overall producing and marketing enterprise that should bear the cost of injuries resulting from defective products."].)

D.  **Public Policy**

There being no California case law on point, the distributor defendants argue the public policy considerations discussed and acknowledged in *Brown, Murphy* and *Carlin* require that distributors of prescription drugs not be held strictly liable for injuries caused by their failure to warn of known or reasonably scientifically knowable risks.

For the court's present purpose, the important point to take away from *Brown* and *Carlin* is that while for policy reasons prescription drugs are treated differently from other products, those reasons are not compelling enough to exempt drug manufacturers

from strict liability altogether. And policy considerations were not the basis of *Murphy's* holding at all. (After holding that pharmacies provide a service when they dispense prescription drugs, the court speculated as to why "[t]he Legislature may have determined that it is not in the public interest to subject [pharmacies] to strict liability," (*Murphy*, at p. 680), discussing various possible policy considerations the Legislature could have relied upon. However, those policy considerations were discussed only insofar as they supported the Legislature's action, not the court's holding, which merely relied upon the Legislature's action.) There is therefore no California authority for defendants' proposition that public policy requires that distributors of prescription drugs be treated differently from distributors of other products for purposes of strict liability.

E.    **Restatement**

Finally, defendants argue the Third Restatement of Torts holds distributors may be held liable only for negligence.

At issue is section 6, subdivision (e), Products Liability:

> A retail seller or other distributor of a prescription drug or medical device is subject to liability for harm caused by the drug or device if: [¶] (1) at the time of sale or other distribution the drug or medical device contains a manufacturing defect . . . ; or [¶] (2) at or before the time of sale or other distribution of the drug or medical device the retail seller or other distributor *fails to exercise reasonable care* and such failure causes harm to persons.

(Rest.3d Torts, Products Liability, § 6, subd. (e), emphasis added.)

Missing from this description is the word "only"—though the rule states that a distributor of as prescription drug may be held liable for injuries caused by its failure to exercise reasonable care, it does not state that is the only circumstance in which a distributor may be held liable. But that is what it means, as evidenced by comment h:

> The rule governing most products imposes liability on wholesalers and retailers for selling a defectively designed product, or one without adequate instructions or warnings, even though they have exercised reasonable care in marketing the

product. [Citations.] Courts have refused to apply this general rule to nonmanufacturing retail sellers of prescription drugs and medical devices and, instead, have adopted the rule stated in Subsection (e). That rule subjects retailers to liability *only* if the product contains a manufacturing defect or if the retailer fails to exercise reasonable care in connection with distribution of the drug or medical device. In so limiting the liability of intermediary parties, courts have held that they should be permitted to rely on the special expertise of manufacturers, prescribing and treating health-care providers, and governmental regulatory agencies. They have also emphasized the needs of medical patients to have ready access to prescription drugs at reasonable prices.

(Rest.3d Torts, Products Liability, § 6, subd. (e), com. h, emphasis added.)

As discussed above, though California cases discuss policy considerations attendant upon the manufacture and distribution of prescription drugs, none has found those considerations to require that actors in the chain of distribution be exempt from strict liability altogether. (Though in *Murphy* a pharmacy was exempted from strict liability, it was because a pharmacy provides a service, not because public policy requires the exemption.)

The cases considered by The American Law Institute are no different. The court will survey them:

*Elsroth v. Johnson & Johnson* (S.D.N.Y. 1988) 700 F.Supp. 151 held a manufacturer and retailer cannot be liable in damages for the criminal conduct of unknown third party who tampered with the manufacturer's product post-distribution.

*Jones v. Irvin* (S.D.Ill. 1985) 602 F.Supp. 399 held a pharmacist had no duty to warn a customer that a drug is being prescribed in dangerous amounts, that the customer is being over medicated, or that various drugs in their prescribed quantities could cause adverse reactions.

*Murphy*, *supra*, held a pharmacy cannot be held strictly liable because in dispensing prescription medications it predominantly provides a service, as opposed to effecting a sale.

*Leesley v. West* (Ill.App.Ct. 1988) 518 N.E.2d 758 held that under the learned intermediary doctrine a drug manufacturer has a duty to warn only prescribing doctors of

the inherent dangers of the drug, not consumers directly, and that a pharmacist should be held to no greater duty than a manufacturer.

*Lemire v. Garrard Drugs* (Mich.Ct.App. 1980) 291 N.W.2d 103 held a successor drug store could not be held liable for injuries caused by the predecessor drug store's filling a doctor's prescription.

*Parker v. St. Vincent Hosp.* (N.M.App. 1996) 919 P.2d 1104 held public policy favored not imposing strict liability on hospitals for supplying a *defectively designed* implant selected by a physician. The court reversed the grant of summary judgment on plaintiff's negligence claim, holding the hospital may have a duty to investigate the safety of the implants before supplying them.

*Batiste v. American Home Products Corp.* (N.C.Ct.App. 1977) 231 S.E.2d 269 noted that under North Carolina law the doctrine of strict liability does not apply to retailers (*id.* at p. 275) and held a druggist is not strictly liable for providing a drug ordered by a physician (*id.* at pp. 275-276).

*Coyle v. Richardson-Merrell, Inc.* (Pa. 1991) 584 A.2d 1383 held that public policy requires that a pharmacist not be held strictly liable damages caused because by the pharmacist's failure to provide warnings of the risks of a drug to a patient/consumer. (This case goes one step beyond *Murphy, supra,* but still does not extend the rule to defendant distributors.)

*Makripodis v. Merrell-Dow Pharmaceuticals., Inc.* (Pa.Super.Ct. 1987) 523 A.2d 374 is to the same effect as *Coyle v. Richardson-Merrell, supra.*

*Pittman v. Upjohn Co.* (Tenn. 1994) 890 S.W.2d 425 held a manufacturer and a prescribing physician had only a duty to use reasonable care in giving warnings about an unavoidably dangerous drug.

In sum, none of the cases relied upon by the American Law Institute in formulating section 6, subdivision (3) of the Restatement supports the proposition that distributors of prescription drugs (other than pharmacists) should be exempt from strict liability for failure to warn of known or reasonably knowable risks.

### F. Question of First Impression

Though no California case, no recitation of public policy found in California case law, and no case supporting the Third Restatement of Torts supports the proposition that an exception to the strict liability doctrine should be made for distributors of prescription drugs, no authority prohibits such an exception either, and the proposition that there should be one has its appeal. Some of the policy considerations applicable to pharmacists may apply to distributors:

> [T]he wide availability of a full range of prescription drugs at economical cost [may] outweigh[] the advantage to the individual consumer of being able to recover for injuries on a strict liability basis rather than to be limited to claims arising from negligence.
>
> If [distributors] were held strictly liable for the drugs they [distribute], some of them, to avoid liability, might restrict availability by refusing to [distribute] drugs which pose even a potentially remote risk of harm, although such medications may be essential to the health or even the survival of patients. Furthermore, in order to assure that a [distributor] receives the maximum protection in the event of suit for defects in a drug, the [distributor] may select the more expensive product made by an established manufacturer when he has a choice of several brands of the same drug. . . . "Why choose a new company's inexpensive product, which has received excellent reviews in the literature for its quality, over the more expensive product of an established multinational corporation which will certainly have assets available for purpose of indemnification 10, 20, or 30 years down the line?" [Citation omitted.]
>
> [S]ince the doctor who ordered the drug provided by the [distributor] cannot be held strictly liable for its defects and in some circumstances the manufacturer who created the defect can also escape liability, it would be unfair and burdensome to expose the [distributor] alone to strict liability . . . .

(*Murphy, supra*, at pp. 680-681.)

But these considerations are speculative, and the court, being aware of no judicial conclusion on them, will leave their resolution to the Legislature.

Finally, the distributor defendants argue that a distributor who neither created nor tested a drug "has no connection with physicians, certainly knows far less about the drug than does the manufacturer, [] is in no position to independently test or analyze a drug

and/or its labeling," and is "not privy to proprietary and non-public information known to the manufacturers", and therefore cannot reasonably be held strictly liable for failure to warn. (Opp., p. 7.)

This argument, too, has its appeal. But the same can be said of distributors of many products, and with respect to them public policy is well established:

> [T]the seller, by marketing his product for use and consumption, has undertaken and assumed a special responsibility toward any member of the consuming public who may be injured by it; [] the public has the right to and does expect, in the case of products which it needs and for which it is forced to rely upon the seller, that reputable sellers will stand behind their goods; [] public policy demands that the burden of accidental injuries caused by products intended for consumption be placed on those who market them, and be treated as a cost of production against which liability insurance can be obtained; and [] the consumer of such products is entitled to the maximum of protection at the hands of someone, and the proper persons to afford it are those who market the products.

(Rest.2d Torts, § 402A, com. c.)

Defendants point to no authority that makes an exception to the doctrine of strict liability for distributors in an industry analogous to the prescription pharmaceutical industry. This court will not be the first to make such an exception at the pleading stage.

**In sum:**

**On its own motion the court GRANTS reconsideration of its ruling of March 3, 2006 in which it sustained the distributor defendants' demurrer to plaintiffs' cause of action for strict liability—failure to warn. Upon reconsideration, the demurrer is OVERRULED.**

IT IS SO ORDERED.
Dated: 5/16/06

Victoria Gerrard Chaney

Judge

## ELECTRONIC PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 1126 Wilshire Boulevard, Los Angeles, California 90017.

On May 23, 2006, pursuant to the Court's Electronic Case Management Order (CMO No. 1),

[ ]   I submitted an electronic version of the following document via file transfer protocol to CaseHomePage.

[X]   I submitted a hard copy of the following document to CaseHomePage by facsimile.

[ ]   I submitted an electronic version of the document via file transfer protocol and a hard copy of the exhibits via facsimile to CaseHome Page.

Notice of Ruling

Executed on May 23, 2006, at Los Angeles, California.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

_____
Colleen Teeman

-1-

EXHIBIT 3
-50-