1   DONALD F. ZIMMER, JR. (State Bar No. 112279)
    KRISTA L. COSNER (State Bar No. 213338)
2   DRINKER BIDDLE & REATH LLP
    50 Fremont Street, 20th Floor
3   San Francisco, California 94105-2235
    Telephone: (415) 591-7500
4   Facsimile: (415) 591-7510

5   Attorneys for Defendants
    SMITHKLINE BEECHAM CORPORATION d/b/a
6   GLAXOSMITHKLINE and McKESSON
    CORPORATION

7

8               UNITED STATES DISTRICT COURT

9               NORTHERN DISTRICT OF CALIFORNIA

10                 SAN FRANCISCO DIVISION

11

12  DOROTHY BONE, DAVID COOK;           Case No. CV-07-5886 MHP
    JESUS COTA; JO ELLEN GARNER;
13  BARRON GATTA; CATHY GRAY;           **DEFENDANT SMITHKLINE
    FRANKLIN JENKINS; GREGORY            BEECHAM CORPORATION d/b/a
14  RODRIGUEZ; ROBERT RODRIGUEZ;         GLAXOSMITHKLINE'S
    ROGER TAVARES; LAVIOLA               MEMORANDUM OF LAW IN
15  TOWNSEND,                            OPPOSITION TO PLAINTIFFS'
                                         MOTION TO REMAND**
16              Plaintiffs,
                                         **DATE:        January 14, 2008**
17       v.                              **TIME:        2:00 p.m.**
                                         **COURTROOM: 15**
18  SMITHKLINE BEECHAM                   **JUDGE:       Marilyn H. Patel**
    CORPORATION d/b/a
19  GLAXOSMITHKLINE and McKESSON
    CORPORATION,
20
                Defendants.
21

22  THIS DOCUMENT RELATES TO THE FOLLOWING CASES:

23       *Bone, et al. v. SmithKline Beecham Corporation d/b/a GlaxoSmithKline and*

24  *McKesson Corporation;* Case No. CV-07-5886 MHP.

25       *Bowles, et al. v. SmithKline Beecham Corporation d/b/a GlaxoSmithKline and*

26  *McKesson Corporation;* Case No. CV-07-6328 JCS (ruling on motion to relate pending).

27       *Fisher v. SmithKline Beecham Corporation d/b/a GlaxoSmithKline and McKesson*

28  *Corporation;* Case No. CV-07-5889 MHP.

DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105

1       *Hall v. SmithKline Beecham Corporation d/b/a GlaxoSmithKline and McKesson*

2  *Corporation;* Case No. CV-07-5887 MHP.

3       *Hefner, et al. v. SmithKline Beecham Corporation d/b/a GlaxoSmithKline and*

4  *McKesson Corporation;* Case No. CV-07-6050 JL (ruling on motion to relate pending).

5       *Jefferson v. SmithKline Beecham Corporation d/b/a GlaxoSmithKline and*

6  *McKesson Corporation;* Case No. CV-07-5888 MHP.

7       *Thornton v. SmithKline Beecham Corporation d/b/a GlaxoSmithKline and*

8  *McKesson Corporation;* Case No. CV-07-5890 MHP.

9       *Upshaw v. SmithKline Beecham Corporation d/b/a GlaxoSmithKline and*

10 *McKesson Corporation;* Case No. CV-07-5891 MHP.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................1

II.    BACKGROUND ..................................................................................................1

III.   ARGUMENT ......................................................................................................3

       A.    This Court Should Defer Ruling On Plaintiffs' Remand
             Motion Pending MDL Transfer ..............................................................3

       B.    This Court Has Diversity Jurisdiction Over Plaintiffs' Claims ..................4

             1.   Plaintiffs' Factual Allegations Against McKesson Do
                  Not Provide an Adequate Causal Connection Between
                  McKesson and Their Alleged Injuries .......................................5

             2.   Plaintiffs' Purported Allegations Against McKesson
                  are Inconsistent with Their Central Allegations
                  Against GSK .............................................................................7

             3.   Under California Law Plaintiffs Cannot Prove a Cause
                  of Action Against McKesson for Plaintiffs' Alleged
                  Injuries .....................................................................................9

             4.   The Citizenship Of The Non-Diverse Plaintiff Must Be
                  Ignored And His Claims Severed Because Plaintiff
                  Has Been Misjoined In An Attempt to Defeat
                  Diversity .................................................................................12

             5.   Conclusion ..............................................................................14

       C.    This Court Has Federal Question Jurisdiction Based on
             Plaintiffs' Claims Which Raise Questions Of Federal Law .......................14

IV.    CONCLUSION ................................................................................................16

DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105

i

# **TABLE OF AUTHORITIES**

## **Cases**

*Aronis v. Merck & Co., Inc.*, CIV. S-05-0486 WBS DAD,
    2005 U.S. Dist. LEXIS 41531 (E.D. Cal. May 3, 2005) ...........................................7

*Baisden v. Bayer Corp.*,
    275 F.Supp. 2d 759 (S.D. W. Va. 2003)...............................................................8

*Barlow v. Warner-Lambert Co.*,
    Case No. CV 03 1647 R (RZx), Slip Op. (C.D. Cal. April 28, 2003) ...................10

*Brown v. Superior Court*,
    44 Cal. 3d 1049 (1988) ..........................................................................9, 10, 11

*Carlin v. Superior Court*,
    13 Cal. 4th 1104 (1996) ...............................................................................10

*Dante v. Merck & Co., Inc.*,
    Case No. C07-00081 JW, Slip Op. (N.D. Cal. Feb. 27, 2007) ...............................4

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg*,
    125 S.Ct. 2363 (2005)...............................................................................2, 15

*Hamilton Materials, Inc., v. Dow Chemical Corporation*,
    494 F.3d 1203 (9th Cir. 2007) ......................................................................5

*Huntman v. Danek Medical, Inc.*, No. 97-2155-IEG RBB,
    1998 WL 663362 (S.D. Cal. July 24, 1998) ..................................................5

*In re Asbestos II Consol.* Pretrial, Nos. 86 C 1739, 89 C 452,
    1989 U.S. Dist. LEXIS 5621 (N.D. Ill. May 10, 1989)......................................13

*In re Baycol Prods. Litig.*, MDL No. 1431, No. 02-139,
    2002 WL 32155268 (D. Minn. May 24, 2002).................................................10

*In re Diet Drugs Prods. Liab. Litig.*, MDL No. 1203, 04-20099,
    2004 WL 2095451 (E.D. Pa. Sept. 20, 2004) ............................................13

*In re Diet Drugs*,
    1999 WL 554584  (E.D. Pa. 1999) ..............................................................14

*In re Diet Drugs*,
    294 F. Supp. 2d 667 (E.D. Pa. 2003) ............................................................13

*In re PPA, MDL No. 1407*,
    Slip Op. (W.D. Wis. Nov. 26, 2002) ...........................................................7, 8

*In re Rezulin Prods. Liab. Litig.*,
    133 F. Supp. 2d 272 (S.D.N.Y. 2001) .........................................................6, 8

DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105

GSK'S MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO REMAND      CASE NO. CV-07-5886 MHP

1    *In re Rezulin Prods. Liab. Litig.*,
          2003 U.S. Dist. LEXIS 28, MDL No. 1348, Case No. 02-Civ. 3583
2         (S.D.N.Y. Jan. 6, 2003)..................................................................................8

3    *In re Rezulin Products Liab. Litig.*, No. 00 Civ. 2843 (LAK), MDL 1348
          (Nos. 02 Civ. 1716 and 02 Civ. 1717),
4         2002 WL 548750  (S.D.N.Y. Apr. 12, 2002) ...........................................14

5    *In re Rezulin*,
          168 F. Supp. 2d 136 (S.D.N.Y. 2001) ....................................................14
6
     *In re Rezulin*,
7         2002 WL 31496228 (S.D.N.Y. Nov. 7, 2002)......................................13, 14

8    *Johnson v. Merck & Co., Inc.*
          Case No. C 07-00067 WHA, Slip Op. (N.D. Cal. March 8, 2007) .........................3
9
     *Johnson v. Merck & Co., Inc.*,
10        Case No. C 05-02881 MHP, Slip Op. (N.D. Cal. October 4, 2005).......................3

11   *Landis v. North Am. Co.*,
          299 U.S. 248 (1936)..................................................................................3
12
     *Legg v. Wyeth*,
13        428 F.3d 1317 (11th Cir. 2005) .............................................................10

14   *Lively v. Wild Oats Mkts., Inc.*,
          456 F.3d 933 (9th Cir. 2006) ...................................................................1
15
     *Lyons v. American Tobacco Co.*,
16        1997 U.S. Dist. LEXIS 18365 (S.D. Ala. 1997).........................................6

17   *McCabe v. General Foods Corp.*,
          811 F. 2d 1336 (9th Cir. 1987) .................................................................5
18
     *Morris v. Princess Cruises, Inc.*,
19        236 F.3d 1061 (9th Cir. 2001) ..................................................................4

20   *Murphy v. E.R. Squibb & Sons, Inc.*,
          40 Cal. 3d 672 (1985) .............................................................................10
21
     *Murphy v. Merck & Co., Inc.*,
22        No. C 06-04794 MHP, Slip Op. (N.D. Cal. Sept. 22, 2006) ...................................4

23   *Parker v. Merck & Co., Inc.*,
          No. C 07-2333 SI, Slip Op. (N.D. Cal. June 26, 2007) ...........................................4
24
     *Ritchey v. Upjohn Drug Co.*,
25        139 F. 3d 1313 (9th Cir. 1998) .................................................................4

26   *Schaerrer v. Stewart's Plaza Pharmacy*,
          79 P.3d 922 (Utah 2003)..........................................................................10
27
     *Service by Medallion, Inc. v. Clorox Co.*,
28        44 Cal. App. 4th 1807 (1996) ...................................................................5

DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105

1  *Skinner v. Warner-Lambert Co.*, Case No. CV 03 1643-R (RZx),
      2003 WL 25598915 (C.D. Cal. April 28, 2003) ...................................................10

2
   *Wiggins v. Am. Home Prods. Corp.*, No. CV-01-J-2303-NW,
3      2001 WL 34013629 (N.D. Ala. Oct 2, 2001) ..........................................................8

4  **Statutes, Rules & Regulations**

5  California Civil Code § 3333 .........................................................................................5

6  Code of Federal Regulations, Chapter 21, § 201.56 ..........................................11, 12

7  Code of Federal Regulations, Chapter 21, § 201.57 ..........................................11, 12

8  Code of Federal Regulations, Chapter 21, § 201.57(d) ............................................11

9  Code of Federal Regulations, Chapter 21, § 201.59 .................................................11

10 Code of Federal Regulations, Chapter 21, § 202 .....................................................11

11 Code of Federal Regulations, Chapter 21, § 203.50 .................................................11

12 Code of Federal Regulations, Chapter 21, § 211 ......................................................11

13 Federal Rules of Civil Procedure, Rule 20 .......................................................1, 12, 13

14 Federal Rules of Civil Procedure, Rule 20(a) ...........................................................12

15 Federal Rules of Civil Procedure, Rule 21 .........................................................12, 13

16 United States Code, Chapter 21, § 301 .....................................................................15

17 United States Code, Chapter 21, § 331(b) ..........................................................11, 12

18 United States Code, Chapter 21, § 331(k) ..........................................................11, 12

19 United States Code, Chapter 21, § 331(o) .................................................................12

20 United States Code, Chapter 21, § 333(a) ..........................................................11, 12

21 United States Code, Chapter 21, § 352(a) ..........................................................11, 12

22 United States Code, Chapter 21, § 352(f) ..........................................................11, 12

23 United States Code, Chapter 21, § 355 .....................................................................15

24 United States Code, Chapter 21, § 355(o)(4)(I) ........................................................15

25 United States Code, Chapter 28, § 1331 ...............................................................2, 15

26 United States Code, Chapter 28, § 1332 .....................................................................2

27 United States Code, Chapter 28, § 1441(b) ................................................................1

28

DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA  94105

SFI\39359I\2        GSK'S MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO REMAND        CASE NO. CV-07-5886 MHP

## Other Authorities

Food and Drug Administration Amendments Act of 2007, 110 P.L. 85;
121 Stat. 823 (FDAAA) .......................................................................................15

Prescription Drug User Free [sic] Authorization Act (PDUFA), H.R. 3580 .....................15

DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA  94105

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105

## I.    INTRODUCTION

This is one of a number of cases that have recently been filed against defendant SMITHKLINE BEECHAM CORPORATION d/b/a GLAXOSMITHKLINE ("GSK") involving the prescription drug Avandia®. Plaintiffs' counsel, The Miller Firm, has filed Avandia cases in both state and federal courts. In the California cases only, The Miller Firm has named McKesson Corporation ("McKesson"), a California-based wholesale pharmaceutical distributor, as a defendant.[1] By naming McKesson as a defendant, The Miller Firm is attempting to take advantage of the so-called "forum defendant rule" to contend that removal was procedurally defective. The forum defendant rule is a waivable non-jurisdictional rule. *See Lively v. Wild Oats Mkts., Inc.*, 456 F.3d 933, 940 (9th Cir. 2006).

Plaintiffs' joinder of McKesson is fraudulent, however, and the citizenship of McKesson must be disregarded for purposes of 28 U.S.C. § 1441(b).

Plaintiffs have also joined a Pennsylvania plaintiff in an effort to destroy diversity, as defendant GSK is a Pennsylvania citizen. However, because this plaintiff was mis-joined under Fed. R. Civ. P. 20, his citizenship must also be disregarded. Therefore, there is complete diversity between plaintiffs and defendants.

In addition to diversity jurisdiction, this Court also has federal question, or "arising under," jurisdiction over this matter because numerous counts of Plaintiffs' complaint turn on violations of federal law.

Accordingly, Plaintiffs' Motion to Remand should be denied.

## II.    BACKGROUND

Plaintiffs commenced this action in the Superior Court of the State of California for the County of San Francisco on October 18, 2007, asserting claims of (1) negligence;

---

[1] The facts relating to McKesson are attested in the Declaration of Greg Yonko, a true and correct copy of which is attached as Exhibit "D" to the Declaration of Krista L. Cosner in Support of Notice of Removal and Removal by SmithKline Beecham Corporation d/b/a GlaxoSmithKline (hereinafter "Cosner Decl. ISO Removal").

1   (2) negligent failure to warn; (3) negligence per se; (4) negligent misrepresentation; (5)

2   breach of express warranty; (6) breach of implied warranty; (7) strict products liability –

3   defective design; (8) strict products liability – manufacturing and design defect; (9) strict

4   products liability – failure to adequately warn; (10) fraudulent misrepresentation; and

5   (11) violations of California Unfair Trade Practices and Consumer Protection Law.

6   Plaintiffs aver that collectively, "Defendants" or "Defendants GSK and McKesson,"

7   defectively designed and manufactured the product; concealed knowledge of

8   unreasonably dangerous risks associated with Avandia; failed to conduct adequate and

9   sufficient pre-clinical testing and post-marketing surveillance of Avandia; failed to

10  provide FDA with complete and adequate information regarding Avandia; failed to warn

11  consumers and/or their health care providers of certain risks associated with Avandia;

12  failed to utilize adequate and non-misleading labeling; and made affirmative

13  misrepresentations and omissions regarding the alleged risks of Avandia.

14          On November 20, 2007, GSK removed this action to this court, based on diversity

15  jurisdiction under 28 U.S.C. § 1332, and federal question jurisdiction under 28 U.S.C. §

16  1331 and the principles set forth in *Grable & Sons Metal Prods., Inc. v. Darue Eng'g &

17  Mfg*, 125 S.Ct. 2363 (2005).[2]  See Notice of Removal (filed November 20, 2007).  GSK

18  also sought the transfer of this action to the Multidistrict Litigation, *In re Avandia

19  Marketing, Sales Practices and Products Liability Litigation*, MDL 1871, and provided

20  the JPML with notice of this action pursuant to the procedure for "tag along" actions set

21  forth in the rules of the JPML. The JPML conditionally transferred this case on

22  December 4, 2007.  See Conditional Transfer Order (CTO-4), In re Avandia Marketing,

23  Sales Practices and Products Liability Litigation, MDL 1871 (E.D.PA.) (a true and

24  correct copy of which is attached as Exhibit "A" to Declaration of Krista Cosner In

25  Support of Defendant's Opposition to Plaintiffs' Motion to Remand).

26  _____

27          [2] Defendant GSK was served with Plaintiffs' Complaint on October 25, 2007.  Service was made

28  upon defendant McKesson on October 24, 2007.

1    Plaintiffs now move to remand this case to the Superior Court of the State of

2    California for the County of San Francisco. As explained below, Plaintiffs' motion is

3    without merit, and it should be denied.

4    **III.    ARGUMENT**

5    **A.    This Court Should Defer Ruling On Plaintiffs' Remand Motion
         Pending MDL Transfer**

6    As GSK argued in its Motion to Stay All Proceedings Pending Transfer by the

7    JPML, this Court should not rule on Plaintiffs' Remand Motion, but should stay this case

8    until it is transferred to the Avandia MDL, MDL No. 1871. Allowing the transferee court

9    to decide this and the other pending Motions to Remand will conserve the resources of

10   the Court, will ensure consistent rulings, and will not prejudice the Plaintiffs to any

11   significant degree. See Defendant's Motion to Stay All Proceedings; see also *Landis v.*

12   *North Am. Co.*, 299 U.S. 248 (1936).

13   In the Vioxx litigation, this Court and other Northern District judges were faced

14   with several cases removed on grounds identical to the grounds for removal of this case;

15   namely, that McKesson was fraudulently joined, and, when its citizenship was properly

16   disregarded, there was complete diversity of citizenship between plaintiffs and

17   defendants. Ruling on plaintiffs' remand motions was deferred in favor of staying the

18   cases pending transfer to the MDL on the grounds of judicial economy and consistency.

19   *See Johnson v. Merck & Co., Inc.*, Case No. C 05-02881 MHP, Slip Op. at 2 (N.D. Cal.

20   October 4, 2005) ("In light of the number of cases presenting issues similar to this action

21   and the need for judicial consistency with respect to those cases, this court finds that the

22   interest of judicial economy favors staying this action pending its transfer to [the Vioxx

23   MDL.]."); *Johnson v. Merck & Co., Inc.* Case No. C 07-00067 WHA, Slip Op. at 4 (N.D.

24   Cal. March 8, 2007) ("It would be an inefficient use of resources to unnecessarily

25   duplicate the efforts of the transferee judge, who will undoubtedly face most (if not all) of

26   the same issues in dealing with the other pending remand motions. Staying the

27   proceedings will best serve the interests of judicial economy."); *Dante v. Merck & Co.,*

28

DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105

1  *Inc.*, Case No. C07-00081 JW, Slip Op. at 2 (N.D. Cal. Feb. 27, 2007) (staying case with

2  pending remand motion where McKesson was named as co-defendant because "[i]n light

3  of the number of other cases presenting issues similar to this action and the need for

4  judicial consistency with respect to those cases, the Court finds that the interest of

5  judicial economy favors staying this action pending its transfer to the MDL Proceeding").

6  *See also Murphy v. Merck & Co., Inc.*, No. C 06-04794 MHP, Slip Op. (N.D. Cal. Sept.

7  22, 2006) (staying case pending transfer to MDL proceeding where McKesson was

8  named as a co-defendant); and *Parker v. Merck & Co., Inc.*, No. C 07-2333 SI, Slip Op.

9  at 2 (N.D. Cal. June 26, 2007) (staying case pending transfer to MDL and deferring

10  ruling on remand where case removed on the basis of fraudulent joinder).

11       For the identical reasons, this Court should defer ruling on Plaintiffs' Motion to

12  Remand, and should stay all proceedings in this case until it is transferred to the Avandia

13  MDL.

14       **B.**   **This Court Has Diversity Jurisdiction Over Plaintiffs' Claims**

15       If the Court does consider Plaintiffs' motion prior to MDL transfer, it should deny

16  Plaintiffs' motion to remand this action because Plaintiffs have mis-joined Barron Gatta

17  ("Gatta"), a Pennsylvania citizen, as a plaintiff in this action, and have fraudulently

18  joined McKesson, a California citizen, as a defendant. [3]  The fraudulent joinder doctrine

19  requires courts to disregard the citizenship of local defendants when no viable cause of

20  action has been stated against the resident defendant, or when evidence presented by the

21  removing party demonstrates that there is no factual basis for the claims pleaded against

22  the local defendant. *See Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir.

23  2001); *see also Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318-19 (9th Cir. 1998). A

24  defendant is also considered fraudulently joined when "the plaintiff fails to state a cause

25  

26       [3] While the citizenship of the California plaintiff, Jesus Cota, is not diverse from that of

27  McKesson, the citizenship of McKesson, as explained below, must be ignored because McKesson's joinder was fraudulent. When McKesson's citizenship is disregarded, there is complete diversity of

28  citizenship

1   of action against the resident defendant, and the failure is obvious according to the settled

2   rules of the state." *Hamilton Materials, Inc., v. Dow Chemical Corporation,* 494 F.3d

3   1203, 1206 (9th Cir. 2007) quoting *McCabe v. General Foods Corp.,* 811 F. 2d 1336,

4   1339 (9th Cir. 1987).

5      As set forth below, Plaintiffs cannot state a cause of action against the distributor

6   McKesson because (a) Plaintiffs do not allege that McKesson handled the Avandia

7   Plaintiffs ingested; (b) Plaintiffs' allegations against "defendants" and McKesson are

8   inconsistent with his allegations against GSK; and (c) a wholesale distributor cannot be

9   liable under any reasonable view of California law for alleged defects in a drug it did not

10  make, or for the alleged inadequacy of warnings over which it had no control.  In sum,

11  there is no reasonable likelihood that Plaintiffs can prevail on their claims against

12  McKesson, McKesson is fraudulently joined, and Plaintiffs' motion to remand must be

13  denied.

14         1.   **Plaintiffs' Factual Allegations Against McKesson Do Not
                Provide an Adequate Causal Connection Between McKesson**
15              **and Their Alleged Injuries**

16      First, McKesson was fraudulently joined because Plaintiffs do not even allege that

17  McKesson distributed the Avandia they took.

18      To state a personal injury claim against a pharmaceutical distributor, a plaintiff

19  must, as a threshold matter, allege an actual connection between the distributor's alleged

20  conduct and the plaintiff's purported injury. *See, e.g., Huntman v. Danek Medical, Inc.,*

21  No. 97-2155-IEG RBB, 1998 WL 663362, at *4, *6-*7 (S.D. Cal. July 24, 1998) (strict

22  liability, negligence, negligence per se claims require proof that alleged misconduct was

23  directed at plaintiff or plaintiff's physician); *Service by Medallion, Inc. v. Clorox Co.,* 44

24  Cal. App. 4th 1807, 1818 (1996) ("In order to recover for fraud, as in any other tort, the

25  plaintiff must plead and prove the 'detriment proximately caused' by the defendant's

26  tortuous conduct.") (citing Cal. Civ. Code § 3333).  Where, as here, plaintiffs fail to

27  allege such a link, federal courts have recognized that non-diverse distributors are

28  fraudulently joined and cannot defeat diversity jurisdiction. *See In re Rezulin Prods.*

DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105

5

1   *Liab. Litig.*, 133 F. Supp. 2d 272 (S.D.N.Y. 2001) ("Rezulin II") (denying motion to

2   remand where plaintiffs named a non-diverse defendant and alleged that a distributor

3   defendant was "in the business of distributing and selling the pharmaceutical" on grounds

4   that plaintiffs did not allege that the defendant "actually sold" the pharmaceutical product

5   to the plaintiffs).

6           In its Notice of Removal, GSK noted that the factual allegations against

7   McKesson were insufficient to establish a connection between McKesson and Plaintiffs'

8   alleged injuries. In response, Plaintiffs charge that "GSK asks this Court to ignore the

9   numerous times McKesson is identified by name within Plaintiffs' Complaint, and the

10  factual detail of McKesson's activities by name." Plaintiffs' Notice of Motion and

11  Motion to Remand with Supporting Memorandum ("Pls'. Br.") at 3:10-12.

12          In fact, Plaintiffs do not even allege that the Avandia ingested was distributed by

13  McKesson, *see Lyons v. American Tobacco Co.*, 1997 U.S. Dist. LEXIS 18365, *18-19

14  (S.D. Ala. 1997) (there is "no better admission of fraudulent joinder of [resident

15  defendants]" than the failure of the plaintiff "to set forth any specific factual allegations"

16  against them). Only one paragraph of Plaintiffs' Complaint contains any direct

17  allegations against McKesson. *See Pls'*. Compl. at 29:3-6 ("Defendant McKesson

18  packaged, distributed, supplied, sold, placed into the stream of commerce, labeled,

19  described, marketed, advertised, promoted, and purported to warn or to inform users

20  regarding the risks pertaining to, and assuaged concerns about the pharmaceutical

21  Avandia.") attached as Exhibit "A" to Cosner Decl. ISO Removal. The remaining

22  allegations are directed at "Defendants" or against "Defendants GSK and McKesson."

23  *See, e.g., id.* at 57 ("…defendants failed to timely and reasonably warn of material facts

24  regarding the safety and efficacy of Avandia…");   101 ("…Avandia was designed,

25  developed, manufactured, tested, packaged, promoted, marketed, distributed, labeled

26  and/or sold by Defendants…"). Courts have held that generic allegations against

27  multiple defendants are insufficient to create a causal connection between a plaintiff's

28  alleged injuries and the conduct of a single defendant. *See e.g., Aronis v. Merck & Co.,*

1  *Inc.*, CIV. S-05-0486 WBS DAD, 2005 U.S. Dist. LEXIS 41531, *3 (E.D. Cal. May 3,

2  2005); *see also In re PPA, MDL No. 1407*, Slip Op. at 5 (W.D. Wis. Nov. 26, 2002)

3  (allegations directed toward "defendants" or "all defendants" insufficient).

4      In *Aronis*, for example, the plaintiff alleged that her heart attack was caused by the

5  prescription medication Vioxx, Merck – the manufacturer of Vioxx – removed the case to

6  federal court on grounds that all the requisites of diversity jurisdiction existed.  In an

7  effort to defeat diversity, the plaintiff in that case, as here, named distributor-defendant

8  McKesson who, like the plaintiff, was a citizen of California.  The court concluded that

9  complete diversity existed and removal was proper because the plaintiff made "no

10  allegation that McKesson ever handled the specific pills that were allegedly the cause of

11  her injuries." *Id.* at *3.  According to the court, McKesson was fraudulently joined

12  because "plaintiff does not allege that McKesson contributed in any way to her injuries,

13  only that McKesson is a distributor." *Id.* at *4.

14      The rationale in *Aronis* applies with equal force here.  Plaintiffs' allegations

15  against McKesson are general, conclusory, and provide no more than the insufficient

16  contention that McKesson – like many other companies – distributed Avandia to

17  pharmacies in California.  Such "bare-bones" allegations are plainly incapable of

18  supporting a claim against McKesson and, thus, McKesson is fraudulently joined.  *See id.*

19  at *3-4 ("allegation that McKesson is a major distributor of Vioxx, even though taken as

20  true at this state, is not enough to support a claim against McKesson").

21      **2.  Plaintiffs' Purported Allegations Against McKesson are**
22      **Inconsistent with Their Central Allegations Against GSK**

23      Second, McKesson was fraudulently joined because Plaintiffs' allegations against

24  McKesson are inconsistent with their core allegations against GSK.

25      The crux of Plaintiffs' lawsuit rests on allegations regarding GSK's design and

26  manufacture of Avandia, and assertions that GSK failed to adequately warn against

27  Avandia's alleged side effects and concealed important safety information.  *See Pls'*.

28  Compl. at 0-43 (Cosner Decl, ISO Removal, Exh. "A").  Yet, Plaintiffs also purport to

1    assert that McKesson was responsible for the warnings included in Avandia's labeling,

2    *see id.* at 29:3-6, and that both "defendants" were responsible for these warnings. *See id.*

3    at 57. These allegations are inconsistent and contradictory, and courts have frequently

4    viewed such inconsistencies as evidence of fraudulent joinder. For instance, in *Baisden*

5    *v. Bayer Corp.*, 275 F.Supp. 2d 759, 762-763 (S.D. W. Va. 2003), a pharmaceutical

6    manufacturer removed a product liability case to federal court, asserting that the plaintiff

7    fraudulently joined a local physician to defeat diversity. *See id.* The district court agreed

8    and denied remand. *See id.* The complaint alleged that the defendant manufacturer had

9    concealed and misrepresented information about the safety of the drug, but also that the

10   physician was negligent for failing to monitor the patient and warn of the drug's side

11   effects. *See id.* The plaintiffs in *Baisden* repeatedly alleged that the manufacturer

12   concealed and misrepresented facts regarding the drug, and yet also asserted that the

13   doctor knew or should have known the truth in spite of the manufacturer's

14   misrepresentations. *See id.* Observing the contradictory and irreconcilable nature of

15   those positions, the district court ruled that the plaintiff had fraudulently joined the

16   physician and disregarded the physician's local citizenship. *See id.*

17       Numerous other courts have reached the same conclusion as the court in *Baisden* –

18   that plaintiffs should not be able to defeat diversity jurisdiction when it is clear that their

19   claims against the in-state defendant are wholly inconsistent with the substance of their

20   lawsuit. [4]

21

22   [4] *See In re PPA* , slip op. at 6-7 (pharmacy defendant fraudulently joined where the allegations
     that "manufacturer defendants concealed material facts regarding PPA through product packaging,
23   labeling, advertising, promotional campaigns and materials, and other methods . . . directly undermines
     and contradicts the idea that [the resident retail defendant] had knowledge or reason to know of alleged
24   defects"); *In re Rezulin Prod. Liab, Litig.*, 133 F. Supp. 2d 272, 290 (S.D.N.Y. 2001) (resident retail
     pharmacies facing failure to warn claims fraudulently joined where "the theory underlying the complaint
25   [was] that the manufacturer defendants hid the dangers of Rezulin from plaintiffs, the public, physicians,
     distributors and pharmacists – indeed, from everyone"); *Wiggins v. Am. Home Prods. Corp.*, No. CV-01-
26   J-2303-NW, 2001 WL 34013629 (N.D. Ala. Oct 2, 2001) (in-state pharmacy was fraudulently joined
     where plaintiffs made no reasonable allegation against the pharmacy); *In re Rezulin Prods. Liab. Litig.*,
27   2003 U.S. Dist. LEXIS 28, MDL No. 1348, Case No. 02-Civ. 3583 (S.D.N.Y. Jan. 6, 2003) (finding
     fraudulent joinder where the failure to warn claims against a physician were premised on knowledge
28   allegedly withheld).

1    For this reason too, McKesson is fraudulently joined.

2    **3.    Under California Law Plaintiffs Cannot Prove a Cause of Action
         Against McKesson for Plaintiffs' Alleged Injuries**
3

4    Even if McKesson had distributed plaintiffs' Avandia, it would still be

5    fraudulently joined because there would still be no basis for holding McKesson liable

6    under California law.

7    Under no reasonable view of California law can a wholesale distributor be liable

8    for injuries allegedly caused by defects in a drug it did not make, nor by allegedly

9    inadequate warnings over which it had no control. *See* Yonko Dec. at 6, 7 ("McKesson

10   did not manufacturer, produce, process, test, encapsulate, label, [or] package Avandia®,

11   nor does it make any representations or warranties as to the product's safety or efficacy;"

12   "[McKesson] only delivered the unopened boxes that contained the drug") (Cosner Decl.

13   ISO Removal, Exh. "D"). Arguing that such liability does exist under California law,

14   Plaintiffs rely almost exclusively on a series of Vioxx decisions from a single judge from

15   the Central District of California. *See* Pls'. Br. at p. 7:4-7. Those isolated decisions,

16   however, are not binding on this Court, and as explained below, do not represent correct

17   applications of California law.

18   California tort law treats prescription drugs differently from other products. For

19   example, California law unequivocally bars strict liability causes of action for design

20   defect in the prescription drug context. *See Brown v. Superior Court,* 44 Cal. 3d 1049,

21   1061 (1988) ("a drug manufacturer's liability for a defectively designed drug shall not be

22   measured by the standards of strict liability"). In Brown, the California Supreme Court

23   held that a manufacturer is not strictly liable or liable for breach of express or implied

24   warranties for injuries caused by a prescription drug "so long as the drug was properly

25   prepared and accompanied by warnings of its dangerous propensities that were either

26   known or reasonably scientifically knowable at the time of distribution." *Id.* at 1069. In

27   California – as in virtually every other state – the duty to warn about a drug's risks runs

28   directly from the manufacturer to the physician (*i.e.* the "learned intermediary"), and then

DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA  94105

9

1   from the physician to the patient.  *See Brown*, 44 Cal. 3d at 1061-62, n.9.; *Carlin v.*

2   *Superior Court*, 13 Cal. 4th 1104, 1116 (1996).  Accordingly, case law makes clear that,

3   under the "learned intermediary doctrine," distributors such as McKesson owe no duty to

4   individual patients.  Because the pharmaceutical company, not the distributor, has a duty

5   to warn physicians of the risks associated with medications and medical devices, courts

6   have repeatedly concluded that distributors are fraudulently joined.  *See, e.g., Barlow v.*

7   *Warner-Lambert Co.*, Case No. CV 03 1647 R (RZx), Slip Op. at 2 (C.D. Cal. April 28,

8   2003) ("The Court finds that there is no possibility that plaintiffs could prove a cause of

9   action against McKesson, an entity which distributed this FDA-approved medication

10  [Rezulin]" to pharmacists in California;" motion to remand denied); *Skinner v. Warner-*

11  *Lambert Co.*, Case No. CV 03 1643-R (RZx), 2003 WL 25598915 at *2 (C.D. Cal. April

12  28, 2003); *Murphy v. E.R. Squibb & Sons, Inc.*, 40 Cal. 3d 672, 680-81 (1985) (under the

13  learned intermediary doctrine, retail pharmacies can have no general duty to warn

14  consumers of effects of prescription drugs); *In re Baycol Prods. Litig.*, MDL No. 1431,

15  No. 02-139, 2002 WL 32155268 (D. Minn. May 24, 2002) (retail distributor of

16  prescription drugs fraudulently joined); *Schaerrer v. Stewart's Plaza Pharmacy*, 79 P.3d

17  922, 929 (Utah 2003) (declining to extend duty to warn to retail distributor of

18  prescription diet drug as long as [their] "ability to distribute prescription drugs is limited

19  by the highly restricted FDA-regulated drug distribution system in this country . . .");

20  *Legg v. Wyeth*, 428 F.3d 1317 (11th Cir. 2005) ("[t]he Multidistrict Litigation Court . . .

21  concluded that this joinder can 'only be characterized as a sham, at the unfair expense not

22  only of [Wyeth] but of many individuals and small enterprises that are being unfairly

23  dragged into court simply to prevent the adjudication of lawsuits against [Wyeth], the real

24  target, in a federal forum.").

25      Furthermore, pharmaceutical warnings are highly regulated by the Food & Drug

26  Administration ("FDA"), which militates against imposing any separate duty to warn on

27  pharmacies and pharmaceutical distributors.  The FDA closely regulates pharmaceutical

28  manufacturing, and it controls the testing of medicines and the methods by which they

DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105

10

1    are marketed, including the contents of warning labels. *Brown*, 44 Cal. 3d at 1059, fn.

2    12.  The federal regulations provide specific requirements for all aspects of the medicine,

3    the standards to be followed in manufacturing (21 C.F.R. §211, *et. seq.*), the standards for

4    wholesale distribution (§203.50), the contents of its labeling, including warnings

5    (§201.57), and permissible representations to be made in advertisements (§202, *et seq.*).

6    The regulations also state that a manufacturer may list only known risks and not

7    theoretical possibilities, and that no prescription medicine may go to a distributor like

8    McKesson unless the labeling complies with federal regulations and is approved by the

9    FDA.  *See* 21 C.F.R. §201.57(d); 21 C.F.R. §201.59.

10       Once the labeling is approved, the information found therein cannot be altered

11   without FDA approval.  *See* 21 U.S.C. § 331(k); *Brown v. Superior Court*, 44 Cal. 3d at

12   1069 n. 12 (noting that the FDA regulates the testing, manufacturing, and marketing of

13   drugs, including the content of their warning labels).  Both drug manufacturers and

14   distributors are prohibited from causing the "alteration, mutilation, destruction,

15   obliteration, or removal of the whole or any part of the labeling" of an FDA-approved

16   drug held for sale.  21 U.S.C. §331(k).

17       As a distributor, McKesson had no duty to warn Plaintiffs, assuming it distributed

18   the Avandia ingested by Plaintiffs in the first place.  Nor could McKesson have given

19   additional or different warnings without violating federal law.  The FDA approved all

20   Avandia warnings and marketing materials.  Had McKesson provided alternative, non-

21   FDA approved warnings, or warnings inconsistent with those approved by the FDA, it

22   would have been in violation of federal law prohibiting false or misleading labeling and

23   the alteration of FDA-approved labeling (21 U.S.C. §§331, subd. (k); , 21 U.S.C.

24   §352(a), (f); 21 C.F.R. 201.56, 201.57), and could have resulted in an enforcement action,

25   fines or criminal penalties.  21 U.S.C. §§331, subd. (b), (k), 352, subds. (a), (f), 333,

26   subd. (a).  No duty can be found where it requires a party to violate the law to fulfill it.

27       These authorities lead to two inescapable conclusions that control this motion.

28   First, the distributor McKesson had no duty to warn Plaintiffs of anything and, thus,

1    cannot be held liable to Plaintiffs – even if it did distribute the Avandia that Plaintiffs

2    allegedly ingested.  Second, not only did McKesson have no duty to Plaintiffs, it could

3    not have given additional warnings even if it wanted to.  The FDA approved all Avandia

4    warnings and marketing materials.  Had McKesson provided additional, non-FDA

5    approved warnings, or warnings inconsistent with those approved by the FDA, they

6    would have been in violation of federal law prohibiting false or misleading labeling and

7    the alterations of FDA-approved labeling (21 U.S.C. §§ 331, subd. (k), (o); 21 U.S.C. §

8    352(a), (f); 21 C.F.R. 201.56, 201.57), and could have resulted in an enforcement action,

9    fines or criminal penalties.  21 U.S.C. §§ 331, subd. (b), (k), 352, subds. (a), (f), 333,

10    subd. (a).

11        Both the federal regulation of warnings provided with prescription drugs and the

12    common law approach to pharmaceutical product liability claims convey the underlying

13    policy preference that one set of consistent and approved warnings accompany drugs like

14    Avandia.  The duty to warn lies with the manufacturer, and any alteration of those

15    warnings by a distributor would violate federal law.  As such, Plaintiffs may not proceed

16    against McKesson on a theory of failure to warn.

17        In short, there is no theory of liability under which Plaintiffs could prevail against

18    McKesson.  Accordingly, McKesson's citizenship should be ignored for purposes of the

19    forum defendant rule, and this Court has diversity over this case.

20        **4.    The Citizenship Of The Non-Diverse Plaintiff Must Be Ignored
            And His Claims Severed Because Plaintiff Has Been Misjoined
21           In An Attempt to Defeat Diversity**

22        Plaintiffs in this case include Barron Gatta, who is a citizen of Pennsylvania and

23    therefore non-diverse to defendant GSK.  The Court should sever and transfer Gatta's

24    claims, because Gatta was not properly joined pursuant to Fed.R.Civ.P. 20.  Parties may

25    be joined as plaintiffs if they "assert any right to relief jointly, severally, or in the

26    alternative in respect of or arising out of the same transaction, occurrence, or series of

27    transactions or occurrences and if any question of law or fact, common to all these

28    persons will arise in the action."  Fed.R.Civ.P. 20(a).  Federal Rule of Civil Procedure 21

1   provides that "[p]arties may be dropped or added by order of the court . . . at any stage of

2   the action and on such terms as are just." Fed.R.Civ.P. 21. "Any claim against a party

3   may be severed and proceeded with separately." *Id.* "[C]ourts may sever misjoined

4   parties when their claims do not arise out of the same transaction, occurrence, or series of

5   transactions or occurrences, and the claims will not involve a question of law or fact

6   common to all parties." *In re Diet Drugs Prods. Liab. Litig.*, MDL No. 1203, 04-20099,

7   2004 WL 2095451 (E.D. Pa. Sept. 20, 2004) (citing, inter alia, Fed. R. Civ. P. 20).

8       Further, a Court may ignore the citizenship of non-diverse plaintiffs who fail to

9   "make [] out at least one claim that arises out of the same transaction or occurrence or

10  series of transactions or occurrences as the other plaintiffs." *In re Rezulin,* 2002 WL

11  31496228 at *1 (S.D.N.Y. Nov. 7, 2002); *see also In re Diet Drugs*, 294 F. Supp. 2d 667,

12  673 (E.D. Pa. 2003) ("[e]ven if a non-diverse plaintiff may have a valid cause of action

13  against a defendant, that plaintiff may not prevent removal based on diversity of

14  citizenship if there is no reasonable basis for the joinder of that non-diverse plaintiff with

15  the other plaintiffs."). In the context of pharmaceutical product liability litigation, "the

16  joinder of plaintiffs who have no connection to each other except the fact that they

17  ingested [the same product] constitutes misjoinder." *In re Rezulin*, 2002 WL 31496228 at

18  *1; *see also In re Asbestos II Consol.* Pretrial, Nos. 86 C 1739, 89 C 452, 1989 U.S. Dist.

19  LEXIS 5621 at *2-3 (N.D. Ill. May 10, 1989) ("distinct claims cannot be properly joined

20  under Rule 20 merely because they have common theoretical underpinnings.").

21      Here, plaintiffs joined eleven individuals from ten different states, each with his or

22  her own distinctive claim, in one action. Except for the allegation that each ingested

23  Avandia, plaintiffs assert no other relationship to one another. They do not allege that

24  they received Avandia from the same physician, hospital or direct source. They do not

25  allege a common condition for which they were prescribed Avandia. They draw no

26  similarities among their lengths of exposure to Avandia. Considering their geographic

27  diversity and the absence of any factual nexus between them, the joinder of these

28  disparate plaintiffs frustrates both the underlying purpose of the joinder rules and GSK's

1   right to removal. *In re Rezulin,* 168 F. Supp. 2d 136, 147 (S.D.N.Y. 2001) ("This is not

2   to say that the cost and efficiency benefits to joined plaintiffs are immaterial; they simply

3   do not carry the same weight when balanced against the defendant's right to removal.");

4   *see also In re Rezulin,* 2002 WL 31496228 at *1 ("Joinder 'of several plaintiffs who have

5   no connection to each other in no way promotes trial convenience or expedites the

6   adjudication of the asserted claims.'") (quoting *In re Diet Drugs,* 1999 WL 554584 at *3

7   (E.D. Pa. 1999)).

8       As plaintiffs have been misjoined, and the misjoinder of Gatta, the Pennsylvania

9   plaintiff, destroys diversity, this Court should sever the action brought by Gatta for the

10  purposes of maintaining GSK's right to removal of the actions involving the diverse

11  plaintiffs. [5] *See In re Rezulin,* 2002 WL 31496228 at *1 (finding Oregon, New York,

12  and New Jersey plaintiffs misjoined and severing claims of New York and New Jersey

13  plaintiffs "so as to preserve the defendants' right to removal of the remainder of the

14  action"); *In re Rezulin Products Liab. Litig.,* No. 00 Civ. 2843 (LAK), MDL 1348 (Nos.

15  02 Civ. 1716 and 02 Civ. 1717), 2002 WL 548750 at *2-3 (S.D.N.Y. Apr. 12, 2002).

16      **5.    Conclusion**

17      The citizenship of Barron Gatta, the mis-joined Pennsylvania plaintiff, and

18  McKesson, a fraudulently joined California defendant, must be disregarded. When it is,

19  there is complete diversity of citizenship, and the "forum defendant" rule is not a factor.

20  Accordingly, Plaintiffs' Motion to Remand should be denied.

21      **C.    This Court Has Federal Question Jurisdiction Based on Plaintiffs'
22          Claims Which Raise Questions Of Federal Law**

23      Since diversity jurisdiction over this matter is clear, GSK need not address in

24  detail the second ground for removal, federal question jurisdiction.

25      Plaintiffs' complaint contains many assertions that depend on construction and

26

27  _____

     [5] GSK reserves the right to ask this Court to sever the claims of the remaining plaintiffs so that
28  each plaintiff's claim may be tried separately.

1    application of federal statutes and regulations, and therefore this Court has federal

2    question jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and the principles set

3    forth in *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005).

4         There are several federal questions in plaintiffs' claims, and it is in the national

5    interest that there be a federal forum for claims that attack the federally-approved

6    labeling of a prescription medicine.  Count III of the Complaint, for example, explicitly

7    alleges that GSK violated the Food Drug and Cosmetic Act, 21 U.S.C. § 301 *et seq.*, and

8    that GSK illegally promoted an unsafe drug for public use and failed to warn the FDA,

9    doctors and consumers of the risks of Avandia.  *See* Pls' Compl. at 35-37, 42, 64.  (Cosn.

10   Decl. ISO Removal, Exh. "A").[6]

11        To the extent this Court seeks further exposition of the presence of federal issues

12   and federal question jurisdiction, GSK requests leave to file an additional brief in which

13   to present its position.

14   ///

15   ///

16   ///

17   ///

18   ///

19   ///

20   ///

21   ///

22   ///

23

24   [6] GSK notes that plaintiffs have made several unsupportable arguments in addressing the federal aspects of this case. For example, plaintiffs state that the burden of updating the label rests squarely with the defendant and argues that the preemption defense was "abolished," when, "[o]n September 27, 2007, the Prescription Drug User Free [sic] Authorization Act (PDUFA), H.R. 3580, was signed into law [and], for the first time, placed the burden of updating the warning label of a prescription drug squarely on the drug company." Pl.'s Br. at 11-12.  The Act that was signed by President Bush on September 27, 2007 is entitled the Food and Drug Administration Amendments Act of 2007, 110 P.L. 85; 121 Stat. 823 (FDAAA), codified at 21 U.S.C. §355.  It is evident from the plain language of the provision in question that the FDAAA does not alter the responsibility of the drug manufacturer with respect to labeling, and it has absolutely no effect on any preemption defense. *See* 21 U.S.C. § 355(o)(4)(I).

1

## IV.    CONCLUSION

This Court has both diversity jurisdiction and federal question jurisdiction over

Plaintiffs' Complaint.  Accordingly, Plaintiffs' Motion to Remand should be denied.

Dated: December 26, 2007                    DRINKER BIDDLE & REATH LLP


                                            /S/
                                            KRISTA L. COSNER

                                            Attorneys for Defendant
                                            SMITHKLINE BEECHAM
                                            CORPORATION d/b/a
                                            GLAXOSMITHKLINE and McKESSON
                                            CORPORATION