1

LEXSEE 2005 US DIST. LEXIS 41531



Caution
As of: Dec 19, 2007

**HELEN ARONIS, Plaintiff, v. MERCK & CO., INC., a New Jersey Corporation; McKESSON CORP., a California Corporation; and DOES 1-100, inclusive Defendants.**

**NO. CIV. S-05-0486 WBS DAD**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF CALIFORNIA**

*2005 U.S. Dist. LEXIS 41531*

**May 3, 2005, Decided**
**May 3, 2005, Filed**

**COUNSEL:** [*1] For Helen Aronis, Plaintiff: Clayeo C. Arnold, Clayeo C. Arnold, A Professional Law Corporation, Sacramento, CA; C Jean Cain, Law Office of C. Jean Cain, Carmichael, CA; Clifford Lee Carter, Clayeo C. Arnold, A Professional Law Corporation, Sacramento, CA.

For Merck & Company, Inc., Defendant: Susan B Altman, Steven James Boranian, Reed Smith LLP (San Francisco), San Francisco, CA.

For McKesson Corporation, Defendant: Kanika D. Corley, Morris Polich and Purdy, Los Angeles, CA.

**JUDGES:** WILLIAM B. SHUBB, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** WILLIAM B. SHUBB

**OPINION**

*MEMORANDUM AND ORDER RE: MOTION TO RE-MAND AND MOTION TO STAY*

Plaintiff brought this action in Sacramento County Superior Court for damages related to her heart attack allegedly caused by the drug Vioxx. Defendant Merck removed the case to this court. Defendant McKesson did not participate in the removal. Plaintiff now seeks a re-mand to state court and attorneys' fees incurred in con-nection with this motion. Merck opposes the motion to remand and moves the court to stay this case pending transfer to the Eastern District of Louisiana pursuant to *28 U.S.C. § 1407.*

Defendant Merck, a citizen of New [*2] Jersey, in its notice of removal alleged that this court has jurisdic-tion over the matter on the basis of diversity. *See 28 U.S.C. § 1332.* Merck alleged that the amount in contro-versy was greater than the requirement of $ 75,000 and that there existed complete diversity between the parties. Merck contends that McKesson, which plaintiff alleges is a resident of California, has been fraudulently joined as a defendant and therefore the presence of McKesson should not destroy diversity. Plaintiff objects to this characterization of McKesson as fraudulently joined and seeks a remand to state court.

For a federal court to have jurisdiction based on di-versity, complete diversity between the parties must normally exist. *Morris v. Princess Cruises, Inc., 236 F.3d 1061, 1067 (9th Cir. 2001).* Complete diversity only exists when no defendant is a citizen of the same state as any plaintiff. *Caterpillar, Inc. v. Lewis, 519 U.S. 61, 68, 117 S. Ct. 467, 136 L. Ed. 2d 437 (1996).* Defen-dant McKesson, which has not yet filed any papers in this matter, is, like plaintiff, a citizen of California. Therefore, complete diversity does not exist on the face of the complaint. However, [*3] an exception to the requirement of complete diversity exists where a non-diverse defendant has been fraudulently joined. *Morris, 236 F.3d at 1067.* "Fraudulent joinder" is a term of art. "[I]f the plaintiff fails to state a cause of action against a

2005 U.S. Dist. LEXIS 41531, *

resident defendant, and the failure is obvious according to the settled rules of the state," then the defendant's joinder is deemed fraudulent and is ignored for purposes of the diversity requirements. *Id.*(citation omitted).

The complaint does not state a cause of action against McKesson, and that failure is obvious. All plaintiff alleges is that "Vioxx is manufactured and distributed by the defendants." (Compl.). Plaintiff makes no allegation that McKesson ever handled the specific pills that were allegedly the cause of her injuries. Defendant concedes that McKesson distributes Vioxx, but hastens to add that there are hundreds, if not thousands, of such distributors. Plaintiff does not dispute this contention, but counters that McKesson is a major distributor of the drug.

The allegation that McKesson is a major distributor of Vioxx, even though taken as true at this stage, is not enough to support a claim against [*4] McKesson. To state a claim against a defendant, a plaintiff must allege a causal connection between the injury and the conduct of that defendant. *See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992).*

Here, plaintiff does not allege that McKesson contributed in any way to her injuries, only that McKesson is a distributor. Therefore, the complaint states no claim upon which relief can be granted against McKesson, and McKesson has therefore been fraudulently joined.

This case will soon be officially transferred to the Eastern District of Louisiana. A stay therefore is not necessary, and the court does not grant that motion.

IT IS THEREFORE ORDERED that:

(1) plaintiff's motion to remand be, and the same hereby is, DENIED;

(2) plaintiff's motion for attorneys' fees and costs be, and the same hereby is, DENIED; and

(3) defendant's motion to stay be, and the same hereby is, DENIED.

DATED: May 3, 2005

WILLIAM B. SHUBB

UNITED STATES DISTRICT JUDGE

2

23  APR 28 2003

UNITED STATES DISTRICT OF CALIFORNIA
DEPUTY

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

In re REZULIN LITIGATION                        CASE NO. CV 03-1647-R(RZx)

JACKIE BARLOW; CARMA DEKOVEN;
ERNESTINE DELAFONT; ZOE EGGER-             [PROPOSED] ORDER
MUKARVTZ; and SAMUEL                        DENYING PLAINTIFFS'
GODBOULDT,                                  MOTION FOR REMAND

        Plaintiffs,

v.

WARNER-LAMBERT CO.; PFIZER INC.;
JERROLD OLEFSKY; McKESSON CORP.,
et al.

        Defendants.

Defendants removed this action from state court to this Court alleging diversity jurisdiction. Defendants asserted that Jerrold Olefsky and McKesson Corp., both of whom are California residents, were fraudulently joined. Plaintiffs moved to remand to state court. The motions came on for hearing by the Court on April 21, 2003.

Having considered the motions and other documents in support of and in opposition to the motions, having heard the arguments of counsel, and being fully advised in the matter, the Court denies the motion.

The Court finds that Dr. Jerrold Olefsky ("Dr. Olefsky"), a patent-holder and clinical investigator, owed no legal duty to any of the plaintiffs, and, therefore, there is no possibility that the plaintiffs can prove a cause of action against Dr. Olefsky. Thus, Dr. Olefsky must be disregarded for purposes of determining federal diversity

1

KAYE SCHOLER LLP

1   jurisdiction.

2       The Court further finds that there is no possibility that plaintiffs could prove a

3   cause of action against McKesson, an entity which distributed this FDA-approved

4   medication to pharmacists in California. Pursuant to comment k of the Restatement

5   (Second) of Torts Section 402A and California law following comment k, a

6   distributor of a prescription drug is not subject to strict liability.

7       Accordingly, this Court has diversity jurisdiction over each of these actions.

8   The motion to remand is denied.

9       IT IS SO ORDERED.

10  Dated: April 28, 2003

11

12                                  MANUEL L. REAL

13                                  _____
                                    MANUEL L. REAL
                                    UNITED STATES DISTRICT JUDGE
14

15  Submitted by:

    O'DONNELL & SHAEFFER LLP
16  633 West Fifth Street, Suite 1700
    Los Angeles, California 90071
    Telephone:  (213) 532-2000
17  Facsimile:  (213) 532-2020

18  KAYE SCHOLER LLP
    1999 Avenue of the Stars
19  Los Angeles, California 90057
    Telephone:  (310) 788-1000
20  Facsimile:  (310) 788-1200

21  By: _Robert Barnes_____
        Robert Barnes
22  Attorneys for Defendants
    WARNER-LAMBERT COMPANY and PFIZER INC.

23

24

25

26

27

28

3

1
2
3
4
5
6
7

8                    IN THE UNITED STATES DISTRICT COURT

9                    FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                              SAN JOSE DIVISION

11   Suzanne Dante,                            NO. C 07-00081 JW

12              Plaintiff,                      **ORDER STAYING PROCEEDINGS**
                                                **PENDING TRANSFER TO MDL COURT**
         v.
13
     Merck & Company, Inc., et al.,
14
                Defendants.
15   _____/

16        On September 25, 2006, Suzanne Dante ("Plaintiff") filed this action against Merck & Co.,

17   Inc. ("Merck"), the McKesson Corporation ("McKesson"), and AmerisourceBergen Drug

18   Corporation ("ABC") in the Superior Court of the State of California, County of Los Angeles. The

19   Complaint seeks damages from Plaintiff's use of Vioxx, a drug manufactured by Merck. On January

20   5, 2007, Merck removed the action to District Court of Northern California on the basis of diversity

21   jurisdiction.

22        There are currently two motions pending before the Court. The first motion is Defendants'

23   motion to stay the action pending its transfer to the multidistrict litigation ("MDL") proceeding that

24   has been established to deal with the large volume of Vioxx-related cases in federal court. This

25   motion has been noticed for a hearing on March 5, 2007. (See Docket Item No. 6.) The second

26   motion is Plaintiff's motion for remand. This motion has been noticed for a hearing on March 19,

27   2007. (See Docket Item No. 11.) The Court proceeds to consider whether to stay this case pending

28   its transfer to the MDL panel.

United States District Court
For the Northern District of California

1    The power to stay proceedings in the interest of judicial economy is an inherent power left to

2  the discretion of the court. Landis v. North Am. Co., 299 U.S. 248, 254 (1936). In matters

3  involving similar jurisdictional issues, deference to the MDL is often appropriate for resolution of a

4  motion to remand, as it "provides the opportunity for the uniformity, consistency, and predictability

5  in litigation that underlies the MDL system." Conroy v. Fresh Del Monte Produce, Inc., 325 F.

6  Supp. 2d 1049, 1053 (N.D. Cal. 2004).

7    Defendants' basis for removal to federal court is that McKesson and ABC, whose presence in

8  the lawsuit destroys diversity, are fraudulently joined. See Plute v. Roadway Packacge Sys. Inc.,

9  141 F. Supp. 2d 1005, 1008 (N.D. Cal. 2001). Plaintiff does not dispute that there are presently

10  more than 50 California cases which involve the same fraudulent joinder of McKesson already

11  pending before the MDL judge. (Declaration of Alison B. Riddell in Support of Defendant Merck &

12  Co., Inc.'s Reply in Support of its Motion to Stay ¶ 2, Docket Item No. 14.) Due to the similarity of

13  the issues presented, this action was included in the Judicial Panel on Multi-district Litigation's

14  ("JPML") February 1, 2007 Conditional Transfer Order. In light of the number of cases presenting

15  issues similar to this action and the need for judicial consistency with respect to those cases, the

16  Court finds that the interest of judicial economy favors staying this action pending its transfer to

17  MDL Proceeding No. 1657, In re VIOXX Products Liability Litigation.

18    Plaintiff cites to Conroy v. Fresh Del Monte Produce for the proposition that the court should

19  consider the remand motion before entering a stay. 325 F. Supp. 2d 1049 (N.D. Cal. 2004).

20  However, Conroy explicitly states that the Ninth Circuit has not adopted the approach Plaintiff

21  claims to be binding. Id. at 1053. It further states that "[t]he decision to grant or deny a temporary

22  stay of proceedings pending a ruling on the transfer of the matter to the MDL court lies within this

23  Court's discretion." Id.

24    In light of the ongoing proceedings before the JPML, the Court STAYS all further

25  proceedings in this case. The Court terminates Plaintiff's motion for remand. Plaintiff may re-notice

26  the motion should the JPML decide not to take this case. All pretrial deadlines are continued until

27  there is a determination by the JPML. The hearing presently scheduled for both motions on March

28

2

1  5, 2007 and March 19, 2007, respectively, are VACATED.  The case management conference

2  presently scheduled for April 23, 2007 is also VACATED.

3

4  Dated:  February 27, 2007

5  JAMES WARE
   United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1    THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:

2    Alison B. Riddell ariddell@reedsmith.com
     Amanda Jane Murray amurray@reedsmith.com
3    Brian J. Panish bpanish@gbpwlaw.com
     Michael Kevin Brown mkbrown@reedsmith.com
4    Rachael Raymon Gilmer rgilmer@levinlaw.com
     Steven J. Boranian sboranian@reedsmith.com
5    Thomas Joonyul Yoo Tyoo@reedsmith.com
     Troy Alan Rafferty trafferty@levinlaw.com

6

7    Dated:  February 27, 2007                    Richard W. Wieking, Clerk

8

9                                                By: /s/ JW Chambers
                                                      Elizabeth Garcia
                                                      Courtroom Deputy
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1998 WL 663362 (S.D.Cal.)
(Cite as: Not Reported in F.Supp.2d)

C

Huntman v. Danek Medical, Inc.
S.D.Cal.,1998.
Only the Westlaw citation is currently available.
United States District Court, S.D. California.
Gloria HUNTMAN, Plaintiff,
v.
DANEK MEDICAL, INC., Sofamor-Danek Group,
Inc., Sofamor, S.N.C., Sofamor, Inc., Defendants.
No. 97-2155-IEG RBB.

July 24, 1998.

ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT [Doc. # 5]
GONZALEZ, J.

BACKGROUND

*1 This product liability action arises out of the implantation of defendant's bone screws into the pedicles [FN1] of plaintiff's spine during the course of back surgery on September 18, 1992.[FN2] In her complaint, plaintiff alleges that defendant improperly marketed and promoted its bone screws for pedicle fixation even though the FDA had only approved the use of these screws for anterior fixation.[FN3] Plaintiff alleges that "but for" this illegal marketing, she would have never had the screws implanted. As a result, plaintiff states the following causes of action: (1) strict liability for manufacturing defect; (2) strict liability for design defect; (3) strict liability based on inadequate warnings; (4) negligence; (5) negligence per se; (6) negligence based on a failure to warn; (7) fraud, misrepresentation and concealment; (8) breach of the implied warranty of fitness for a particular purpose; and, (9) battery.[FN4] Before addressing these claims, it is appropriate to discuss the factual background as it relates to (a) plaintiff's medical history and (b) the regulatory framework governing defendant's products.

FN1. Pedicles are the bony structures that extend posteriorly (towards the rear of the body) from each vertebrae.

FN2. On May 19, 1994, plaintiff filed a complaint as part of a class action in *Wilson et al. v. Acromed et al.*, 94-791-IEG (POR).

On October 11, 1994, that case was transferred to Judge Bechtle in the Eastern District of Pennsylvania as part of Multidistrict Litigation ("MDL") 1014, know as the Orthopaedic Bone Screw Products Liability Litigation. In 1996, Judge Bechtle ordered the multidistrict cases unbundled and transferred the case back to their original districts to be tried individually or in small groups. On May 8, 1997, plaintiff filed an amended complaint and, on December 1, 1997, plaintiff refiled this complaint under case no. 07-2155-IEG (RBB).

FN3. Although plaintiff names Danek Medical, Inc., Sofamor-Danek Group, Inc., Sofamor, Inc., as separate defendants, the Court notes that (a) Danek Medical marketed the devices used in plaintiff's surgery; (b) Sofamor-Danek is a holding company; (c) Sofamor, Inc. no longer exists; and, therefore, the Court will refer to defendants singularly as defendant Sofamor-Danek.

FN4. The Court notes that plaintiff's complaint fails to delineate particular causes of action and, therefore, it is difficult to ascertain the distinct legal theories on which plaintiff is proceeding. In its moving papers, defendant indicated that plaintiff advanced seven causes of action and plaintiff failed to object to this characterization. In treating plaintiff's complaint as containing nine causes of action, the Court simply distinguishes the three bases for plaintiff's strict liability claims.

A. Plaintiff's Medical History

Prior to the surgical implantation of defendant's bone screws, plaintiff experienced chronic back pain resulting from a fall in August of 1991. At that time, plaintiff was diagnosed with a slipped disk at L5-S1 and, on August 15, 1991, Dr. William Dobkin performed a laminectomy on plaintiff.[FN5] However, as the surgery failed to alleviate the pain, plaintiff began treatment with Dr. John Thompson in December of 1991. On September 18, 1992, Dr. Thompson performed nerve decompression and spinal fusion

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1998 WL 663362 (S.D.Cal.)
(Cite as: Not Reported in F.Supp.2d)

Page 2

surgery on plaintiff. In the course of that procedure, Dr. Thompson stabilized the fused disks using defendant's TSRH system. The TSRH system is an immobilization device comprised of hooks, rods, bolts, and screws designed to stabilize the vertebra to increase the chances of a successful fusion. To secure the device, Dr. Thompson placed two of the screws into the pedicles of plaintiff's spine. After the surgery, plaintiff's pain decreased to the point where she no longer needed pain medication. On March 10, 1994, however, plaintiff was in an automobile accident. After the accident, plaintiff's back pain increased and on May 19, 1994, plaintiff filed suit as part of class action.[FN6]

> FN5. A laminectomy involves the removal of extruded disk material and bone. In this surgery, Dr. Dobkin neither fused plaintiff's vertebra nor implanted any medical devices.

> FN6. Defendant contends that the instant suit arises out of an episode of ABC's "20/20" program which addressed allegations that doctors were using bone screws for procedures such as pedicle fixations in spite of the fact that these procedures had not gained FDA clearance. Defendant notes, however, that the fraud on the FDA claims were previously dismissed by Judge Bechtle. See Def. Ex. B, *In re Orthopedic Bone Screws Prods. Liab. Litig.*, MDL 1014, 1997 WL 305257, at *4-5 (E.D.Pa. Mar. 28, 1997).

B. The Regulatory History of Defendant's Products

The Food and Drug Administration ("FDA") regulates the marketing and sale of medical devices under the Medical Device Amendments ("MDA") of 1976. *SeeMedtronic, Inc. v. Lohr*, 518 U.S. 470 (1996) (discussing history of MDA). The MDA classifies medical devices into three categories based on the risk they pose to the public. Devices, such as the ones at-issue in this litigation, which either "present a potentially unreasonable risk of illness or injury" or which are "purported or represented to be for a use in supporting or sustaining human life or for a use which is of substantial importance in preventing impairment of human health" are designated as Class III devices. 21 U.S.C. § 360c(a)(1)(C). Class III devices are subject to the most extensive regulatory controls.

*2 Before a new Class III device may be introduced

to the market, the manufacturer must provide the FDA with a "reasonable assurance" that the device is both safe and effective. 21 U.S.C. § 360e(d)(2). In order to generate the data necessary to obtain this premarket approval, manufacturers may obtain FDA authorization to use the device to conduct premarket clinical testing under highly regulated conditions pursuant to the Investigational Device Exemption ("IDE").*See*21 U.S.C. § 360j. Manufacturers of new Class III devices may side-step the considerable requirements of obtaining premarket approval by demonstrating that the product is "substantially equivalent" to a product which pre-existed the enactment of the statute in 1976. *See*21 U.S.C. § 360e(b)(1)(B). To benefit from this exception to the premarket approval process, the manufacturer must obtain FDA authorization through the § 510(k) process. *SeeMedtronic*, 518 U.S. at 478-79 (describing § 510(k) procedure).

In the instant case, defendant marketed and sold the TSRH system pursuant to FDA authorization under § 510(k).*See* Def. Ex. T, Treharne Decl., ¶ ¶ 7-8.[FN7] The FDA's authorization provided for the screws in the TSRH system to be labeled and sold for use in sacral and anterior (frontal) applications to the spine. *See* Def. Ex. T2 (January 22, 1992 Letter from Philip Phillips of the FDA to Treharne). The Phillips letter also indicated that any use of the system for pedicle fixation was considered investigational by the FDA and, therefore, subject to the requirements of the IDE. On January 20, 1995, the FDA authorized the defendant's use of TSRH system for pedicle fixation pursuant to § 510(k).

> FN7. Richard Treharne is the Vice President of Research and Regulatory Affairs for the Sofamor-Danek Group. See Def. Ex. T., ¶ 1.

In the instant motion for summary judgment, defendant argues that all of plaintiff's claims should be dismissed because plaintiff has failed to provide any evidence that defendant's product caused plaintiff's injuries. Defendant also argues that (a) plaintiff's design defect claim is precluded by comment k to § 402A of the Restatement Second of Torts; (b) plaintiff's failure to warn, misrepresentation, concealment, fraud, negligence, and breach of warranty claims also fail because there was no reliance by either plaintiff or plaintiff's learned intermediary; (c) plaintiff fails to provide evidence of fraud, concealment or misrepresentation; and, (d) plaintiff has no cognizable battery claim

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1998 WL 663362 (S.D.Cal.)
(Cite as: Not Reported in F.Supp.2d)

against defendant because defendant did not touch plaintiff.


## DISCUSSION

### A. Legal Standard for Summary Judgment

Summary judgment is proper where the moving party demonstrates "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law."*Fed.R.Civ.P. 56(c)*. A moving party who bears the burden of proof at trial is entitled to summary judgment only when the evidence indicates that no genuine issue of material fact exists. *Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)*. If the moving party does not bear the burden of proof at trial, he may discharge his burden of showing that no genuine issue of material fact remains by demonstrating that "there is an absence of evidence to support the non-moving party's case."*Celotex, 477 U.S. at 325*. The moving party is not required to produce evidence showing the absence of genuine issue of material fact on such issues, nor must the moving party support its motion with evidence negating the non-moving party's claim.*Lujan v. National Wildlife Fed'n, 497 U.S. 871, 885 (1990)*. To avoid summary judgment, the nonmoving party must go beyond the pleadings and offer "specific facts showing that there is a genuine issue for trial."*Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)*.

**\*3** Throughout the review of a motion for summary judgment, the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Industrial Co. v. Zenith Radio, 475 U.S. 574, 587-88 (1986)* (citing *United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)*)."Finally, if the factual context makes the non-moving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial."*California Architectural Building Products v. Franciscan Ceramics, 818 F.2d 1466, 1468 (9th Cir.1987), cert denied484 U.S. 1006 (1988)*.


### B. Analysis

Based on the nature the arguments raised by defendant and their commonality to certain causes of action, the Court has placed plaintiff's claims in three

different groups for the following analysis: (a) the strict liability claims and negligence; (b) failure to warn, fraud, and breach of warranty; and, (c) negligence per se. The Court now turns to an examination of those claims.[FN8]

> FN8. The Court notes at the outset that plaintiff's claim for battery cannot survive the instant motion. As battery is defined as "any intentional, unlawful and harmful contact by one person with the person of another," and plaintiff has not and cannot produce any evidence that defendant touched plaintiff, this claim is hereby DISMISSED with prejudice. *Ashcraft v. King, 228 Cal.App.3d 604, 611 (1991)*.

#### 1. Strict Liability and Negligence Claims

Strict liability for a defective product encompasses three distinct theories: (a) manufacturing defect, (b) design defect, and (c) inadequate warnings.*Brown v. Superior Court, 44 Cal.3d 1049 1057 (1988)*. Often, these theories are collectively referred to as design defect claims. *Id.* Defendant argues that all plaintiff's claims under these strict liability theories and for simple negligence fail because (a) causation is an element of all of the claims and (b) plaintiff fails to provide evidence of causation.[FN9]*Sparks v. Owens-Illinois, Inc., 32 Cal.App.4th 461, 472 (1995)* (requiring causation for strict liability to attach to manufacturer for a defective product); *Noble v. Los Angeles Dodgers, 168 Cal.App.3d 912, 916 (1985)* (requiring causation in negligence action). To survive the instant motion for summary judgment, defendant contends that plaintiff must come forward with expert testimony which establishes that, to a reasonable degree of medical probability, a defect in defendant's device caused plaintiff's injury. *Jones v. Ortho Pharmaceutical Corp., 163 Cal .App.3d 396, 403 (1985)*. Defendant notes that plaintiff's reliance on the fact that she had back pain following her surgery is insufficient to establish a genuine issue of material fact concerning causation. Defendant underscores the dearth of evidence in support of plaintiff's claim by referencing the inability of plaintiff's own expert, Dr. Maguire, to ascertain the cause of plaintiff's back pain.[FN10]Moreover, defendant notes that there is no evidence that the use of the TSRH device was inappropriate or that, following surgery, it was damaged or had fallen out of place.[FN11]

> FN9. Although defendant advances the

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1998 WL 663362 (S.D.Cal.)
(Cite as: Not Reported in F.Supp.2d)

causation argument with respect to all of plaintiff's claims, the Court treats the strict liability claims together with the negligence claim based on the common requirement of medical causation.

FN10. When asked if he could conclude that defendant's device caused plaintiff's back pain, Dr. Maguire indicated that he could not reach such a conclusion and that he thought no-one could reach such a conclusion. Def. Ex. A, Maguire Dep., pp. 43–44.

FN11. Plaintiff's own expert confirms that there is no evidence that the TSRH implants and bone screws either broke, cracked, bent, loosened or slipped. Def. Mem., pp. 15-16. The Court notes that the complete lack of evidence of any flaw in the pedicle screw provides an independent basis for dismissal of plaintiff's manufacturing defect claim.

In opposition, plaintiff fails to directly address defendant's causation argument. Without challenging defendant's recitation of the appropriate legal standard for causation, plaintiff simply notes that plaintiff experienced increased pain after surgery and that Dr. Thompson, plaintiff's treating physician, testified that "screws will sometimes cause an inflammatory reaction around the pedicle or nerve root sleeve."Plaintiff Ex. 5, Thompson Depo., p. 80. Thompson also testified that he would recommend removal of the screws based on his experience that some patients' conditions improve after screw extraction. Id. at 83. Plaintiff also contends that Dr. Maguire testified that it is likely that the screws are contributing to plaintiff's pain. Plaintiff Ex. 15, Maguire Depo., pp. 59-60.

*4 The Court agrees with defendant that plaintiff has failed to come forward with evidence to establish to a reasonable degree of medical probability that defendant's product caused plaintiff's injury. At one point in his deposition, Dr. Maguire stated:
I really don't know why [plaintiff] is having the pain she is having. Is it because she is deconditioned? Is it because she has irritation of the level adjacent to the surgical site? Is it because she has a pseudoarthrosis and we can't determine it? Is it because the bulk of the metal beneath the paraspinal muscles causes the irritation? Is it still a continuation of the pain she had prior to the surgery which wasn't relieved by the surgery? These, off the top of my head, all remained possibilities, but none of them which I can say rise to

the surface and says this is clearly the reason. They may all be factors ... I'm not sure even if one is more probable than the other.

Def. Ex. A, p. 19. Moreover, plaintiff's assertion that Dr. Maguire indicated that the screws are likely contributing to plaintiff's pain is not supported by the cited portion of his deposition. See Plaintiff Ex. 15, Maguire Depo., pp. 59-60. At that portion of the deposition, Dr. Maguire discusses numerous factors which could be causing plaintiff pain without identifying the screws as a source of the pain. Regardless of whether Dr. Maguire actually testified that the screws are a contributing factor to plaintiff's pain, such testimony would still fail to establish the existence of a genuine issue of material fact. Plaintiff's evidence does not contain any competent testimony that plaintiff's pain is caused to a reasonable degree of medical certainty by the placement of defendant's bone screws in the pedicles of plaintiff's vertebra.

As the California Court of Appeals recently stated in Bockrath v. Aldrich Chemical Company, Inc., 64 Cal.App.4th 1, 74 Cal.Rptr.2d 774 (May 21, 1998):
It is axiomatic that a defendant cannot be held liable in tort for an injury that he or she did not cause. Thus, under any tort theory, a plaintiff must allege that there is a logical connection between injuries and a defendant's conduct. The connection is dealt with by the courts through the concept of "legal" causation which is an essential element for not only plaintiff's negligence and products liability claims but also for the remaining tort theories.

Bockrath, 74 Cal.Rptr.2d at 779-80 (internal citations omitted). In the absence of expert testimony which establishes that, to a reasonable degree of medical probability, the placement of defendant's screws in the pedicles of plaintiff's spine caused plaintiff's injury, plaintiff's strict liability and negligence claims must fail. Accordingly, defendants' motion for summary judgment is GRANTED with respect to plaintiff's strict liability and simple negligence claims.

2. Failure to Warn, Fraud, and Breach of Warranty Claims

Plaintiff's claims for failure to warn, fraud, and breach of warranty all arise from the same set of allegations. Plaintiff contends that defendant overpromoted the TSRH system to doctors, including plaintiff's surgeon, by encouraging them to use the

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1998 WL 663362 (S.D.Cal.)
(Cite as: Not Reported in F.Supp.2d)

screws for pedicle fixation without warning them that (a) the FDA only approved these screws for anterior and sacral fixation and (b) pedicle use of the screws entailed certain specific risks. Defendant argues that these claims all fail because plaintiff provides no evidence that Dr. Thompson relied on any statements by defendant in deciding to place the screws in the pedicles. *See Conrad v. Bank of America,* 45 Cal.App.4th 133, 156 (1996) (stating that justifiable reliance is an element of a fraud claim); *Toole v. Richardson-Merrell, Inc.,* 251 Cal.App.2d 689, 706-08 (1967) (discussing individual reliance by doctor as element of breach of warranty claim). Defendant argues that reliance by the doctor is critical to all these claims because defendant's duty to warn of any dangers ran to plaintiff's physician under the learned intermediary doctrine. *Carlin v. Superior Court,* 13 Cal.4th 1104, 111; *see also Carmichael v. Reitz,* 17 Cal.App.3d 958, 988-89 (1971) (providing rationale for duty running to doctor instead of patient). With respect to the failure to warn claim,[FN12] defendant further argues that it cannot be held liable for failure to warn of a known risk. *Plenger v. Alza Corp.,* 11 Cal.App.4th 349, 362 ("[w]e are aware of no authority which requires a manufacturer to warn of a risk which is readily known and apparent to the consumer, in this case the physician") This is especially pertinent in a case where the doctor knew of the particular risk. *Rosburg v. Minnesota Min. & Mfg. Co.,* 181 Cal.App.3d 726, 735 (1986) (finding lack of causation on failure to warn claim where doctor knew of risk).

> FN12. Although the Court recognizes that failure to warn claims for strict liability and negligence are not identical, the Court treats them together, as have both parties throughout their arguments. *See Carlin v. Superior Court,* 13 Cal.4th 1104, 1112-15 (1996) (describing differences between strict liability and negligence failure to warn claims).

*5 In support of these arguments, defendant notes that, prior to plaintiff's surgery, Dr. Thompson had been a physician for over 30 years and had performed between 50-70 spinal fusions with pedicle screws. Dr. Thompson testified that he was aware of the risks involved in these procedures based on his independent research which involved (a) speaking with other physicians who were performing the procedure; (b) reading physician-authored articles concerning the procedure; and, (c) attending symposiums and conferences at which the pedicle

screw techniques were presented. Def. Ex. H (Thompson Depo.). Dr. Thompson further testified that (a) he was generally aware of the lack of FDA approval for pedicle fixation from other doctors (Def.Ex. H, p. 64) and (b) defendant's representative specifically informed him there was no FDA approval for pedicle fixation (Def.Ex. H, p.89). Defendant further notes that there is absolutely no evidence that Dr. Thompson relied on any statements made by defendant.

In opposition, plaintiff argues that the learned intermediary doctrine does not apply in this case because defendant overpromoted the use of its product. In *Evraets v. Intermedics Intraocular, Inc.,* 29 Cal.App.4th 779 (1994), the Court of Appeals noted that manufacturers are generally immune from strict liability where they have provided physicians with adequate warnings of the risks. *Evraets,* 29 Cal.App.4th at 793. However, "if the manufacturer negligently overpromotes its products, or downplays their dangerous effects, it will not be relieved of liability for the foreseeable misuse of the drug and resulting injuries."*Id.* Although plaintiff attempts to support this argument by asserting that defendant sponsored numerous symposiums, the only evidence which indicates that defendant actually participated in any pedicle screw conferences is an August 11, 1993 warning letter from Ronald Johnson of the FDA to Ron Picard, President of the Danck Group. Plaintiff's Ex. 45. In that letter, Johnson refers to defendant's improper provision of promotional material for two pedicle fixation seminars (one in May of 1993 at Orlando and one in April of 1993 in St. Louis) and requests that defendant cease any further promotional activity. In addition, plaintiff also cites to Dr. Thompson's testimony to support her overpromotion argument. In his deposition, Dr. Thompson testified that defendant's representatives discussed the use of their product for pedicle fixation. Plaintiff Ex. 39, p. 31. In the alternative, plaintiff argues that, even if the learned intermediary doctrine applies, the warnings provided by defendant in the package insert are insufficient because they fail to warn of the risks of using the screws for pedicle fixation.

The Court agrees with defendant that the leaned intermediary doctrine applies and, in the absence of evidence that Dr. Thompson relied on defendant's misrepresentations, plaintiff's claims for failure to warn, fraud and breach of warranty must be dismissed. Plaintiff's effort to defeat the applicability of the learned intermediary doctrine based on *Evraets* is unconvincing. In *Evracts,* the Court's focus was not

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1998 WL 663362 (S.D.Cal.)
(Cite as: Not Reported in F.Supp.2d)

on whether a manufacturer has a duty to warn the patients directly, but whether a manufacturer has provided adequate warnings to the physician to allow the physician to properly advise the patient of the risks. *Evraets, 29 Cal.App .4th at 793.* Liability may attach where the warnings were insufficient in light of the promotional efforts. *Id.* Therefore, the critical inquiry is whether the doctor was provided with adequate warnings.[FN13] In addition, the adequacy of the warnings is immaterial where the doctor knows of the specific risks. *Rosburg v. Minnesota Min & Mfg. Co., 181 Cal.App.3d 726, 735 (1986).* In this case, the uncontroverted testimony of Dr. Thompson is that he had an independent knowledge of the risks of pedicle fixation. Def. Ex. H, p. 53.

> FN13. Before addressing the adequacy of the warnings, the Court notes that even if *Evraets* stood for the proposition that the learned intermediary doctrine could be abrogated where a manufacturer had overpromoted a product, there is insufficient evidence in this case to raise a genuine issue of material fact on that issue. Plaintiff's evidence of potential overpromotion by defendant is contained in the FDA warning letter and Dr. Thompson's deposition. Although that letter indicates that defendant's participation in two conferences was improper, it alone does not give rise to an inference that defendant engaged in a pattern of overpromotion. Moreover, the portion of Dr. Thompson's testimony cited by plaintiff must be examined in light of the fact that defendant's representative informed Dr. Thompson that the product was not authorized by the FDA for pedicle fixation. Def. Ex. H, p. 89. This evidence actually undercuts any assertion of overpromotion based on defendant's alleged failure to advise of the FDA's position vis a vis pedicle implantation.

*6 In this case, plaintiff's inadequate warning argument is premised on plaintiff's assertion that defendant overpromoted the use of the screws. Essentially, plaintiff contends that defendant marketed the screws for pedicle implantation despite the fact that the FDA did not approve such use. Plaintiff argues that because defendant only had authorization for sacral and anterior use, plaintiffs could not market for pedicle usage in the absence of warnings concerning the dangers of pedicle fixation. The Court notes two fundamental problems with this

argument. First, as previously noted by the Court, plaintiff fails to present sufficient evidence that defendant engaged in overpromotion. Although plaintiff produces evidence that defendant improperly marketed its screws at two seminars and mentioned pedicle fixation to Dr. Thompson, this evidence is insufficient to create a genuine issue of material fact in light of the circumstances. Dr. Thompson also testified that he was independently informed of the risks and that defendant specifically told him that pedicle use was not FDA-approved.

Second, and more importantly, plaintiff fails to adequately differentiate between defendant's conduct in the marketing of the TSRH system and the treating physician's independent medical decision to use the TSRH screws for pedicle fixation. As defendant points out, numerous authorities including Judge Bechtle and the FDA recognize that a manufacturer's labeling and marketing of a product for one use does not preclude a doctor from deciding to use it for another "off-label" use. *See In re Orthopedic Bone Screw Prods. Liab Litig.,* MDL 1014, 1997 WL 305257 at *3-5 (Judge Bechtle) ("decision whether or not to use a drug for an of-label purpose is a matter of medical judgment, not of regulatory approval"); *Washington Legal Found. v. Kessler,* 880 F.Supp. 26, 28 n.1 (D.D.C.1995) ("[i]t is not unlawful for doctors to employ or prescribe medical products for 'unapproved' uses. Indeed, the FDA claims that it has 'long recognized the important role that some unapproved uses may play in the practice of medicine." '). Such a decision is both entirely legal and entirely within the doctor's discretion. In the absence of evidence that a doctor made the decision to use a product in an "off-label" manner in reliance on a manufacturer's misrepresentations, claims for failure to warn, fraud and breach of warranty cannot stand. In the instant case, there is no evidence that Dr. Thompson relied on any statements by defendant in determining the appropriate course of action for plaintiff's treatment.[FN14] Accordingly, the Court GRANTS defendant's motion with respect to these claims. Plaintiff's claims for failure to warn, fraud and breach of warranty are hereby DISMISSED with prejudice.

> FN14. The Court also notes that, aside from warnings concerning the absence of FDA approval for pedicle fixation, plaintiff fails to identify any other shortcomings in defendant's warning labels. In fact, the warning label for the TSRH system discusses the following "possible adverse

Not Reported in F.Supp.2d                                                    Page 7
Not Reported in F.Supp.2d, 1998 WL 663362 (S.D.Cal.)
(Cite as: Not Reported in F.Supp.2d)

effects" from implantation of the system: (a) early or late loosening of the components; (b) disassembly, bending, loosening and/or breakage of any or all of the components or instruments; (c) foreign body reaction to the implants including possible tumor formation; (d) non union; (e) loss of neurological function, appearance of radiculopathy and/or development of pain; (f) nerovascular compromise including paralysis or other types of serious injury; and, (g) death. Def. T3 (package insert). Even assuming Dr. Thompson relied on this insert, plaintiff fails to articulate how these warnings do not adequately address the gravamen of her complaints of pain.

### 3. Negligence Per Se

In order to state a claim for negligence per se, plaintiff must demonstrate: (a) defendant violated a statute or regulation; (b) the violation caused plaintiff's injury; (c) the injury resulted from the kind of occurrence the statute or regulation was designed to prevent; and, (d) the plaintiff was one of the class of persons the statute or regulation was designed to protect.*Daum v. Spine Care Medical Group, Inc.,* 52 Cal.App.4th 1285, 1306 (1997). Plaintiff alleges that, in failing to inform plaintiff of the investigational nature of pedicle fixation, defendant's conduct violated (a) federal informed consent regulations governing clinical trials pursuant to the Investigational Device Exemption (IDE) and (b) Cal. Health & Safety Code § § 24173 (informed consent for medical experimentation), 26630 (misbranding), 26638 (misbranding), [FN15] and 26670 (requiring compliance with MDA approval process for medical devices). Essentially, plaintiff's negligence per se claims can be divided into two groups-those which are premised on allegations that plaintiff unknowingly participated in a medical experiment and those which reiterate plaintiff's allegations that defendant's screws were misbranded because they did not contain warnings with respect to pedicle use despite defendant's efforts to market the screws for such use.

FN15. Section 26638 provides, in pertinent part, "[a]ny drug or device is misbranded unless its labeling bears all of the following information: (a) Adequate directions for use. (b) Such adequate warnings against use in pathological conditions or by children where its use may be dangerous to health."Cal.

Health & Safety Code § 26638 (West 1984).

*7 The Court finds that these claims cannot survive the instant motion for summary judgment for several reasons. First, in addressing the negligence per se claims of plaintiffs in the Multidistrict Litigation, Judge Bechtle provided the following causal requirement:

Plaintiffs allege that defendants violated the law by actively promoting or marketing their medical devices in violation of FDA requirements. To prevail on this issue each plaintiff has the burden of showing that ... [defendant] promoted/marketed its medical device to plaintiff's particular doctor or surgeon for use in the pedicles of the spine and that such promotion caused the surgeon to decide that surgical implantation of the particular device was the best procedure for improving plaintiff's condition.

*In re Orthopedic Bone Screw Prods. Liab. Litig.,* 1995 WL 273597, at *12 n.13 (E.D.Pa. Feb. 22, 1995). Pursuant to Judge Bechtle's order, plaintiff must demonstrate reliance on the alleged statutory violation to establish negligence per se. As the Court has previously found in section B(2) of this order, plaintiff has failed to come forward with any evidence that Dr. Thompson relied on any representations made by defendant. Accordingly, plaintiff's negligence per se claims all fail to satisfy this requirement and, therefore, are subject to dismissal.

Second, with respect to plaintiff's claims based on the need to secure informed consent for plaintiff's participation in an IDE, the Court notes that there is no evidence before it that plaintiff was part of any IDE. Therefore, defendant (or more properly plaintiff's physician, Dr. Thompson) need not comply with the informed consent provisions of the IDE regulations. *In re Orthopedic BoneScrew Prods. Liab. Litig.,* 1996 U.S. Dist. Lexis 2825, 11-14 (E.D.Pa. Mar. 8, 1996). The fact that Dr. Thompson choose to use defendant's product in an "off-label" manner outside of an IDE clinical trial does not subject defendant to liability simply because other doctors were conducting pedicle fixation experiments pursuant to the IDE exemption. As the Wisconsin Court of Appeals recently stated: "[a]lthough hospitals must give certain information to those of their patients participating in clinical investigations of "off-label" uses of medical devices, see 21 C.F.R. pts. 50, 56 & 812, the hospital need not give this information to patients who are not part of such an investigation, even though their physicians are

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1998 WL 663362 (S.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 8

treating them with the device in an identical 'unapproved' way."*Staudt v. Froedtert Memorial Lutheran Hospital,* 1998 Wis.App. Lexis 343, 4-5 (Wis.App. Mar. 17, 1998). Accordingly, plaintiff's claims for negligence per se are hereby DISMISSED with prejudice.

### CONCLUSION

Based on the preceding discussion, the Court GRANTS defendant's motion for summary judgment. Plaintiff's complaint is hereby DISMISSED with prejudice.

IT IS SO ORDERED.

S.D.Cal.,1998.
Huntman v. Danek Medical, Inc.
Not Reported in F.Supp.2d, 1998 WL 663362 (S.D.Cal.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

5

LEXSEE 1989 U.S. DIST LEXIS 5621


Caution
As of: Dec 21, 2007

IN THE MATTER OF ASBESTOS II CONSOLIDATED PRETRIAL

Nos. 86 C 1739, 89 C 452

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF
ILLINOIS, EASTERN DIVISION

*1989 U.S. Dist. LEXIS 5621*

**May 10, 1989, Decided**

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Defendant asbestos manufacturers filed motions to sever each plaintiff's claim on the basis of misjoinder of party plaintiffs, and to dismiss the strict liability in tort claims of certain plaintiffs.

**OVERVIEW:** Plaintiffs claimed that because all their and decedents' claims were reasonably and logically related, they arose out of the "same transactions or occurrences" within the meaning of federal permissive joinder rules. The court found that plaintiffs' claims did not arise from the same transaction or occurrence, or series, thereof, and accordingly, plaintiffs were misjoined. No allegation was made that individual plaintiffs and decedents suffered exposure to products of any defendant at the same time nor at the same place. One defendant alleged that the strict liability in tort actions asserted by two plaintiffs were barred by the Illinois Product Liability Statute of Repose, Ill. Rev. Stat. ch. 110, para. 13-213(b)(d) (1987). Viewing the facts in a light most favorable to one plaintiff, the court concluded that his strict liability claim could not be dismissed at the time. As far as the other plaintiff, he contended that 1986 was in fact the correct year in which he last worked; thus, the motion to dismiss was denied and plaintiff was allowed to amend the complaint in a manner deemed appropriate for the exclusive purpose of correcting this typographical error.

**OUTCOME:** The court granted the asbestos manufacturers' motion to sever and granted the motions to dis-

miss strict liability in tort claims except as to two plaintiffs to whom said motions were denied.

**LexisNexis(R) Headnotes**

*Civil Procedure > Parties > Joinder > Permissive Joinder*
[HN1] *Fed. R. Civ. P. 20(a)* states in part: All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action. *Fed. R. Civ. P. 20(a)*. First there must be an identity of "transactions" or "occurrences" or a "series of transactions or occurrences." Only if this inquiry is answered in the affirmative need the second criteria, the presence of common questions of law or fact, be addressed.

*Civil Procedure > Parties > Joinder > Permissive Joinder*
[HN2] Allegations of similar facts do not satisfy the transaction or occurrence test.

*Civil Procedure > Parties > Joinder > Permissive Joinder*
[HN3] Distinct claims cannot be properly joined under *Fed. R. Civ. P. 20* merely because they have common theoretical underpinnings.

1989 U.S. Dist. LEXIS 5621, *

Governments > Legislation > Statutes of Repose
Torts > Procedure > Statutes of Repose > Products Liability
Torts > Products Liability > Strict Liability

[HN4] The Illinois Product Liability Statute of Repose, Ill. Rev. Stat. ch. 110, para. 13-213(b)(d) (1987) provides an absolute limit of 10 or 12 years from the date of first sale within which a plaintiff must file a strict products liability claim. After 10 or 12 years have passed, the plaintiff's claim is barred, regardless of the plaintiff's knowledge or lack of knowledge of the alleged injury.

**OPINION BY:** [*1] KOCORAS

**OPINION**

MEMORANDUM OPINION

CHARLES P. KOCORAS, UNITED STATES DISTRICT JUDGE:

This matter is before the court on defendants' motions to (1) sever each plaintiff's claim on the basis of misjoinder of party plaintiffs, and (2) dismiss the strict liability in tort claims of certain plaintiffs. For the following reasons, defendants' motion to sever is granted and the motions to dismiss are granted except as to plaintiffs Schnur and Finch.

*DISCUSSION*

*Motion to Sever*

Plaintiffs claim that because all plaintiffs' and decedents' claims are reasonably and logically related, they arise out of the "same transactions or occurrences" within the meaning of federal permissive joinder rules. [HN1] Rule 20(a) states in pertinent part:

All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action.

Fed. R. Civ. Pro. 20(a). First there must be an identity of "transactions" or "occurrences" or a "series of transactions or occurrences." Only [*2]  if this inquiry is answered in the affirmative need the second criteria, the presence of common questions of law or fact, be addressed. The court finds that the plaintiffs' claims do not arise from the same transaction or occurrence, or series, thereof, and accordingly, plaintiffs are misjoined under Rule 20(a).

Plaintiffs' assert that the evidence will show that all plaintiffs and decedents were pipefitters in the same union, they worked at common sites and were exposed to defendants' asbestos products. These facts do not establish a similar transaction or occurrence, but rather tend to establish common facts. [HN2] Allegations of similar facts do not satisfy the transaction or occurrence test. See generally, Saval v. BL, Ltd., 710 F.2d 1027 (4th Cir. 1983).

No allegation is made that the individual plaintiffs and decedents suffered exposure to products of any defendant at the same time nor at the same place. Further, although plaintiffs and decedents all appear to suffer from the same asbestos-related disease, pleural asbestosis, all plaintiffs exposure differs as to duration and magnitude. [HN3] Distinct claims cannot be properly joined under Rule 20 merely because they have common [*3]   theoretical underpinnings. Saval, 710 F.2d at 1031.

Plaintiffs' concern for judicial economy in joining these claims is duly recognized by the court, but nevertheless, joinder does not alleviate the confusion that would be characteristic of a trial involving over 100 plaintiffs, each with an individual claim based on unique facts, the very situation that Rule 20 requirements are designed to minimize. The court notes, however, that numerous alternative trial structures are being utilized to address the asbestos case overload in the courts. See, T. Willging, Trends in Asbestos Litigation, (Federal Judicial Center 1987). Such methods more appropriately address the plaintiffs' concerns rather than trying to join dissimilar claims in one case.

B. Motion to Dismiss

Defendant Owens-Corning Fiberglas Corporation ("Owens-Corning") filed motions to dismiss the strict liability in tort actions alleged by eight individual plaintiffs: Ernest Jacksetich (Count VII); Robert Himes, Sr. (Count VII); Henry Stuky (Count VII); Dale Finch (Count VII); Eugene Schnur (Count VII); Arthur Schiavo (Count VII); Thomas Lee Cochran, as Administrator of the estate of Edgar T. Cochran, deceased (Counts [*4]   II and IV); and Dolly F. Downs, as administrator of the estate of Wendell L. Downs, deceased (Counts II and IV). Plaintiffs' answer discusses only the motions pertaining to plaintiffs Eugene Schnur and Dale Finch. Accordingly, the court grants the remaining six (6) motions to dismiss citing no objection.

Owens-Corning alleges that the strict liability in tort actions asserted by Schnur and Finch are barred by the Illinois Product Liability Statute of Repose. Ill. Rev. Stat. Ch. 110, para. 13-213(b)(d) (1987). In support, Owens-Corning states that since the complaint alleges that Schnur was last employed in 1977, more than 12 years

1989 U.S. Dist. LEXIS 5621, *

has past since the claim was filed. [HN4] *The Statute of Repose provides an absolute limit of ten or twelve years from the date of first sale within which a plaintiff must file a strict products liability claim. After 10 or 12 years have passed, the plaintiff's claim is barred, regardless of the plaintiff's knowledge or lack of knowledge of the alleged injury.* Mc Leish v. Sony Corporation of America, 152 Ill. App.3d 628, 504 N.E.2d. 933, 935 (1st Dist. 1987).

Plaintiff argues that discovery will show that Schnur left employment after January 19, 1977. Since [*5] the complaint was filed on January 19, 1989, it is not apparent that the claim violates the Statute of Repose. Viewing the facts in a light most favorable to the plaintiff, the court concludes that Schnur's strict liability claim should not be dismissed at this time.

Plaintiff Finch, it is alleged in the complaint, was last employed in 1977. Since plaintiff contends that 1986 is in fact the correct year in which Finch last worked, the motion to dismiss will be denied and plaintiff shall amend the complaint in a manner deemed appropriate for the exclusive purpose of correcting this typographical error.

## CONCLUSION

For the reasons stated, defendants' motion to sever is granted and the motions to dismiss strict liability in tort claims are granted except as to plaintiffs Schnur and Finch to whom said motions are denied.

It is so ordered.

Dated: May 10, 1989

6

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 32155268 (D.Minn.)
(Cite as: Not Reported in F.Supp.2d)

**H**

InreBaycol Products Litigation
D.Minn. 2002.
Only the Westlaw citation is currently available.
        United States District Court, D. Minnesota.
        Inre: BAYCOL PRODUCTS LITIGATION.
                        Mary A. SMITH,
                                v.
            BAYER CORPORATION et al.
                **MDL No. 1431 (MJD)**
                    **Case No. 02-139**

                    May 24, 2002.


                        Trial Order

                            ORDER


**\*1** This matter is before the Court upon Plaintiff
Smith's motion to remand. Bayer Corporation
("Bayer") opposes the motion on the basis that
Plaintiff has fraudulently joined Longs Drug Stores,
Inc. ("Longs Drug") in an effort to defeat diversity
jurisdiction.


                        **Background**

Plaintiff filed her Complaint in California state court
on September 7, 2001. In her Complaint, Plaintiff
asserted claims of products liability and negligence
against Longs Drug. Plaintiff is a citizen of
California. Defendant Bayer Corporation is an
Indiana corporation, with its principal place of
business in Pennsylvania. Defendant Longs Drug has
its principal place of business in California. Thus, for
purposes of diversity jurisdiction, the parties do not
dispute that Longs Drug is a citizen of California.

On October 11, 2001, Defendant Bayer Corporation
filed a notice of removal with the United States
District Court, Northern District of California. In its
removal petition, Bayer asserts that Plaintiff failed to
state a cause of action against Longs Drug, and that
the court therefore had jurisdiction over Plaintiff's
Complaint based on diversity of citizenship under 28
U.S.C. § 1332(a). Bayer contends that fraudulently
joined defendants will not defeat diversity
jurisdiction.

On October 12, 2001, Plaintiff filed a First Amended
Complaint in California state court. In the Amended
Complaint, Plaintiff withdrew her products liability
claim against Longs Drug, adding a professional
negligence claim in its place.


                        **Standard**

Remand to state court is proper if the district court
lacks subject matter jurisdiction over the asserted
claims. 28 U.S.C. § 1447(c). In reviewing a motion
to remand, the court must resolve all doubts in favor
of a remand to state court, and the party opposing
remand has the burden of establishing federal
jurisdiction by a preponderance of the evidence. In re
Business Men's Assurance Co. of America, 992 F.2d
181, 183 (8th Cir. 1983) (citing Steel Valley Auth. v.
Union Switch & Signal Div., 809 F.2d 1006, 1010
(3rd Cir. 1987)cert. dismissed484 U.S. 1021 (1988)).

Fraudulently joined defendants will not defeat
diversity jurisdiction.Ritchey v. Upjohn Drug
Company, 139 F.3d 1313, 1318 (9th Cir.
1998)."Fraudulent joinder exists if, on the face of
plaintiff's state court pleadings, no cause of action
lies against the resident defendant."Anderson v.
Home Insurance Company, 724 F.2d 82, 84 (8th Cir.
1993). Dismissal of fraudulently joined non-diverse
defendants is appropriate. Wiles v. Capitol indemnity
Corp., 280 F.3d 868, 871 (8th Cir. 2002).

**\*2** Initially, in determining the propriety of remand,
the Court must review plaintiff's pleading at the time
of the petition for removal. Pullman Co. v. Jenkins,
305 U.S. 534, 537 (1939). In addition, a plaintiff may
not amend her complaint in order to state a claim
against a nondiverse defendant in order to divest the
federal court of jurisdiction. Cavallini v. State Farm
Mutual Auto-Insurance Co., 44 F.3d 256, 265 (Fed.
Cir. 1995).Seealso, Henderson v. Shell Oil Co., 173
F.2d 840, 842 (8th Cir. 1949) (federal court has
power to amend petition after removal, but such
power does not extend to elimination of jurisdictional
defects present in the state court action). The Court
will thus look to the original Complaint to determine
whether Longs Drug has been fraudulently joined.[FN1]


            FN1. Plaintiff provides the Court no

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 32155268 (D.Minn.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 2

authority for her argument that the Court should look to pleadings filed in state court after the case has been removed. Because Plaintiff attempted to file the First Amended Complaint in state court, after the case was removed to federal court, the filing was ineffective. Also, as an answer has been filed. Plaintiff must now seek leave of the Court to file the First Amended Complaint. Plaintiff ha; not done so, however.

If a plaintiff fails to state a cause of action against a non-diverse defendant, and the failure is obvious according to settled rules of law of the state in which the action was brought, the joinder of the non-diverse defendant is deemed to be fraudulent. Ritchev v. Upiohn Drug Company, 139 F.3d 1313, 1318 (9th Cir. 1998). Bayer argues that a retail pharmacy cannot be held strictly liable for injuries caused by a defective drug pursuant to California law. Murphy v. E.R. Squibb & Sons, Inc., 40 Cal.3rd 672, 675-681 (1985). It appears that Plaintiff does not dispute this principle, as is evidenced by the fact that Plaintiff attempted to amend her Complaint to withdraw this cause of action against Longs Drug. In addition, Bayer argues that Plaintiff's negligence claim against Longs Drug also fails to state a claim. The Complaint alleges that Longs Drug was negligent in failing to provide adequate warnings of the dangers posed by Baycol and that Longs Drug concealed specific knowledge concerning Baycol from Plaintiff. Complaint ¶ 35. However, the Complaint further states that Longs Drug dispensed Baycol to Plaintiff on March 24, 2001. Id. ¶¶ 15 and 16.The Complaint further alleges that prior to May 21, 2001, Bayer did not advise physicians and drugstores of the problems it encountered with Baycol, and did not advise physicians or drugstores that the 0.8 mg. dosage of Baycol was potentially dangerous, even fatal. Id. ¶ 13.Thus, the allegations in the Complaint defeat her negligence claim against Longs Drug, as a defendant cannot be held liable for failing to warn of unknown risks. Merrill v. Navegar, Inc., 26 Cal.4th 465, 485 (2001).

**\*3** Based on the above, the Court finds that Bayer has met its burden of showing that Longs Drug was fraudulently joined, as it is obvious based on the face of the Complaint, that no cause of action was alleged against Longs Drug.[FN2]

> **FN2.** Because the Court finds that Longs Drug was fraudulently joined. Longs Drug's failure to consent to removal does not render

the petition to remove ineffective. Errnich v. Touche Ross & Co., 846 F.2d 1190, 1193, n. 1 (9th Cir. 1988); Seagate Technology LLC v. Dalia China Express Int'l Corp. Ltd., 169 F.Supp. 2d 1146, 1152, (N.D. Cai. 2001).

Accordingly, IT IS HEREBY ORDERED that:
1. Plaintiffs' Motion to Remand is DENIED.
2. Defendant Longs Drug Stores, Inc. is DISMISSED.

Date: May 24, 2002
_____ //s//_
Michael J. Davis, United States District Court

D.Minn. 2002.
In re: BAYCOL PRODUCTS LITIGATION. Mary A. SMITH, v. BAYER CORPORATION et al.
Not Reported in F.Supp.2d, 2002 WL 32155268 (D.Minn.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

7

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 554584 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 1

▷
In re Diet Drugs
E.D.Pa.,1999.
Only the Westlaw citation is currently available.
United States District Court, E.D. Pennsylvania.
In re: DIET DRUGS (Phentermine, Fenfluramine,
Dexfenfluramine) Products Liability Litigation
Maggie M. CHANEY, et. al.
v.
GATE PHARMACEUTICALS, et. al.
**No. Civ.A. 98-20478, 1203.**

July 16, 1999.

F. Hilton-Green Tomlinson, Pritchard Mccall &
Jones, Birmingham, AL, Arnold Levin, Levin,
Fishbein, Sedran & Berman, Philadelphia, PA,
George M. Fleming, Houston, TX, James L. Doyle,
II, Rand P. Nolen, Fleming, Hovenkamp and
Grayson, P.C., Houston, TX, for Maggie M. Chaney,
Plaintiff.
F. Hilton-Green Tomlinson, Arnold Levin, George
M. Fleming, James L. Doyle, II, Rand P. Nolen, (See
above), for Betty J. Williams, Plaintiff.
F. Hilton-Green Tomlinson, Arnold Levin, George
M. Fleming, James L. Doyle, II, Rand P. Nolen, (See
above), for Leroy T. Trotter, Plaintiff.
F. Hilton-Green Tomlinson, Arnold Levin, George
M. Fleming, James L. Doyle, II, Rand P. Nolen, (See
above), for John E. Reed, Plaintiff.
F. Hilton-Green Tomlinson, Arnold Levin, George
M. Fleming, James L. Doyle, II, Rand P. Nolen, (See
above), for James F. Barthel, Plaintiff.
F. Hilton-Green Tomlinson, Arnold Levin, George
M. Fleming, James L. Doyle, II, Rand P. Nolen, (See
above), for Virginia Ann Hopps, Plaintiff.
F. Hilton-Green Tomlinson, Arnold Levin, George
M. Fleming, James L. Doyle, II, Rand P. Nolen, (See
above), for Virginia Hassell, Plaintiff.
F. Hilton-Green Tomlinson, Arnold Levin, George
M. Fleming, James L. Doyle, II, Rand P. Nolen, (See
above), for Evelyn Turner, Plaintiff.
F. Hilton-Green Tomlinson, Arnold Levin, George
M. Fleming, James L. Doyle, II, Rand P. Nolen, (See
above), for Deborah Saunders, Plaintiff.
F. Hilton-Green Tomlinson, Arnold Levin, George
M. Fleming, James L. Doyle, II, Rand P. Nolen, (See
above), for Catherine Herman, Plaintiff.
F. Hilton-Green Tomlinson, Arnold Levin, George
M. Fleming, James L. Doyle, II, Rand P. Nolen, (See

above), for Mary C. Smith, Plaintiff.
James C. Barton, Jr., Johnston, Barton, Proctor,
Swedlaw and Naff, Birmingham, AL, for Gate
Pharmaceuticals, a division of Teva Pharmaceuticals,
USA., Inc., Defendant.
Lawrence B. Clark, Lange, Simpson, Robinson &
Somerville, Birmingham, AL, for Smithkline
Beecham Corporation, Defendant.
E. AnnMC Mahan, Spain and Gillon, Birmingham,
AL, for Jones Medical Industries, Inc., f/k/a Abana
Pharmaceuticals, Inc., Defendant.
J. Allen Sydnor, Jr., Birmingham, AL, for Richwood
Pharmaceuticals Company, Inc., Defendant.
Katharine A. Weber, Maynard, Cooper and Gale,
Birmingham, AL, Ellen Steury, Arnold & Porter,
Washington, DC, Steven H. Bergman, Arnold and
Porter, Los Angeles, CA, Tony G. Miller, Maynard,
Cooper and Gale, Birmingham, AL, Maibeth J.
Porter, Maynard, Cooper & Gale, P.C., Birmingham,
AL, Steven P. Lockman, Arnold & Porter,
Washington, DC, for A.H. Robins Company,
Incorporated, Defendant.
Katharine A. Weber, Ellen Steury, Steven H.
Bergman, Tony G. Miller, Maibeth J. Porter, Steven
P. Lockman, for Wyeth-Ayerst Laboratories,
Division of American Home Products Corporation,
Defendant.
Labella S. Alvis, Sharon D. Stuart, Rives and
Peterson, Birmingham, AL, Thomas W. Christian,
Rives and Peterson, Birmingham, AL, for
Interneuron Pharmaceuticals, Inc., Defendant.
Larry W. Harper, Karen Walker Casey, Porterfield
Harper & Mills PA, Birmingham, AL, for Ion
Laboratories, Inc., Defendant.
Samuel H. Franklin, Lightfoot, Franklin, White and
Lucas, Birmingham, AL, Harlan I. Prater, IV, Robin
H. Graves, Lee M. Hollis, Lightfoot, Franklin &
White, Birmingham, AL, for Medeva
Pharmaceuticals, Inc., Defendant.
Steven A. Stadtmauer, Lester, Schwab, Katz, &
Dwyer, New York, NY, for Goldline Laboratories,
Inc., Defendant.
Emily Sides Bonds, Helen C. Foster, Walston, Wells,
Anderson & Bains, Birmingham, AL, for Qualitest
Pharmaceuticals Inc., Defendant.
Steven A. Stadtmauer, (See above), for Zenith
Goldline Pharmaceuticals, Inc., Defendant.
Emily Sides Bonds, Helen C. Foster, (See above), for
United Research Laboratories Inc., Defendant.
Denise M. Smith, Benesch, Friedlander, Coplan, and
Aronoff, Cincinnati, OH, for Shire Richwood Inc.,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                     Page 2
Not Reported in F.Supp.2d, 1999 WL 554584 (E.D.Pa.)
(Cite as: Not Reported in F.Supp.2d)

Defendant.
Frank Chester Woodside, Cincinnati, OH, James W.
Gewin, Bradley, Arant, Rose and White,
Birmingham, AL, for Modern Wholesale Drug Co.
Inc., f/k/a Rugby Laboratories Inc., Defendant.
Michael K. Choy, John W. Scott, Haskell, Slaughter,
Young, Johnston and Gallion, Birmingham, AL, for
Geneva Pharmaceuticals, Inc., Defendant.
Gary B. Cutler, Independence Square West, Phila,
PA, Nessa B. Math, Margolis, Edelstein and Scherlis,
Phila, PA, William C. Wood, Norman, Fitzpatrick,
Wood, Parker and Kendrick, Birmingham, AL, for
Carnall Company, Defendant.
Lawrence B. Clark, (See above), for King
Pharmaceuticals, Inc., Defendant.

*MEMORANDUM AND PRETRIAL ORDER NO. 769*
BECHTLE, J.
*1 Presently before the court are plaintiffs Maggie M.
Chaney's, Betty J. Williams', Leroy T. Trotter's, John
E. Reed's, James F. Barthel's, Virginia Ann Hopps',
Virginia Hassell's, Evelyn Turner's, Deborah
Saunders', Catherine Herman's and Mary C. Smith's
("Plaintiffs") motion to remand the above civil action
to state court and defendants A.H. Robins Company,
Inc. ("Robins") and Wyeth-Ayerst Laboratories
Division of American Home Products Corporation
("Wyeth") responses thereto.[FN1]For the following
reasons, the court will deny Plaintiffs' motion to
remand and will drop certain Plaintiffs from this civil
action pursuant to Rule 21 of the Federal Rules of
Civil Procedure.

> FN1. Plaintiffs have also filed several
> unopposed motions relating to this civil
> action that do not require discussion in the
> court's Memorandum. The court will
> identify and rule on those motions in the
> accompanying Order.

I. *BACKGROUND*

On January 15, 1998, Plaintiffs filed this civil action
in the Circuit Court of Montgomery County,
Alabama.[FN2]On February 17, 1998, Robins and
Wyeth filed a notice of removal to the United States
District Court for the Middle District of Alabama,
Northern Division. The removal was based upon
complete diversity of citizenship under 28 U.S.C. §
1332.[FN3]While this civil action was pending before
the Middle District of Alabama, Plaintiffs filed an
Amended Complaint. Additionally, Plaintiffs filed a
motion to remand the action back to state court.
Subsequently, the Judicial Panel on Multidistrict

Litigation transferred this civil action to this
transferee district court for inclusion in MDL No.
1203.

> FN2. The Complaint asserts only state
> common law claims and no federal claims
> are presented.

> FN3. That statute provides:
> The district courts shall have original
> jurisdiction of all actions where the matter in
> controversy exceeds the sum or value of
> $75,000, exclusive of interest and costs, and
> is between-
> (1) citizens of different States;
> (2) citizens of a State and citizens or
> subjects of a foreign state;
> (3) citizens of different States and in which
> citizens or subjects of a foreign state are
> additional parties; and
> (4) a foreign state, defined in Section
> 1603(a) of this title, as plaintiff and citizens
> of a State or of different States.
> 28 U.S.C. § 1332(a).

II. *DISCUSSION*

Under 28 U.S.C. § 1441(a), "any civil action brought
in a State court of which the district courts of the
United States have original jurisdiction, may be
removed by the defendant or defendants, to the
district court for the district and division embracing
the place where such action is pending."28 U.S.C. §
1441(a). An action based upon diversity shall be
removable "only if none of the parties in interest
properly joined and served as defendants is a citizen
of the state in which such action is brought ."28
U.S.C. § 1441(b). Thus, only if an action could have
originally been brought in federal court may it be
removed from state court to federal court. The
removing party bears the burden of establishing
federal jurisdiction. *Boyer v. Snap-On Tools Corp.*,
913 F.2d 108, 111 (3d Cir.1990). The removal statute
is "strictly construed against removal" and all doubts
are resolved in favor of remand. *Id.* The existence of
diversity jurisdiction is generally determined by
analyzing the plaintiff's complaint. *Abels v. State
Farm Fire & Cas. Co.*, 770 F.2d 26, 29 (3d
Cir.1985).

A. *Defendants' Compliance with 28 U.S.C. § 1446*

Plaintiffs assert that Defendants failed to comply with

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 554584 (E.D.Pa.)
(Cite as: Not Reported in F.Supp.2d)

the procedural requirements of 28 U.S.C. § 1446, which requires all joined defendants to join in the notice of removal within thirty days of service of the initial pleading.[FN3] 28 U.S.C. § 1446(b). Defendant Abana Pharmaceuticals, Inc. ("Abana") was served with Plaintiffs' initial pleading on January 22, 1998. Plaintiffs assert that Abana did not consent to or join in the notice of removal within thirty days of that date. Abana filed its notice of joinder in the removal on February 23, 1998. Plaintiffs are correct that February 23, 1998, on its face, falls outside of the prescribed thirty day time period. February 23, 1998 was exactly thirty-two days measured from January 22, 1998. However, the thirtieth day measured from January 22, 1998 was Saturday, February 21, 1998. Federal Rule of Civil Procedure 6(a) governs the computation of the time period set forth in 28 U.S.C. 1446(b). Medina v. Wal-Mart Stores, Inc., 945 F.Supp. 519, 521 (W.D.N.Y.1996); Barton v. Lloyds of London, 883 F.Supp. 641, 642 n. 3 (M.D.Ala.1995); Aguado v. Milwaukee Elec. Tool Corp., C.A. 90-0159, 1990 WL 18817, at *2 (E.D.Pa. Feb. 26, 1990). Rule 6(a) provides that "[t]he last day of the period so computed shall be included, unless it is a Saturday, a Sunday or a legal holiday, ... in which event the period runs until the end of the next day which is not one of the aforementioned days a Saturday, a Sunday, or a legal holiday." Fed.R.Civ.P. 6(a). Because Abana's time period for filing their joinder in the notice of removal ended on a Saturday, filing the notice on Monday, February 22, 1998, was permissible. The court finds that Defendants complied with the procedural requirements of 28 U.S.C. § 1446.

> FN4. Plaintiffs do not challenge any other aspect of any Defendants' compliance with 28 U.S.C. § 1446.

B. Diversity of Citizenship and Fraudulent Joinder

*2 Plaintiffs ask the court to remand this action to state court because at least one of the Plaintiffs is a citizen of the same state as one of the Defendants.[FN5] Diversity jurisdiction only exists when all plaintiffs are citizens of different states than that of all defendants named in the action. Strawbridge v. Curtiss, 7 U.S. (3 Cranch) 267 (1806). On the face of the Complaint, complete diversity does not exist. However, Robins and Wyeth assert that certain Plaintiffs were fraudulently misjoined in this action to defeat diversity jurisdiction. They request that the court sever the claims of the non-diverse Plaintiffs and retain jurisdiction over the remaining Plaintiffs'

claims.

> FN5. Plaintiffs' Evelyn Turner and Mary C. Smith and defendants Medeva Pharmaceuticals, Inc. and Ion Laboratories, Inc. are citizens of Texas. (Compl. ¶¶ 12, 15, 23 and 24.) Additionally, plaintiff Catherine Herman and defendants Gate Pharmaceuticals and Smithkline Beecham Corporation are citizens of Pennsylvania. (Compl. ¶¶ 14, 16 and 17.) Finally, plaintiff Virginia Hassell and defendant Wyeth are citizens of New Jersey. (Comp. ¶ 11, Def.'s Notice of Removal ¶ 13.)

1. Fraudulent Joinder

The doctrine of fraudulent joinder allows the court to disregard parties that are fraudulently joined in a civil action when determining whether complete diversity of citizenship exists. The doctrine recognizes that although plaintiffs are normally free to choose their own forum, a party may not be joined "solely for the purpose of defeating federal diversity jurisdiction." Schwartz v. State Farm Mut. Auto. Ins. Co., 174 F.3d 875, 878 (7th Cir.1999); Pampillonia v. RJR Nabisco, Inc., 138 F.3d 459, 460-61 (2d Cir.1998); Tapscott v. MS Dealer Serv. Corp., 77 F.3d 1353, 1360 (11th Cir.1996). Parties must have some connection to the controversy if their joinder will defeat diversity jurisdiction. See Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 97 (1921) (holding that "right of removal cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy"). In the diversity context, a district court examining fraudulent joinder is not required to find fraud in the common law sense of that term. Katz v. Costa Armatori, S.p.A., 718 F.Supp. 1508, 1513 (S.D.Fla.1989); see also Lewis v. Time, Inc., 83 F.R.D. 455, 460 (E.D.Cal.1979) (explaining that fraudulent joinder "does not reflect on the integrity of plaintiff or counsel ... but is merely the rubric applied when a court finds either that no cause of action is stated against the nondiverse defendant, or in fact no cause of action exists"). Accordingly, the court is not required to delve into the subjective intent behind the preparation or structure of the plaintiff's pleadings. When conducting a fraudulent joinder analysis, the court looks to the plaintiff's complaint at the time the petition for removal was filed and assumes all factual allegations contained in the complaint to be true. Batoff, 977 F.2d at 851-52. Additionally, a removing party who charges that a plaintiff has fraudulently

Not Reported in F.Supp.2d                                                                      Page 4
Not Reported in F.Supp.2d, 1999 WL 554584 (E.D.Pa.)
(Cite as: Not Reported in F.Supp.2d)

joined a party to destroy diversity jurisdiction has a "heavy burden of persuasion." *Boyer, 913 F.2d at 111.*

Fraudulent joinder may be established where a defendant shows "there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendant." *Boyer, 913 F.2d at 111.* Fraudulent joinder may also be established if "there is outright fraud in the plaintiff's pleading of jurisdictional facts." *Triggs v. John Crump Toyota, Inc.,* 154 F.3d 1284, 1287 (11th Cir.1998); *Pampillonia v. RJR Nabisco, Inc.,* 138 F.3d 459, 461 (2d Cir.1998). In *Tapscott v. MS Dealer Serv. Corp.,* 77 F.3d 1353, 1360 (11th Cir.1996), the Eleventh Circuit recognized a third circumstance in which fraudulent joinder can be found. In *Tapscott,* the court stated that "misjoinder can be just as fraudulent as the joinder of a resident defendant against whom a plaintiff has no possibility of a cause of action." *Tapscott,* 77 F.3d at 1360. Defendants do not argue that outright fraud is present in Plaintiffs' pleading of jurisdictional facts or that Plaintiffs cannot prove a claim against a nondiverse defendant. Instead, Defendants ask the court to apply *Tapscott's* egregious joinder analysis to this case.

**\*3** In *Tapscott,* the court, relying on *Wilson v. Republic Iron & Steel Co.,* 257 U.S. 92 (1921), held that plaintiffs' attempt to join certain defendants in the same civil action was so egregious as to constitute fraudulent joinder because the transactions between certain plaintiffs and defendants had "no real connection" to the transactions involving the other parties. *Tapscott,* 77 F.3d at 1360. In so holding, the court did not find that any misjoinder could be labeled fraudulent. *Id.* In order to be considered fraudulent under *Tapscott* there must be an "egregious misjoinder." [FN6] *Id.* As the court will discuss below, the plaintiffs in this civil action are clearly misjoined under Federal Rule of Civil Procedure 20(a). However, before reaching that issue the court must find that the joinder is so egregious that it constitutes fraudulent joinder because it wrongfully deprives Defendants the right of removal. *See Alabama Southern Railway Co. v. H.C. Thompson,* 200 U.S. 206, 218 (1906) (stating that "[f]ederal courts may and should take such action as will defeat attempts to wrongfully deprive parties entitled to sue in the [f]ederal courts of the protection of their rights in those tribunals").

FN6. The court notes that although the facts

of *Tapscott* concerned the misjoinder of certain defendants, the reasoning of that case has been applied to find that the egregious misjoinder of plaintiffs may also constitute fraudulent joinder. *See Lyons v. American Tobacco Co.,* No. 96-0881, 1997 WL 809677, at *4 (S.D.Ala. Sept. 30, 1997) (finding plaintiffs fraudulently misjoined); *Koch v. PLM Int'l, Inc.,* No. 97-0177, 1997 WL 907917, at *4 (S.D.Ala. Sept. 24, 1997) (same).

Initially, the court agrees with *Tapscott* in that a finding of mere misjoinder does not itself warrant a finding of fraudulent misjoinder.[FN7] *Tapscott,* 77 F.3d at 1360. However, the pleading presently before the court goes well beyond mere misjoinder. In the instant pleading, Plaintiffs attempt to join persons from seven different states into one civil action who have absolutely no connection to each other except that they each ingested fenfluramine, Redux (dexfenfluramine), phentermine or some combination of those drugs. Plaintiffs do not allege that they took the same drug or combination of drugs. Further, Plaintiffs do not allege that they received the drugs from the same source or any other similar connection. The Complaint was originally filed in Montgomery County, Alabama. Only two of the nine remaining Plaintiffs reside in Alabama.[FN8] Two Plaintiffs are listed as residents of Texas. The remaining Plaintiffs are listed as citizens of California, Florida, New Jersey, North Carolina and Pennsylvania. The nonresident Plaintiffs do not allege any contact with Alabama. Additionally, Plaintiffs do not allege that they received or purchased diet drugs in Alabama or from a source located in Alabama. Defendants correctly argue that Plaintiffs fail to point to any logical basis for the proposed joinder of the nonresident Plaintiffs.[FN9] That argument is particularly compelling when most of the nonresident Plaintiffs reside in a jurisdiction in which at least one Defendant is a citizen. Indeed, the court finds that the structure of this pleading is devoid of any redeeming feature as respects the underlying purposes of the joinder rules. The joinder rules are designed "to promote trial convenience and expedite the final determination of disputes." *Saval v. BL Ltd.,* 710 F.2d 1027, 1031 (4th Cir.1983) (citing *Mosley v. General Motors Corp.,* 497 F.2d 1330 (8th Cir.1974)). The joinder of several plaintiffs who have no connection to each other in no way promotes trial convenience or expedites the adjudication of the asserted claims. Rather, the joinder of such unconnected, geographically diverse plaintiffs that present individual circumstances material to the final

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 554584 (E.D.Pa.)
(Cite as: Not Reported in F.Supp.2d)

outcome of their respective claims would obstruct and delay the adjudication process. Given Plaintiffs' vast geographic diversity and lack of reasonable connection to each other, the court finds that the attempted joinder of the nonresident Plaintiffs wrongfully deprives Defendants of their right of removal.

FN7. That view is consistent with the notion that the Federal Rules of Civil Procedure shall not be construed to extend the jurisdiction of federal district courts. Fed.R.Civ.P. 82.

FN8. Eleven Plaintiffs were listed on the Complaint. On February 22, 1999, the court entered Pretrial Order No. 479, dismissing plaintiffs John Reed and Leroy Trotter from the action.

FN9. The court also finds that joinder of these plaintiffs would be improper under the Alabama Rules of Civil Procedure. The Alabama Rules of Civil Procedure regarding joinder of parties are virtually identical to the Federal Rules of Civil Procedure that govern joinder of parties in federal court. Ala. R. Civ. P. 20. Additionally, like its Federal counterpart, the Alabama joinder rule is intended to promote trial convenience and limit prejudice to the parties involved. *Turpin Vise Ins. Agency, Inc. v. Foremost Ins. Co.*, 705 So.2d 368, 370-71 (Ala.1997). Accordingly, the court's reasoning discussed below supports a finding that joinder of these plaintiffs in a single civil action would be improper under the Alabama Rules. *See also City of Birmingham v. City of Fairfield*, 396 So.2d 692, 696 (Ala.1981) (stating that because Alabama procedural rules are modeled after federal procedural rules, Alabama courts look to federal court decisions for guidance when construing Alabama Rules).

*4 Because the court finds that the Plaintiffs that destroy diversity jurisdiction are fraudulently joined it may ignore the citizenship of the those parties and exercise jurisdiction over this civil action. Once the court properly exercises jurisdiction, the Federal Rules of Civil Procedure may be applied to shape this civil action to one that comports with those Rules. Accordingly, the court will exercise its discretion under Federal Rule of Civil Procedure 21 and dismiss

the non-diverse Plaintiffs' claims without prejudice. Additionally, the court will examine the propriety of joining the remaining two Plaintiffs in a single civil action.FN10

FN10. The remaining two Plaintiffs, Chaney and Williams, are Alabama citizens. According to the certified copy of the docket for this civil action forwarded to this court by the United States District Court for the Middle District of Alabama, Plaintiffs filed an Amended Complaint on April 16, 1998, after several defendants filed answers, naming Qualitest Pharmaceuticals, Incorporated ("Qualitest") as a defendant. Qualitest is also an Alabama citizen which would destroy diversity jurisdiction. However, on March 22, 1999, both Chaney and Williams filed motions to dismiss Qualitest and certain other defendants from this civil action. The court will grant those motions removing the diversity destroying defendant from this civil action.

2. Permissive Joinder of Remaining Plaintiffs

Plaintiffs assert that they are properly joined in this action under Federal Rule of Civil Procedure 20(a).FN11 Joinder of plaintiffs under Rule 20(a) is proper if the right asserted arises "out of the same transaction, occurrence, or series of transactions or occurrences" and if there is a "question of law or fact common to all these persons" arising in the action. Fed.R.Civ.P. 20(a). Plaintiffs argue that Rule 20(a) is satisfied because all plaintiffs were "harmed by diet drugs manufactured, marketed, and sold by the defendants."(Pls.' Mem. Supp. Mot. to Remand at 7.) They further assert that "the facts pertaining to the Defendants' conduct are common to all of the Plaintiffs" and "the legal issues of duty, breach of duty, proximate cause and resulting harm are common to all of the Plaintiffs."*Id.* Plaintiffs also argue that their respective purchases of phentermine, dexfenfluramine and fenfluramine are a series of transactions that satisfy the transaction or occurrence requirement of Rule 20(a). The court recognizes that there may be questions of law and fact that are common to these Plaintiffs regarding their respective claims against Defendants. However, the court disagrees with Plaintiffs' assertions that their respective purchases and ingestion of diet drugs, as presently alleged, are a series of transactions or occurrences which satisfy Rule 20(a).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 554584 (E.D.Pa.)
(Cite as: Not Reported in F.Supp.2d)

Page 6

FN11.Rule 20(a) states in relevant part:
(a) Permissive Joinder. All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action.
Fed.R.Civ.P. 20(a).

To satisfy Rule 20(a)'s transaction or occurrence requirement, "the central facts of each plaintiff's claim [must] arise on a somewhat individualized basis out of the same set of circumstances."*In re Orthopedic Bone Screw Prod. Liab. Litig.*, MDL No. 1014, 1995 WL 428683, at *2 (E.D.Pa. July 17, 1995). The claims of plaintiffs who have not purchased or received diet drugs from an identical source, such as a physician, hospital or diet center, do not satisfy the transaction or occurrence requirement. *SeeSimmons v. Wyeth Lab., Inc.*, No. 96-6631, 1996 WL 617492, at *4 (E.D.Pa. Oct. 24, 1996) (severing misjoined plaintiffs under similar circumstances). The remaining Plaintiffs, who are both Alabama residents, do not allege that they purchased or received diet drugs from an identical source. However, because these remaining Plaintiffs are Alabama citizens it is possible they purchased or received diet drugs from the same source. The court will not sever these plaintiffs at this time. Rather, for the reasons explained below the court will defer that decision to the appropriate transferor court upon remand by the Judicial Panel on Multidistrict Litigation ("JPML").

*5 The court notes that several other Complaints transferred to this court for inclusion in MDL No. 1203 list multiple plaintiffs in a single civil action. In order to efficiently direct the court's resources to the pretrial coordination efforts that it was designated to perform, the court is not inclined at this stage of the litigation to address the propriety of joinder, except in the most egregious cases. This case, with eleven Plaintiffs selected from seven different states where, coincidentally, a number of Defendants also have citizenship seems to have been an innovative, but unwise, pleading strategy that interferes with the court's ability to administer this case for pretrial purposes. Cases that do not present similarly objectionable elements will not likely be candidates for misjoinder consideration in this transferee court. Rather, such objections should be raised in the transferor districts upon remand by the JPML.

### III. *CONCLUSION*

For the foregoing reasons, the court will deny Plaintiffs' motion to remand the civil action back to state court and drop certain Plaintiffs from this civil action pursuant to Rule 21 of the Federal Rules of Civil Procedure.

An appropriate Order follows.

### *PRETRIAL ORDER NO. 769*

AND NOW, TO WIT, this 16th day of July, 1999, upon consideration of plaintiff Maggie M. Chaney's, Betty J. Williams', Leroy T. Trotter's, John E. Reed's, James F. Barthel's, Virginia Ann Hopps', Virginia Hassell's, Evelyn Turner's, Deborah Saunders', Catherine Herman's and Mary C. Smith's motion to remand, IT IS ORDERED that said motion is DENIED.

IT IS FURTHER ORDERED that, pursuant to Federal Rule of Civil Procedure 21, Plaintiffs James F. Barthel, Virginia Ann Hopps, Virginia Hassell, Evelyn Turner, Deborah Saunders and Catherine Herman are DROPPED from this civil action as follows:
(1) dropped plaintiffs have thirty (30) days from the date of this Order to file a new complaint, in a proper venue, containing the claims that they pled in their original complaints;
(2) dropped plaintiffs shall not name new or additional defendants in any complaints filed pursuant to this Order, but a plaintiff may name fewer defendants;
(3) when a new complaint is filed, if filed in federal court, plaintiff's counsel shall notify the Judicial Panel on Multidistrict Litigation ("JPML") that the new civil action is a potential tag-along action and has been filed. Plaintiff's counsel shall also forward to the JPML a copy of both the newly filed complaint and the docket sheet for each action;
(4) defendants shall not file any notices of opposition with the Clerk of the JPML with regard to the JPML's entry of a conditional transfer order to this district for inclusion in MDL No. 1203 for any of the potential tag-along actions filed pursuant to this Order;
(5) dropped plaintiffs are deemed to have ongoing MDL No. 1203 actions currently before this court for all purposes during the time period between the date of this Order and any filing under this Order of a new complaint and while their actions are in the process

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 554584 (E.D.Pa.)
(Cite as: Not Reported in F.Supp.2d)

Page 7

of being transferred as tag-along actions to this court. Dropped plaintiffs continue to be under the obligation to furnish required case-specific discovery on a timely basis;

*6 (6) dropped plaintiffs who choose not to file new civil actions in federal court within the thirty (30) day period will have their actions dismissed with prejudice by the court unless such plaintiff notifies this court, in writing, within the same thirty (30) day period that a new civil action has been filed in a state court;

(7) after the expiration of the thirty (30) day time period for filing of new complaints for dropped plaintiffs, upon being advised in writing as to which of the dropped plaintiffs have filed new complaints the court will enter an order dismissing those plaintiffs from this civil action without prejudice; and

(8) for the application of statutes of limitations, laches, or other time bar laws, the filing date of a newly filed action pursuant to this Order shall be deemed to relate back to the date that any dropped plaintiff originally filed his or her complaint in so far as the new complaint alleges only the claims alleged in the original complaint and joins only the defendants named (or fewer) in the original complaint or the successors of such original defendants.

IT IS FURTHER ORDERED that:

(1) plaintiff Maggie M. Chaney's motion to dismiss (document # 200748) defendants Gate Pharmaceuticals, a division of Teva Pharmaceuticals, USA, Inc., Jones Medical Industries, Inc. f/k/a/ Abana Pharmaceuticals, Inc., Richwood Pharmaceutical Company, Inc. a/k/a/ Shire Richwood, Inc., Ion Laboratories, Inc., Medeva Pharmaceuticals, Inc., Goldline Laboratories, Inc., Qualitest Pharmaceuticals, Inc., Zenith Goldline Pharmaceuticals, Inc., United Research Laboratories, Inc., Modern Wholesale Drug Co. Inc. f/k/a Rugby Laboratories, Inc., Geneva Pharmaceuticals, Inc., Camall Company and King Pharmaceuticals without prejudice is GRANTED.

(2) plaintiff Betty Williams' motion to dismiss (document # 200748) defendants Gate Pharmaceuticals, a division of Teva Pharmaceuticals, USA, Inc., Smithkline Beecham Corporation, Jones Medical Industries, Inc. f/k/a/ Abana Pharmaceuticals, Inc., Richwood Pharmaceutical Company, Inc. a/k/a/ Shire Richwood, Inc., Ion Laboratories, Inc., Medeva Pharmaceuticals, Inc., Qualitest Pharmaceuticals, Inc., United Research Laboratories, Inc., Modern Wholesale Drug Co. Inc. f/k/a Rugby Laboratories, Inc., Geneva

Pharmaceuticals, Inc., Camall Company and King Pharmaceuticals without prejudice is GRANTED.

(3) plaintiffs James F. Barthel's, Virginia Ann Hopps', Virginia Hassell's, Evelyn Turner's, Deborah Saunders's and Catherine Herman's motions to dismiss certain Phentermine Defendants (document # 200748) are DENIED AS MOOT.

(4) plaintiff Mary Smith's motion for voluntary dismissal without prejudice (document # 200749) is GRANTED.

(5) Qualitest Pharmaceuticals Inc.'s motion to dismiss and motion to file a reply (document # 200258) are DENIED AS MOOT.

(6) Plaintiffs' motion to dismiss defendant Upjohn Company (document # 200750) is GRANTED.

(7) Plaintiffs' motion to dismiss defendant Geneva Pharmaceuticals, Incorporated (document # 200874) is GRANTED.

E.D.Pa.,1999.
In re Diet Drugs
Not Reported in F.Supp.2d, 1999 WL 554584 (E.D.Pa.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

8

Westlaw.

Not Reported in F.Supp.2d                                                                Page 1
Not Reported in F.Supp.2d, 2004 WL 2095451 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

**H**
In re Diet Drugs
(Phentermine/Fenfluramine/Dexfenfluramine)
Products Liability Litigation
E.D.Pa.,2004.
Only the Westlaw citation is currently available.
United States District Court,E.D. Pennsylvania.
In re: DIET DRUGS
(PHENTERMINE/FENFLURAMINE/DEXFENFLU
RAMINE) PRODUCTS LIABILITY LITIGATION
Pamela G. ELLISON, et al.
v.
AMERICAN HOME PRODUCTS
CORPORATION, et al.
**No. MDL NO. 1203, Civ.A.04-20099.**

Sept. 20, 2004.

Adam D. Peavy, Andres C. Pereira, George M.
Fleming, Laura V. Yaeger, Rand Nolen, Fleming and
Associates LLP, Houston, TX, Randolph A. Mayer,
Mayer & Beal, Atlanta, GA, for Plaintiffs.
Richard B. North, Jr., Stephen M. Brooks, Stephen
Melvin Lore, Taylor Tapley Daly, Nelson Mullins
Riley and Scarborough, Atlanta, GA, for Defendants.

*MEMORANDUM AND PRETRIAL ORDER NO.*
*BARTLE, J.*
**\*1** THIS DOCUMENT RELATES TO:

To address misjoinder issues, and to facilitate the
efficient administration of discovery, we issued
Pretrial Order No. ("PTO") 3370, which requires the
severance of multi-plaintiff actions in MDL No.
1203.*See* PTO No. 3370, § II (Mar. 24, 2004).
Pursuant to Paragraph 6 of PTO No. 3370, the
Special Discovery Master identified the above-
referenced action for severance. *Seeid.* at ¶ 5. This
action involves 748 plaintiffs who have asserted
various claims against American Home Products
Corporation, Wyeth Pharmaceuticals, Robert L.
Scott, John A. Molnar, Anthony D. Adams, Robin W.
Jones, and Avery T. Lanius.

Rule 21 of the Federal Rules of Civil Procedure
provides in part that "[p]arties may be dropped or
added by order of the court ... at any stage of the
action and on such terms as are just."Pursuant to this
rule, courts may sever misjoined parties when their
claims do not arise out of the same transaction,

occurrence, or series of transactions or occurrences,
and the claims will not involve a question of law or
fact common to all parties. *See*Fed.R.Civ.P. 20;
*seealso*Norwood Co. v. RLI Ins. Co., et al., Civ. A.
No. 01-6153, 2002 WL 523946, at \*1 (E.D.Pa. Apr.4,
2002). In addition, courts may sever parties for the
"efficient administration of justice." *SeeMoore's*
*Federal Practice* § 21.02(1); *seealso*Official Comm.
of Unsecured Creditors v. Shapiro, et al., 190 F.R.D.
352, 355 (E.D.Pa.2000). An action severed under
Rule 21 becomes an independent action. *SeeDegen v.*
*Bunce, et al.*, Civ. A. No. 93-5674, 1995 WL 120483,
at \*3 (E.D.Pa. Mar.13, 1995).

The claims asserted by the plaintiffs against Wyeth
and the other defendants in this action are based upon
plaintiffs' alleged ingestion of the diet drugs
Pondimin and/or Redux and injuries they allegedly
sustained as a result of said ingestion. The claims are
not otherwise related. The grouping of such claims in
a single action does not satisfy the transaction or
occurrence requirement of Rule 20. Accordingly,
plaintiffs in this action are misjoined.

In addition, such multi-plaintiff actions with
unrelated claims impede the efficient administration
of MDL No. 1203.Oftentimes it is unclear from the
Complaint which plaintiffs are asserting which
claims against which named defendants. Multi-
plaintiff actions complicate discovery and interfere
with its completion in accordance with assigned
deadlines.

Severance of this and other multi-plaintiff actions
will require each plaintiff to file a Severed and
Amended Complaint that provides the necessary
information about his or her claims. Thereafter, new
deadlines will be assigned to govern discovery in
each individual case, thereby allowing for the
completion of discovery and the resolution of issues
that may arise on a case-by-case basis. Proceeding in
this manner streamlines the remand of actions to the
appropriate transferor courts and minimizes the
burden placed upon those courts due to the volume of
litigation in MDL No. 1203.

**\*2** Therefore, we will order this action to be severed
into separate actions. Each plaintiff shall file a
Severed and Amended Complaint no later than sixty
(60) days from the date of this Order pursuant to
Paragraphs 7, 8, 10, and 12 of PTO No. 3370, each of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 2095451 (E.D.Pa.)
(Cite as: Not Reported in F.Supp.2d)

which shall be assigned a separate, but related, Civil Action Number. No new claims or new defendants may be added without prior leave of court. *See* PTO No. 3370, § II, ¶ 10. In addition, because an action severed under <u>Rule 21</u> becomes an independent action, each plaintiff who files a Severed and Amended Complaint, except for the first named plaintiff who files a Severed and Amended Complaint, shall remit to the Clerk of Court a filing fee in the amount of $150.00, pursuant to <u>28 U.S.C. § 1914</u>. Failure to remit this fee will result in the dismissal with prejudice of any and all claims asserted by the plaintiff.

### *PRETRIAL ORDER NO.*

AND NOW, this day of September, 2004, for the reasons set forth in the accompanying Memorandum, it is hereby ORDERED that:

(1) pursuant to <u>Rule 21 of the Federal Rules of Civil Procedure</u>, the above-captioned action shall be severed into separate civil actions;

(2) each plaintiff and his or her derivative claimants shall submit for filing a Severed and Amended Complaint no later than sixty (60) days of the date of this Order and in accordance with Paragraphs 7, 8, 10, and 12 of Pretrial Order No. 3370;

(3) the Clerk of Court shall assign a separate Civil Action Number, which shall be related to Civil Action Number 04-20099, for each Severed and Amended Complaint filed pursuant to this Order;

(4) a filing fee in the amount of $150.00 shall be remitted to the Clerk of Court for each Severed and Amended Complaint, except for the first named plaintiff who files a Severed and Amended Complaint; and

(5) failure to remit the filing fee with a Severed and Amended Complaint, except as noted in Paragraph (4), will result in the dismissal with prejudice of any and all claims asserted by the plaintiff.

E.D.Pa.,2004.
In          re          Diet          Drugs
(Phentermine/Fenfluramine/Dexfenfluramine)
Products Liability Litigation
Not Reported in F.Supp.2d, 2004 WL 2095451 (E.D.Pa.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

9

FILED _____ ENTERED
LODGED _____ RECEIVED

**NOV 2 7 2002**

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY _____ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

1

2

3

4

5

6  IN RE: PHENYLPROPANOLAMINE
   (PPA) PRODUCTS LIABILITY            MDL NO. 1407
7  LITIGATION,
                                       ORDER DENYING PLAINTIFF'S
8                                      MOTION TO REMAND

9  This document relates to:

10 Barnett, et al. v. American
   Home Products Corp., et al.,
11 No. C02-423R

12

13      THIS MATTER comes before the court on the motion of plain-

14 tiffs to remand the case to state court in Mississippi.  Having

15 reviewed the papers filed in support of and in opposition to this

16 motion, the court rules as follows:

17                           I.  BACKGROUND

18      Plaintiffs purchased a variety of over-the-counter drugs

19 including, but not limited to, products sold under the trade

20 names "Robitussin," "Alka-Seltzer Plus," "Dimetapp," "Tavist D,"

21 "BC," "Triaminic," "Contac," "Comtrex," and "Equate Tussin CF."

22 All of these products contained the ingredient phenylpro-

23 panolamine ("PPA").  The individuals later consumed the medica-

24 tion and suffered unidentified types of injuries.  In June 2001,

25 plaintiffs filed an amended complaint in Mississippi state court

26 linking the PPA in the medicine with the injuries sustained.

ORDER
Page - 1 -

1      The complaint alleges numerous causes of action against both

2  manufacturers and distributors of PPA-containing products, as

3  well as several retail stores that sold those products.  One of

4  the stores named as a defendant, Bill's Dollar Stores, Inc.,

5  d/b/a Bill's Dollar Store ("Bill's Dollar Store"), is a Missis-

6  sippi corporation.  Two of the six total plaintiffs purchased

7  PPA-containing products from Bill's Dollar Store.[1]

8      Defendants removed the complaint to federal court alleging

9  that plaintiffs fraudulently joined Bill's Dollar Store.  Plain-

10  tiffs moved to remand to state court.  The case was later trans-

11  ferred to this court as part of a multi-district litigation

12  ("MDL").

13                    II.    ANALYSIS

14      A plaintiff cannot defeat federal jurisdiction by fraudu-

15  lently joining a non-diverse party.  As an MDL court sitting in

16  the Ninth Circuit, this court applies the Ninth Circuit's fraudu-

17  lent joinder standard to the motion to remand.  See, e.g., In re

18  Diet Drugs Prods. Liab. Litig., 220 F. Supp. 2d 414, 423 (E.D.

19  Pa. 2002); In re Bridgestone/Firestone, 204 F. Supp. 2d 1149,

20  1152 n.2 (S.D. Ind. 2002); In re Tobacco/Gov'tal Health Care

21  Costs Litig., 100 F. Supp. 2d 31, 34 n.1 (D. D.C. 2000); In re

22

23      [1]Defendants assert the misjoinder of these plaintiffs'
    claims and request that the court sever and deny remand as to the

24  four plaintiffs who did not purchase any products from Bill's
    Dollar Store, or from any other Mississippi store.  However,

25  because, as discussed below, the court denies remand as to all
    plaintiffs named in this action, the court need not address the

26  question of misjoinder at this time.

ORDER
Page - 2 -

1 | _Ford Motor Co. Bronco II Prods. Liab. Litig._, MDL-991, 1996 U.S.

2 | Dist. LEXIS 6769, at *2-4 (E.D. La. May 16, 1996).[2] Under this

3 | standard, joinder of a non-diverse party is deemed fraudulent

4 | "'[i]f the plaintiff fails to state a cause of action against a

5 | resident defendant, and the failure is obvious according to the

6 | settled rules of the state.'" _Morris v. Princess Cruises, Inc._,

7 | 236 F.3d 1061, 1067 (9th Cir. 2001) (quoting _McCabe v. General_

8 | _Foods Corp._, 811 F.2d 1336, 1339 (9th Cir. 1987)).[3]

9 |     The propriety of removal to federal court is determined from

10 | the allegations in the complaint at the time of removal.  _See_

11 | _Ritchey v. Upjohn Drug Co._, 139 F.3d 1313, 1318 (9th Cir. 1998)

12 | However, in the case of fraudulent joinder, the defendant "'is

13 | entitled to present the facts showing the joinder to be fraudu-

14 | lent.'"  _Id._ (quoting _McCabe_, 811 F.2d at 1339).  _See also Morris_

15 | _____

16 |   [2] _See generally Menowitz v. Brown_, 991 F.2d 36, 40-41 (2d
Cir. 1993); _In Re Korean Airlines Disaster_, 829 F.2d 1171, 1174-

17 | 76 (D.C. Cir. 1987).

18 |   [3] However, as a practical matter, application of the Fifth
Circuit's fraudulent joinder standard would not alter the court's

19 | conclusion.  _See Badon v. RJR Nabisco, Inc._, 224 F.3d 382, 393
(5th Cir. 2000) (remand is denied where there is "no reasonable

20 | basis for predicting that plaintiffs might establish liability .
. . against the in-state defendants.")  For example, recent MDL

21 | courts utilized fraudulent joinder standards similar, and in one
case identical, to the Fifth Circuit's standard in deeming

22 | Mississippi pharmacies and their employees fraudulently joined
for reasons similar to those expressed in this opinion.  _See In_

23 | _re Diet Drugs Prods. Liab. Litig._, 220 F. Supp. 2d at 423-24
(noting that there had been "a pattern of pharmacies being named

24 | in complaints, but never pursued to judgment, typically being
voluntarily dismissed at some point after the defendants' ability

25 | to remove the case has expired"); _In re Rezulin Prods. Liab._

26 | _Litig._, 133 F. Supp. 2d 272, 279 & n.3, 288-92 (S.D.N.Y. 2001).

ORDER
Page - 3 -

1  236 F.3d at 1067-68 (citing *Cavallini v. State Farm Mut. Auto.*

2  *Ins. Co.*, 44 F.3d 256, 263 (5th Cir. 1995) for the proposition

3  that the court may "'pierc[e] the pleadings'" and consider

4  "summary judgment-type evidence.")

5       Defendants allege that plaintiffs fraudulently joined Bill's

6  Dollar Store, while plaintiffs claim the existence of legitimate

7  causes of action against Bill's Dollar Store, including products

8  liability, negligence, misrepresentation, and implied warranty

9  claims.  The parties also argue as to the relevance of a bank-

10  ruptcy petition filed by Bill's Dollar Store prior to the filing

11  of this suit.

12  A.   Products Liability

13       The complaint contains failure to warn and design defect

14  allegations pursuant to the Mississippi Products Liability Act.

15  Miss. Code Ann. § 11-1-63.  Under the Products Liability Act,

16  plaintiff must show that at the time the product left the control

17  of the manufacturer or seller, it was defective in failing to

18  contain adequate warnings or instructions, and/or was designed in

19  a defective manner.  Miss. Code Ann. § 11-1-63 (a)(i)(2)-(3).

20  Plaintiff must also show that the manufacturers and sellers knew,

21  or in light of reasonably available knowledge or the exercise of

22  reasonable care should have known, about the danger that caused

23  the alleged damage.  Miss. Code Ann. § 11-1-63 (c)(i),(f)(i).[4]

24

25       [4]*See also Huff v. Shopsmith, Inc.*, 786 So.2d 383, 387 (Miss.
     2001)("With the adoption of 11-1-63, common law strict liability,
26  as laid out in *State Stove Mfg. Co. v. Hodges*, 189 So.2d 113

ORDER
Page - 4 -

1    Plaintiffs allege in the complaint that "defendants" or "all
2  defendants" knew or should have known of dangers associated with
3  PPA. Moreover, plaintiffs specifically aver this knowledge or
4  reason to know on the part of the retailer defendants, including
5  Bill's Dollar Store. However, the court finds that no factual
6  basis can be drawn from the complaint that Bill's Dollar Store
7  had knowledge or reason to know of any dangers allegedly associ-
8  ated with PPA.
9    First, the complaint utilizes the plural "defendants" in a
10 number of allegations that one could not reasonably interpret to
11 include Bill's Dollar Store. See, e.g., Louis v. Wyeth-Ayerst
12 Pharm., Inc., No. 5:00CV102LN, slip op. at 5-9 (S.D. Miss. Sep.
13 25, 2000) (finding products liability allegations lodged against
14 "defendants" conclusory where there was no factual support for
15 conclusion that Mississippi pharmacies had knowledge or reason to
16 know of alleged dangers associated with various diet drugs).[9]

17 ────────────────
18 (Miss. 1966), is no longer the authority on the necessary
   elements of a products liability action.")

19      [9] See also In re Diet Drugs Prods. Liab. Litig., 220 F. Supp.
20 2d at 424 (finding complaints, including failure to warn,
   negligence, breach of warranty, and strict liability claims,
21 devoid of specific allegations against Mississippi pharmacies and
   "filled instead with general statements levied against all
22 defendants, which most properly can be read as stating claims
   against drug manufacturers."); In re Rezulin Products Liab.
23 Litig., 133 F. Supp. 2d at 291 (finding improper joinder in case
24 where Mississippi pharmacies were lumped in with manufacturers
   and acts alleged, including failure to warn, breach of warranty,
25 and fraud, were attributed to "'defendants' generally", but
   never connected to the pharmacies); accord Badon, 224 F.3d at
26 391-93 ("While the amended complaint does often use the word

ORDER
Page - 5 -

1  For example, the complaint describes "defendants" as members of
2 the Non-Prescription Drug *Manufacturers* Association ("NDMA").
3 Through this association, "defendants" purportedly participated
4 in numerous discussions relating to the safety of PPA over the
5 past two decades, had representatives sit on the NDMA PPA Task
6 Force, and funded relevant studies.  In other words, plaintiffs,
7 in significant part, demonstrate "defendants'" knowledge as to
8 risks allegedly posed by PPA through activities engaged in by
9 manufacturer defendants alone.

10    Indeed, while "defendants" are alleged to have been aware or
11 to have had responsibility for awareness of numerous scientific
12 journal articles, incident reports, medical textbooks, and other
13 reports containing information as to risks of PPA consumption,
14 general medical practitioners are excluded from this awareness
15 and described as being not "fully informed."  The complaint
16 supplies no factual support for a conclusion that a dollar store
17 possessed medical and scientific knowledge beyond that possessed
18 by medical practitioners.

19    Second, the complaint specifically lays the responsibility
20 for allegedly concealing dangers posed by PPA on the manufacturer
21 defendants.  For example, the complaint alleges that the manufac-
22 turer defendants concealed material facts regarding PPA through
23 product packaging, labeling, advertising, promotional campaigns

24

25 'defendants,' frequently it is evident that such usage could not
   be referring to the 'Tobacco Wholesalers.'"; finding conspiracy
26 allegations against Louisiana defendants entirely general).

ORDER
Page - 6 -

1    and materials, and other methods.  This allegation directly
2    undermines and contradicts the idea that Bill's Dollar Store had
3    knowledge or reason to know of alleged defects.  See, e.g.,
4    Louis, slip op. at 4-5 (finding complaint's "major theme" to
5    consist of the "manufacturers' intentional concealment of the
6    true risks of the drug(s), coupled with dissemination through
7    various media of false and misleading information of the safety
8    of the drug(s) at issue, [which belied] any suggestion of knowl-
9    edge, or reason to know by [the] resident defendants.")  Cf. In re
10   Rezulin Products Liab. Litig., 133 F. Supp. 2d 272, 290 (S.D.N.Y.
11   2001) (finding Mississippi pharmacies facing failure to warn
12   claims fraudulently joined where "the theory underlying the
13   complaints [was] that the manufacturer defendants hid the dangers
14   of Rezulin from plaintiffs, the public, physicians, distributors
15   and pharmacists -- indeed from everyone.")

16        In sum, the court concludes that one could not reasonably
17   read the complaint to support the idea that the retailer defen-
18   dants had knowledge or reason to know of any dangers allegedly
19   associated with PPA.  Indeed, reading the complaint as a whole,
20   this allegation reveals itself as directed towards the manufac-
21   turer defendants alone.  As such, the court finds that plaintiffs
22   fail to state a products liability cause of action against Bill's
23   Dollar Store.[6]

24   _____

25        [6] The complaint once alludes to an "alternative" breach of
     express warranty claim under the Products Liability Act.  See
26   Miss. Code Ann. § 11-1-63 (a)(i)(4) (requiring a showing that the

ORDER
Page - 7 -

1  B.  Negligence and Misrepresentation

2      The complaint alleges negligence and misrepresentation by

3  Bill's Dollar Store.  A negligence cause of action also requires

4  a showing of knowledge or reason to know on the part of the

5  seller.  See, e.g., R. Clinton Constr. Co. v. Bryant & Reaves,

6  Inc., 442 F. Supp. 838, 851 (N.D. Miss. 1977) ("The rule is well

7  settled that in order to fasten liability upon a party for

8  negligence, it must be shown by a preponderance of the evidence

9  that he knew or through the exercise of reasonable care should

10  have known that his selection of a [product] would cause damage

11  to his customer.")[7]  A misrepresentation cause of action requires

12  ───────────

13  seller breached an express warranty or failed to conform to other
   express factual representations upon which the claimant relied).
14  However, the products liability allegations go on to touch solely
   upon failure to warn and design defect claims.  Because the
15  complaint lacks any factual basis for support of a breach of
   express warranty claim against Bill's Dollar Store, the court
16  also finds this bare allegation insufficient to support remand.

17      [7]Accord Louis, slip op. at 3-4 & n.3 ("[K]nowledge, or a
18  reason to know, is also a necessary requisite for any claim of
   failure to warn or negligence that a plaintiff might undertake to
19  assert extraneous to a claim under the Products Liability Act
   itself (assuming solely for the sake of argument that such a
20  claim could exist)."); Cadillac Corp. v. Moore, 320 So.2d 361,
   365 (Miss. 1975) (discussing negligence in "vendor/purchaser"
21  context and stating that "fault on the part of a defendant so as
   to render him liable is to be found in action or nonaction,
22  accompanied by knowledge, actual or implied, of the probable
   result of his conduct.")  Cf. Moore v. Memorial Hosp. of
23  Gulfport, 825 So.2d 658, 664-66 (Miss. 2002) (extending "learned
   intermediary" doctrine to pharmacists in case involving
24  prescription drug, and holding no actionable negligence claim
   could exist against a pharmacy unless a plaintiff indisputably
25  informed the pharmacy of health problems which contraindicated
26  the use of the drug in question, or the pharmacist filled

   ORDER
   Page - 8 -

1  a plaintiff to show:

2      (1) a representation; (2) its falsity; (3) its materi-
   ality; (4) the speaker's knowledge of its falsity or
3  ignorance of its truth; (5) the speaker's intent that
   the representation should be acted upon by the hearer
4  and in the manner reasonably contemplated; (6) the
   hearer's ignorance of its falsity; (7) the hearer's
5  reliance on its truth; (8) the hearer's right to rely
   thereon; and (9) the hearer's consequent and proximate
6  injury.

7  Johnson v. Parke-Davis, 114 F. Supp. 2d 522, 525 (S.D. Miss.

8  2000) (citing Allen v. Mac Tools, Inc., 671 So.2d 636, 642 (Miss.

9  1996)).

10     Again, the court finds that the general and contradictory

11 allegations in the complaint do not support the existence of any

12 knowledge or reason to know on the part of Bill's Dollar Store to

13 support a negligence cause of action.  The court finds the

14 complaint similarly bereft of any factual support for the idea

15 that Bill's Dollar Store made any misrepresentations whatsoever

16 to plaintiffs regarding the PPA-containing products.  See, e.g.,

17 Johnson, 114 F. Supp. 2d at 525 ("Suffice it to say that Plain-

18 tiffs have no proof . . . that any of the named [Mississippi]

19 representatives made any representations directly to any of the

20 Plaintiffs.  Thus, none of the Plaintiffs was the 'hearer' of any

21 of the sales representatives' alleged misrepresentations.";

22 finding plaintiffs had no cause of action for misrepresentation).

23 Instead, as discussed above, the complaint attributes this

24

25 prescriptions in quantities inconsistent with the recommended
26 dosage guidelines).

ORDER
Page – 9 –

1  behavior to the manufacturing defendants alone.  As such, the

2  court also finds that plaintiffs fail to state negligence and

3  misrepresentation causes of action against Bill's Dollar Store.

4  C.  Implied Warranty

5      The complaint also alleges that Bill's Dollar Store breached

6  implied warranties of merchantability and fitness for particular

7  purpose.  See Miss. Code Ann. §§ 75-2-314, 315.  The complaint

8  accuses "defendants" of breaching the implied warranty of mer-

9  chantability in failing to adequately label containers and

10 packages containing PPA, and because the products sold failed to

11 conform to promises or affirmations of facts made on the contain-

12 ers or labels.  See Miss. Code Ann. § 75-2-314 (2)(e)-(f).  The

13 complaint accuses both manufacturers and sellers of breaching the

14 implied warranty of fitness for particular purpose where they had

15 reason to know of the particular use of the products, and the

16 purchasers relied on the sellers' skill or judgment in selecting

17 and furnishing suitable and safe products.  See Miss. Code Ann. §

18 75-2-315.

19     In order to recover for breach of implied warranty, a buyer

20 "must within a reasonable time after he discovers or should have

21 discovered any breach notify the seller of breach or be barred

22 from any remedy."  Miss. Code Ann. § 75-2-607 (3)(a); accord C.R.

23 Daniels, Inc. v. Yazoo Mfg. Co., 641 F. Supp. 205, 210-11 (S.D.

24 Miss. 1986); Gast v. Rogers-Dingus Chevrolet, 585 So. 2d 725,

25 730-31 (Miss. 1991).  Here, the complaint contains no indication

26 that plaintiffs provided Bill's Dollar Store with any notice as

ORDER
Page - 10 -

1 to an alleged breach of warranty prior to the institution of this

2 lawsuit.

3     Additionally, with respect to the merchantability claim, the

4 complaint contains no factual support for a conclusion that

5 Bill's Dollar Store was in any way involved with the labeling

6 and/or packaging of the products at issue. Instead, the com-

7 plaint alleges that the manufacturer defendants concealed mate-

8 rial facts regarding PPA through product packaging and labeling.

9     The court likewise finds plaintiffs' fitness for particular

10 purpose allegation insufficient. "Mississippi does not recognize

11 an implied warranty of fitness for a particular purpose when the

12 good is purchased for the ordinary purpose of a good of that

13 kind." Farris v. Coleman Co., 121 F. Supp. 2d 1014, 1018 (N.D.

14 Miss. 2000) (fitness for particular purpose claim failed where

15 plaintiff purchased cooler to keep food and beverages cold - the

16 ordinary purpose for which a cooler is used). Here, plaintiffs

17 attested that they purchased PPA-containing products to remedy

18 their "cold, flu, sinus and/or allergy symptoms" - the ordinary

19 purpose of these medications.

20     Therefore, for the reasons stated above, the court finds

21 that plaintiffs fail to state implied warranty causes of action

22 against Bill's Dollar Store.

23 D.   Bankruptcy

24     Bill's Dollar Store filed a bankruptcy petition in February

25 2001, several months prior to the filing of plaintiffs' com-

26 plaint. The filing of the bankruptcy petition operates as a stay

ORDER
Page - 11 -

1   on judicial or other proceedings brought against Bill's Dollar
2   store that were or could have commenced prior to the commencement
3   of the bankruptcy proceeding.  See 11 U.S.C. § 362(a); In re
4   Cajun Elec. Power Co-Op. Inc., 185 F.3d 446, 457 (5th Cir. 1999).
5        Plaintiffs argue that the automatic stay poses no barrier to
6   relief given that they were unaware of the bankruptcy petition at
7   the time they filed their complaint, and because they anticipate
8   that the Bankruptcy Court will agree to their pending request to
9   lift the stay.  However, whether or not plaintiffs knew of the
10  petition and whether or not the stay may later be lifted, the
11  fact remains that, at the time plaintiffs filed their complaint,
12  the stay operated to prohibit their lawsuit.  As noted above, the
13  court determines jurisdiction based on the claims as stated at
14  the time of removal.  As such, the court finds the existence of
15  the stay at the time of filing serves as an additional reason to
16  deny remand of this matter to state court.  Cf. Ritchey, 139 F.3d
17  at 1319-20 (denying remand where the statute of limitations had
18  expired at the time plaintiff filed the complaint).[8]
19                        III.  CONCLUSION
20       The court concludes that plaintiffs fail to state a cause of
21  action against the only non-diverse defendant, and that the

22  _____
23       [8]Unlike in a number of other cases transferred to this MDL,
     the defendants here did not supply the court with any summary
24   judgment-type evidence to establish the retailer defendant's
     fraudulent joinder.  However, the court nonetheless finds that a
25   plain reading of the complaint does not allow a conclusion that
     plaintiffs state a cause of action against Bill's Dollar Store.
26

     ORDER
     Page - 12 -

1  failure is obvious according to the settled rules of Mississippi.

2  As such, the court finds Bill's Dollar Store fraudulently joined

3  and DENIES plaintiff's motion to remand the case to the state

4  courts of Mississippi.

5      DATED at Seattle, Washington this 26th day of November,

6  2002.

7                             BARBARA JACOBS ROTHSTEIN

8                             UNITED STATES DISTRICT JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER
Page - 13 -

10

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 548750 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

**H**

In re Rezulin Products Liability Litigation (MDL No. 1348)

S.D.N.Y.,2002.

Only the Westlaw citation is currently available.

United States District Court, S.D. New York.

In re: REZULIN PRODUCTS LIABILITY LITIGATION (MDL No. 1348)

This Document Relates to: 02 Civ. 1716 and 02 Civ. 1717.

**No. 00 CIV. 2843(LAK).**

April 12, 2002.

PRETRIAL ORDER NO. 74 (Disposition of Certain Remand Motions)

KAPLAN, District J.

*1 Plaintiffs in *Cooley v. Warner-Lambert, Co.,* No. 02 Civ. 1716, and *Boykin v. Warner-Lambert, Co.,* No. 02 Civ. 1717, have sued the manufacturers of Rezulin as well as Mississippi physicians [FN1] for injuries allegedly caused by Rezulin. The cases were removed to federal court by the manufacturer defendants on the basis of diversity of citizenship and were transferred to this Court by the Judicial Panel on Multidistrict Litigation. The plaintiffs, all citizens of Mississippi, have moved to remand the cases on the ground that the presence of the nondiverse physician defendants destroys the complete diversity necessary for removal. The defendants rejoin that the citizenship of the nondiverse physician defendants is immaterial because there is no reasonable possibility that the plaintiffs can succeed in establishing liability against those defendants.

FN1. Defendant Belenchia is a doctor of osteopathy, not a medical doctor, *see* Boykin Cpt. ¶ 14, and the plaintiffs in Cooley have sued the clinic where the nondiverse physician defendant worked, Cooley Aff. ¶ 2. The complaints nonetheless refer to the "Physician Defendants" and the Court assumes for the purposes of this motion that plaintiffs intend to include defendants Belenchia and the clinic within this term. For the sake of consistency with the complaints, the Court will refer to Drs. Hassell, Roberts, Thompson, Stevens, and Belenchia as well as the Laurel Family

Clinic as "the nondiverse physician defendants."

The complaints in *Cooley*[FN2] and *Boykin*[FN3] contain allegations that, if true, would permit a finding of liability against the nondiverse physician defendants. As this Court previously has noted, in order to maintain a medical malpractice claim against a physician in Mississippi, a plaintiff must (1) establish the doctor-patient relationship and its attendant duty, (2) identify the requisite standard of care, (3) establish a breach of that standard of care by the physician, (4) prove that the physician's noncompliance with that standard of care caused the plaintiff's injury, and (5) prove the extent of the plaintiff's damages.[FN4] Because plaintiffs Cooley, Atwood, Evans, Boswell, and Hodge have alleged all of the elements of a medical malpractice claim, the Court cannot rule out the possibility that these plaintiffs will succeed with their medical malpractice claims against the nondiverse physicians.[FN5] Unlike plaintiffs in other Rezulin cases who have sought to hold physicians liable for failing to disclose defects of which the physicians were not aware, these plaintiffs arguably have stated a claim against the nondiverse physician defendants based on the theories that they failed to alert plaintiffs to the side effects of Rezulin of which they were aware and that they failed to secure the plaintiffs' informed consent and monitor their heart and liver function as the FDA recommended.[FN6]

FN2. For the relevant allegations in *Cooley,* *see* Cooley Cpt. ¶ 30 ("Plaintiff Cooley ... was prescribed Rezulin by Defendants Hassell and Laurel Family Clinic, P.A.... As a direct and proximate result of Plaintiff Colley's [sic] intake of Rezulin, Plaintiff Cooley has suffered permanent physical and emotional injuries."); *id.* at ¶¶ 51-55 ("[The nondiverse physician defendants] owed Plaintiff Cooley the duty of care, including a duty to disclose and inform her of all risks and consequences of using Rezulin [and] to fully monitor and evaluate her heart and liver function. [The nondiverse physician defendants] breached each and all of these duties and failed to gain informed consent from Plaintiff Cooley before prescribing them [sic] this hazardous drug, which

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 548750 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

Page 2

actions are a contributing proximate cause of the Plaintiffs' injuries. [The nondiverse physician defendants'] conduct falls below the standard of care for physicians of similar training, experience, and knowledge and amounts to medical malpractice [and] as a proximate cause and legal result of the negligence of the Physician Defendant, Plaintiff Cooley has suffered the damages described herein."); *see also* Cooley Aff. ¶ ¶ 2-5 (stating that Dr. John Hassell of the Laurel Clinic was plaintiff Cooley's primary treating physician as well as the physician who prescribed Rezulin for her, that prior to being prescribed Rezulin she suffered from liver problems of which Dr. Hassell was aware, and that Dr. Hassell did not warn her of any dangers or risks associated with Rezulin at any time prior to or during the time she was taking Rezulin).

FN3. For the relevant allegations in *Boykin,* see Boykin Cpt. ¶ 11 ("At all times pertinent hereto, Dr. Stevens was the treating physician for Plaintiff Willie Mae Atwood and prescribed the prescription drug Rezulin to Plaintiff Atwood."); *id.* at ¶ 12 ("At all times pertinent hereto, Dr. Roberts was the treating physician for Plaintiff Mary Boswell and prescribed the prescription drug Rezulin to Plaintiff Boswell."); *id.* at ¶ 13 ("At all times pertinent hereto, Dr. Thompson was the treating physician for Plaintiff Lou Ella Evans and prescribed the prescription drug Rezulin to Plaintiff Evans."); *id.* at ¶ 14 ("At all times pertinent hereto, Belenchia was the treating physician for Plaintiff Tinnie Hodge and prescribed the prescription drug Rezulin to Plaintiff Hodge."); *id.* at ¶ 51-55 ("[The nondiverse physician defendants] owed Plaintiffs Boykin, Atwood, Boswell, Evans, and Hodge, the duty of care, including a duty to disclose and inform these Plaintiffs of all risks and consequences of using Rezulin [and] a duty to fully monitor and evaluate their heart and liver function. [The nondiverse physician defendants] breached each and all of these duties and failed to gain informed consent from Plaintiffs Boykin, Atwood, Boswell, Evans, and Hodge before prescribing them this hazardous drug, which actions are a contributing proximate cause of the Plaintiffs' injuries. [The nondiverse

physician defendants'] conduct falls below the standard of care for physicians of similar training, experience, and knowledge and amounts to medical malpractice [and] as a proximate cause and legal result of the negligence of the Physician Defendants, the Plaintiffs have suffered the damages described herein.").

FN4.*Robinson v. Hawkins,* 541 So.2d 1048, 1050-51 (Miss.1989).

FN5. The *Boykin* complaint alleges that the nondiverse physician defendants owed a duty of care to plaintiff Boykin. The complaint, however, contains no allegation that any of the nondiverse defendants treated or prescribed Rezulin for Boykin. Hence, there is no reasonable possibility that she will be able establish liability against any nondiverse defendant.

FN6.*See supra* nn. 2-3; *see also* Cooley Cpt. at ¶ 22 ("[T]he FDA subsequently mandated label changes recommending liver monitoring,"); Boykin Cpt. at ¶ 24 (same).

Defendants' arguments to the contrary are without merit. First, defendants rely on this Court's disposition of other remand motions in Pretrial Order No. 59 for the proposition that the allegations in the instant cases are insufficient to warrant remand. This reliance is misplaced. In the cases to which that order pertained, the plaintiffs had not alleged a doctor-patient relationship between any plaintiffs and the physician defendants. Nor had they alleged that the physician defendants had prescribed Rezulin to any plaintiffs. In those circumstances, the Court held that the conclusory allegation that the physician defendants owed the plaintiffs a duty of care, which was unsupported by factual allegations that the physician defendants ever had treated the plaintiffs, was insufficient to defeat removal. The allegations in these complaints are different. Some plaintiffs here allege that the nondiverse physician defendants treated them, prescribed Rezulin to them, and failed to inform them of the risks associated with Rezulin, obtain their informed consent, and perform heart and liver function monitoring. These allegations are sufficient to render the citizenship of the physician defendants material for diversity purposes.

**\*2** Defendants further argue that there is no reasonable possibility that plaintiffs might establish liability against the nondiverse physician defendants

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                      Page 3
Not Reported in F.Supp.2d, 2002 WL 548750 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

because any claims against those defendants are barred by the statute of limitations. Plaintiffs rejoin that the date on which a medical malpractice claim accrues is a question of fact for the jury and that it would inappropriate for the Court to resolve the issue given the present posture of these cases. The Court need not decide this issue. Defendants, as the party invoking federal jurisdiction, have the burden of establishing that such jurisdiction exists. They have not met this burden on the statute of limitations question. Defendants assert that plaintiffs' claims are time-barred, but they do not offer the Court the date on which they believe the statute of limitations began to run or the date on which it expired. Nor do they offer any authority to support the notion that the statute of limitations began to run more than two years before the complaints were filed. In the absence of appropriate evidence demonstrating that the statute of limitations on these claims has run, the Court must assume, for the purpose of these motions, that the complaints were timely filed.

Finally, defendants argue that the claims against the nondiverse physician defendants are insufficient to defeat removal because they are directed to all physicians collectively. Again, defendants' reliance on this Court's previous rulings is misplaced. This is a far cry from previous complaints the Court has considered in which plaintiffs did not specifically mention a nondiverse physician or sales representative defendant except in the caption and then sought to lump this defendant in with the manufacturing defendants for liability purposes. *See, e.g., In Re Rezulin Prods. Liab. Litig.,* 133 F.Supp.2d 272, 283 (S.D.N.Y.2001). The five plaintiffs here who allege claims against a physician have separately alleged that a particular one of the nondiverse physician defendants treated them and prescribed Rezulin to them and in consequence each has a reasonable possibility of holding a nondiverse physician defendant liable.

That some of the plaintiffs in the instant actions have a reasonable possibility of succeeding against the nondiverse physician defendants does not end the matter. This Court previously has held that the joinder of plaintiffs who have no connection to each other aside from the fact that they ingested Rezulin is misjoinder. *In Re Rezulin Prods. Liab. Litig.,* 168 F.Supp.2d 136, 146 (S.D.N.Y.2001). When, as here, the misjoinder of particular plaintiffs destroys diversity, the Court will sever the actions of those plaintiffs for the purposes of maintaining the defendants' right to remove the rest of the action. *Id.* at 148.In consequence, the Court will sever the

claims of plaintiffs Evans, Hodges, Atwood, Boswell, and Cooley and grant these plaintiffs' motions to remand. The motions to remand of the remaining plaintiffs in *Boykin* and *Cooley* are denied.

**\*3** Accordingly, the motions to remand in the above-captioned cases are disposed of as follows:

1. In *Cooley v. Warner-Lambert,* No. 02 Civ. 1716, plaintiff Cooley's action is severed and her motion to remand is granted. The motion to remand of the remaining plaintiff is denied.

2. In *Boykin v. Warner-Lambert, Co.,* No. 02 Civ. 1717, the actions of plaintiffs Evans, Hodges, Atwood, and Boswell are severed and their motions to remand are granted. The motions to remand of the remaining plaintiffs are denied.

SO ORDERED.

S.D.N.Y.,2002.
In re Rezulin Products Liability Litigation (MDL No. 1348)
Not Reported in F.Supp.2d, 2002 WL 548750 (S.D.N.Y.)

END OF DOCUMENT