11

Westlaw.

Not Reported in F.Supp.2d                                              Page 1
Not Reported in F.Supp.2d, 2002 WL 31496228 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

**H**

In re Rezulin Products Liability Litigation (MDL No.
1348)
S.D.N.Y.,2002.
Only the Westlaw citation is currently available.
United States District Court,S.D. New York.
In re: REZULIN PRODUCTS LIABILITY
LITIGATION (MDL NO. 1348)
**Nos. 00 Civ. 2843(LAK), MDL 1348, 01 Civ. 4010.**

Nov. 7, 2002.

PRETRIAL ORDER NO. 109
KAPLAN, J.

(Motion to Remand in *Brown v. Pfizer, Inc.*)

*1 Plaintiffs filed this action in Oregon state court on
behalf of a nationwide class of all Rezulin users and
seek to establish a court-supervised medical
monitoring program. The case was removed to
federal court by the defendants on the basis of
diversity of citizenship and was transferred to this
Court by the Judicial Panel on Multidistrict
Ligitation. The plaintiffs include three citizens of
Oregon, two citizens of New York, and two citizens
of New Jersey.[FN1] Plaintiffs have moved to remand
the case on the ground that the presence of the
nondiverse New York and New Jersey plaintiffs
destroys the complete diversity necessary for
removal. The defendants counter that the nondiverse
plaintiffs are misjoined and that their claims should
be severed and dismissed.[FN2]

FN1. Pfizer's principal place of business is
in New York and Warner-Lambert's
principal place of business is in New Jersey.
The remaining four plaintiffs in this action
reside in Florida and Kansas.

FN2. Although it is possible that the Florida
and Kansas plaintiffs likewise are misjoined,
"in the interests of efficiently directing the
court's resources to pretrial coordination
efforts designated it by the Multidistrict
Panel, the Court addresses here only joinder
that affects federal jurisdiction, leaving
transferee courts on remand to consider
misjoinder of remaining parties." *In re*

*Rezulin Prods. Liab. Litig.,* 168 F.Supp.2d
136, 146 n. 50 (S.D.N.Y.2001) ("*Rezulin II*"
).

The Oregon, New York, and New Jersey plaintiffs
are misjoined unless each makes out at least one
claim that arises out of the same transaction or
occurrence or series of transactions or occurrences as
the other plaintiffs.[FN3] As the Court previously has
held, the joinder of plaintiffs who have no connection
to each other except the fact that they ingested
Rezulin constitutes misjoinder.[FN4] Plaintiffs do not
allege that they received Rezulin from the same
source, that they were exposed for similar periods of
time, or that they suffered similar injuries, if any.
Joinder "of several plaintiffs who have no connection
to each other in no way promotes trial convenience or
expedites the adjudication of the asserted
claims."[FN5] For this reason, the New York and New
Jersey plaintiffs are misjoined. Because the
misjoinder of the New York and New Jersey
plaintiffs would destroy complete diversity, the Court
will sever the claims of those four plaintiffs so as to
preserve the defendants' right to removal of the
remainder of the action.[FN6]

FN3. FED.R.CIV.P. 20(a); *see also Rezulin
II* at 145.

FN4. *See, e.g., Rezulin II* at 146.

FN5. *In re Diet Drugs,* No. Civ. A. 98-
20478, 1999 WL 554584, at *3 (E.D.Pa.
July 16, 1999).

FN6. *See Rezulin II* at 148.

Accordingly, the claims of plaintiffs Alfonso Chia,
Joanne Mangone, Eileen Cookingham, and Geraldo
Delgado, Sr. are severed from the actions of their co-
plaintiffs pursuant to Rule 21 of the Federal Rules of
Civil Procedure. The motions to remand of plaintiffs
Chia, Mangone, Cookingham, and Delgado, Sr. are
granted. The motions to remand of the remaining
plaintiffs in *Brown* are denied.

SO ORDERED.

S.D.N.Y.,2002.
In re Rezulin Products Liability Litigation (MDL No.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 31496228 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 2

1348)
Not Reported in F.Supp.2d, 2002 WL 31496228
(S.D.N.Y.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

12

LEXSEE 2003 U.S. DIST. LEXIS 28



Caution
As of: Dec 19, 2007

**In re MASTER FILE REZULIN PRODUCTS LIABILITY LITIGATION, (MDL No. 1348), This Document Relates to 02 Civ. 3583**

**00 Civ. 2843 (LAK)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

*2003 U.S. Dist. LEXIS 28*

**January 6, 2003, Decided**

**DISPOSITION:** Plaintiff's motion to remand denied.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff patient moved to remand his action against defendants drug manufacturers and a doctor alleging that the nondiverse doctor defeated complete diversity. Defendants objected to the magistrate's recommendation that the motion be granted because defendants had failed to show no reasonable possibility that the negligence claim against the doctor would be successful. Defendants argued that the doctor was joined fraudulently or was misjoined.

**OVERVIEW:** The court found that in light of the patient's myriad allegations that the manufacturers withheld information concerning the risks of the drug from physicians and others, an entirely conclusory allegation that the doctor failed to warn of risks of the drug was insufficient to provide the sufficient notice of the claim against the doctor. The patient next alleged that the doctor negligently failed to test and monitor his liver functions. Again, in light of the other allegations that the manufacturers failed to timely warn of the need for liver function and other body system monitoring, the patient's conclusory allegation was insufficient. The patient had failed to allege any basis for supposing that his doctor should have conducted liver testing or even what information concerning the need for testing was available to medical professionals at the relevant time. The third claim of negligence against the doctor also failed because it did not state on what basis the doctor should have known the

patient was unable to tolerate the drug. Thus, there was no possibility, based on the pleadings, that the patient could establish his medical malpractice claim against the nondiverse doctor.

**OUTCOME:** The patient's motion to remand was denied.

**LexisNexis(R) Headnotes**

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Failures to State Claims*
[HN1] Allegations that are so conclusory that they fail to give notice of the basic events and circumstances of which the plaintiff complains are insufficient as a matter of law.

*Civil Procedure > Removal > Postremoval Remands > General Overview*
[HN2] The propriety of joinder is to be determined based on the pleadings. Federal courts across the nation have relied upon that standard to deny remand based on inadequate pleadings and to disregard allegations not contained in the original complaint.

**COUNSEL:** For Caesar Desiano, Gloria Desiano, PLAINTIFFS: Sharon A McDermott, The Law Offices of Ronald R Benjamin, New York NY, USA. For Connie Gibson, PLAINTIFF: Tim Maloney, Maloney and Campolo, LLP, San Antonio TX, USA. For Rosemarie Wall,

2003 U.S. Dist. LEXIS 28, *

Jim J Martinez, Sr., PLAINTIFFS: Theodore J Holt, Hackard, Holt & Heller, Gold River CA, USA.

For Pfizer, Inc, DEFENDANT: Glenn J Pogust, Jay P Mayesh, David Klingsberg, Alan F Goot, Liza I Karsai, Kaye Scholer, LLP, New York NY, USA. Jack E. Urguhart, Beirne, Maynard & Parsons, LLP, Houston TX, USA.

For Virginia Venegas, CONSOLIDATED PLAINTIFF: Carl Hagwood, Campbell, Delong, Hagwood & Wade, LLP, Greenville MS, USA. For Veola Milburn, CONSOLIDATED PLAINTIFF: Anthony J Angelette, Jr, Metairie LA, USA. For Raymond Beharry, KOWSHIL-LIA BEHARRY, CONSOLIDATED PLAINTIFFS: Marya C Young, Law Offices of Ronald R Benjamin, Binghamton NY, USA. For Massimo Zanchini, Terri Ghio, CONSOLIDATED PLAINTIFFS: David R Zarka, Hackard & Holt, Gold River CA, USA. For Lydia Covarrubias, CONSOLIDATED PLAINTIFF: James R Harrison, Van O'Steen & Partners, Phoenix AZ, USA. H Blair Hahn, Richardson, Patrick, Westbrook & Brickman, LLC, Charleston SC, USA. Thomas P Gressette, Richardson, Patrick, Westbrook & Brickman, LLC, Charleston SC, USA.

For Warner Lambert Company, DEFENDANT: Frank A Pozzuoli, Kaye, Scholer, Fierman, Hays & Handler, New York NY, USA. Liza Ilona Karsai, Kaye, Scholer, Fierman, Hays & Handler, LLP, New York NY, USA. David Klingsberg, Kaye, Scholer, Fierman, Hays & Handler, LLP, New York NY, USA. Joseph J Leghorn, Nixon, Peabody, LLP, Boston MA USA. W Scott O'Connell, Esq., Nixon, Peabody, LLP, Manchester NH, USA. Richard M Barnes, Goodell, Devries, Leech & Gray, LLP, Baltimore MD, USA. Charles P Goodell, Jr, Goodell, Devries, Leech & Gray, LLP, Baltimore MD, USA. Richard W Ellis, Andrew S Chamberlin, Ellis & Winters, Raleigh NC, USA. James Ralph Adams, Jack B Harrison, Frost, Brown & Todd, Cincinnati OH, USA. Glenn J Pogust, David Klingsberg, Alan Goott, Glenn J Pogust, Jap P Mayesh, David Klingsberg, Alan F Goot, Lisa I Karsai, Robert Barnes, Liza Ilona Karsai, Leslie W Butchko, Glenn J Pogust, Jay P Mayesh, David Klingsberg, Lisa I Karsal, Alan F Goott, Parke-Davis, Kaye, Scholer, LLP, New York NY, USA. Pierce O'Donnell, Christine A Pagac, O'Donnell & Shaeffer, Los Angeles CA, USA. Jack E Urguhart, Beirne, Maynard & Parsons, LLP, Houston TX, USA. John J Shaeffer, O'Donnell & Sheffer, Los Angeles CA, USA. Michael B Neal, Esq., Armstrong, Allen, PLLC, Memphis TN, USA. Jay A Johnston, Oppenheimer, Wolff & Donnelly LLP, Minneapolis MN, USA. For Judy Henderson, DEFENDANT: Thomas M O'Driscoll, Mayfield & Ogle, PA, Ormond Beach FL, USA. W Glenn Mayfield, Mayfield

& Ogle, PA, Ormond Beach FL, USA. For Lee Miers, III, David J Lemoine, Alice E Bonar, Leisle Daly Bold, Philip Thrower, Karen Massengill, DEFENDANTS: C York Craig, Jr, Craig, Hester, Luke & Dodson, PA, Jackson MS USA.

For Sankyo Pharmaceutical Company, CONSOLIDATED DEFENDANT: Anthony M Radice, Morrison & Foerster, LLP, New York NY, USA. James M Bergin, Morrison & Foerster, LLP, New York NY, USA.

JUDGES: [*1] Lewis A. Kaplan, United States District Judge.

OPINION BY: Lewis A. Kaplan

OPINION

PRETRIAL ORDER NO. 122

(Motion to Remand in *Martin*)

LEWIS A. KAPLAN, *District Judge.*

Plaintiff has moved to remand this action based on his contention that the presence of a nondiverse defendant -- plaintiff's treating physician, Garth C. Denyer, M.D. -- defeats complete diversity. Defendants object to the Report and Recommendation of Magistrate Judge Katz, which recommended that plaintiff's motion to remand be granted because "defendants have failed to demonstrate that there is no reasonable possibility that plaintiff's negligence claim against the non-diverse physician would be successful." Report & Recommendation at 6. Defendants argue that Dr. Denyer was joined fraudulently, or, alternatively, that he was misjoined with the Manufacturing Defendants.

Plaintiff asserts three theories of negligence against the physician. First, plaintiff asserts that the defendant-physician negligently failed to warn him of the risks linked to Rezulin. Petition P IV(7). As this Court recently found in PTO No. 121, in light of plaintiff's myriad allegations that the defendants withheld information concerning [*2] the risks of Rezulin from physicians and others, [1] an entirely conclusory allegation that the physician failed to warn of risks of Rezulin is insufficient to provide the defendant sufficient notice of the claim against him. [2]

> 1 *See, e.g.,* Petition P IV(4) ("Defendants failed to provide adequate warnings of dangers and instruction for safe use of the drug."); Petition P VI(2)(f) ("The Pharmaceutical Defendants failed to timely and adequately warn the medical community and/or Plaintiff regarding the risks associated with Rezulin as they became known."); Peti-

2003 U.S. Dist. LEXIS 28, *

tion P X(1)(c) ("The Pharmaceutical Defendants were grossly negligent in failing to timely and adequately warn consumers of the known adverse effects of Rezulin . . . .").

2    PTO No. 121 at n.11 (citing *Rodriguez v. Beechmont Bus Svce., Inc., 173 F. Supp. 2d 139, 145 (S.D.N.Y. 2001)* [HN1] ("Allegations that are so conclusory that they fail to give notice of the basic events and circumstances of which the plaintiff complains are insufficient as a matter of law."); *Strickland v. Brown Morris Pharmacy Inc., 1996 U.S. Dist. LEXIS 14131,* Civ. A. No. 96-815, 1996 WL 537736, at *2 (E.D. La. Sept. 20, 1996) (conclusory allegations that defendant knew or should have known that drug was dangerous do not warrant remand)).

[*3]   Plaintiff next alleges that the physician negligently "failed to test and monitor her [sic] liver functions." Petition P IV(7). Once again, in light of plaintiff's other allegations that the defendants failed to timely warn of the need for liver function and other body system monitoring, [3] plaintiff's conclusory allegation is insufficient. Plaintiff has failed to allege any basis for supposing that his physician should have conducted liver testing or even what information concerning the need for testing was available to medical professionals at the relevant time. [4]

3   *See, e.g.,* Petition P X(1)(c) ("The Pharmaceutical Defendants were grossly negligent in failing to timely and adequately warn consumers of the known adverse effects of Rezulin, the need for liver function and other body system monitoring."); Petition P IV(4) ("Defendants failed to provide adequate warnings of danger and instruction for safe use of the drug."); Petition P VI(2)(c)(ii) ("The Pharmaceutical Defendants

failed . . . to give adequate warnings regarding the dangers associated with the use of Rezulin and adequate instructions to avoid such dangers.").

[*4]

4   This Court need not consider the "Dear Health Care Professional" letters, FDA Talk Paper, letter from Glaxo Wellcome to the President of Sankyo Company Limited, and Rezulin product labels plaintiff appended to his motion to remand. *See* Motion Exs. C - H. As this Court previously has noted, [HN2] the propriety of joinder "is to be determined based on the pleadings." *In re Rezulin Prods. Liab. Litig., 133 F. Supp. 2d 272, 284 (S.D.N.Y. 2001)* ("*Rezulin I*") (internal quotation marks and citation omitted). Moreover, this Court has observed that "federal courts across the nation have relied upon that standard to deny remand based on inadequate pleadings and to disregard allegations not contained in the original complaint." *Id.* (citing cases).

Plaintiff's third claim of negligence against the physician likewise fails because it does not state on what basis the physician should have known the patient was unable to tolerate Rezulin.

Accordingly, there is no possibility, based on the pleadings, that plaintiff will establish his medical malpractice claim against the nondiverse [*5] physician.

The plaintiff's motion to remand is denied.

SO ORDERED.

Dated: January 6, 2003

Lewis A. Kaplan

United States District Judge

13

1

2

3

4

5

6                    UNITED STATES  DISTRICT COURT

7                  NORTHERN DISTRICT OF CALIFORNIA

8

9    PEGGY JOHNSON,

10                          Plaintiff,              No. C 05-02881 MHP

11         v.                                       **MEMORANDUM & ORDER**
                                                    **Re: Motion to Remand**
12    MERCK & CO., INC., MCKESSON
     CORPORATION, MCKESSON
     PHARMACEUTICAL, INC., MCKESSON
13    MEDICAL SUPPLY, INC., MCKESSON
     HBOC, INC.,

14
                            Defendants.
15    _____/

16        On June 30, 2005 plaintiff Peggy Johnson filed her First Amended Complaint against Merck

17    & Co., Inc. ("Merck"), the McKesson Corporation, McKesson Pharmaceutical, Inc., McKesson

18    Medical Supply, Inc., and McKesson HBOC, Inc. ("the McKesson defendants") in the Superior

19    Court of the State of California for the County of Alameda.  The complaint seeks damages allegedly

20    resulting from plaintiff's use of Vioxx, a drug manufactured by Merck.  On July 14, 2005, Merck

21    removed the action to this court on the basis of diversity jurisdiction.  Presently before the court are

22    plaintiff's motion to remand the action to state court and defendants' motion to stay the action

23    pending its transfer to the multidistrict litigation ("MDL") proceeding that has been established to

24    deal with the large volume of Vioxx-related cases in federal court.

25        The power to stay proceedings in the interest of judicial economy is an inherent power left to

26    the discretion of the court.  Landis v. North Am. Co., 299 U.S. 248, 254 (1936).  In matters

27    involving similar jurisdictional issues, deference to the MDL proceeding is often appropriate for

28    resolution of a motion to remand, as it "provides the opportunity for the uniformity, consistency, and

1   predictability in litigation that underlies the MDL system." Conroy v. Fresh Del Monte Produce,

2   Inc., 325 F. Supp. 2d 1049, 1053 (N.D. Cal. 2004) (Armstrong, J.) (citing 28 U.S.C. § 1407).

3        Defendants' basis for removal to this court is that the McKesson defendants, whose presence

4   in this lawsuit destroys complete diversity, are fraudulently joined. See Plute v. Roadway Package

5   Sys., Inc., 141 F. Supp. 2d 1005, 1008 (N.D. Cal. 2001) (Illston, J.). According to defendants'

6   assertions, which plaintiff does not dispute, there are presently more than 25 California cases that

7   involve precisely the same fraudulent joinder of the McKesson defendants already pending before

8   the MDL judge. Due to the similarity of the issues presented, this action was included in the MDL

9   Panel's August 24, 2005 Conditional Transfer Order. In light of the number of cases presenting

10  issues similar to this action and the need for judicial consistency with respect to those cases, this

11  court finds that the interest of judicial economy favors staying this action pending its transfer to

12  MDL Proceeding No. 1657.

13       Upon entry of this order, further proceedings in this action shall be STAYED pending

14  transfer of the action to MDL Proceeding No. 1657 before Judge Fallon in the Eastern District of

15  Louisiana.

16

17  _____IT IS SO ORDERED.

18

19  Date: October 3, 2005_____

20

21                                      MARILYN HALL PATEL
                                        District Judge
                                        United States District Court
                                        Northern District of California

22

23

24

25

26

27

28

2

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court

For the Northern District of California

3

14

1

2

3

4

5

6              IN THE UNITED STATES DISTRICT COURT

7          FOR THE NORTHERN DISTRICT OF CALIFORNIA

8

9

10    STANFORD JOHNSON,                    No. C 07-00067 WHA

11             Plaintiff,

12        v.                              **ORDER GRANTING
                                          DEFENDANT'S MOTION TO
13    MERCK & COMPANY, INC., a corporation;   STAY PROCEEDINGS**
      McKESSON CORPORATION, a corporation;
14    AMERISOURCEBERGEN DRUG
      CORPORATION, a corporation; DOES 1 to
15    100; PHARMACEUTICAL DEFENDANT
      DOES 101 to 200, and DISTRIBUTOR DOES
16    201 to 300, inclusive,

17             Defendants.
                                          /
18

19                          **INTRODUCTION**

20        In this pharmaceutical products-liability case, defendant Merck & Co., Inc. moves to

21    stay this action pending a potential transfer to a multi-district litigation proceeding. Plaintiff

22    Stanford Johnson moves to remand this action to state court for lack of subject-matter

23    jurisdiction due to the absence of complete diversity. This order GRANTS defendant's motion

24    for a temporary stay and defers ruling on plaintiff's motion to remand.

25                           **STATEMENT**

26        This is one of two motions for a stay pending transfer to an MDL proceeding currently

27    before the Court. Although arising in different actions, the facts pertinent to the motions to stay

28

United States District Court
For the Northern District of California

1   are nearly identical. Indeed, counsel for defendants and plaintiffs are the same in both actions,

2   as were the briefs submitted.

3       Defendant Merck is a pharmaceutical company that manufactured the anti-inflammatory

4   drug known commonly as VIOXX®. This products-liability case is one of a large number of

5   actions filed after Merck voluntarily withdrew the drug from the market in September 2004. On

6   February 15, 2005, an MDL panel transferred 149 actions pending at the time to the United

7   States District Court for the Eastern District of Louisiana for coordinated or consolidated

8   pretrial proceedings before the Honorable Judge Eldon E. Fallon. *In re VIOXX Products*

9   *Liability Litigation*, 360 F. Supp. 2d 1352 (J.P.M.L. 2005). Conditional transfer orders have

10  since been issued for tag-along cases (Thomas Decl. ¶ 5). Approximately 2500 VIOXX®-

11  related actions have been stayed in federal district courts across the country. Of these, over 350

12  have pending motions to remand (Thomas Reply Decl. ¶ 2). Merck notified the MDL panel that

13  the above-captioned case was a potential tag-along action on January 12, 2007 (*id.* at ¶ 3). A

14  conditional transfer order issued on February 1, 2007 (*ibid.*). Merck now moves for a

15  temporary stay of this action.

16      Plaintiff Stanford Johnson was prescribed VIOXX® by his physicians, Dr. Louise Nurre

17  and Dr. M. Lewandowski. He alleges that he has suffered myocardial infarction and related

18  problems as a result of ingesting the drug (Compl. ¶ 4). Johnson commenced this action on

19  September 21, 2006, by filing a notice of adoption of the master complaint in California state

20  court. In it, he alleges claims of (1) strict liability for failure to warn; (2) negligence; (3)

21  negligence per se; (4) breach of implied warranty; (5) breach of express warranty; (6) deceit by

22  concealment; (7) negligent misrepresentation; (8) violation of California Business and

23  Professions Code Sections 17200 and 17500; and (9) violation of California Civil Code Section

24  1750. Plaintiff asks for general and punitive damages, as well as medical monitoring costs,

25  injunctive relief, and disgorgement of defendants' profits from the drug.

26      Johnson filed a motion to remand the action for lack of subject matter jurisdiction

27  because of the absence of complete diversity of parties. His motion was filed on February 1,

28  2007, but was improperly noticed for hearing. It was later renoticed for March 22, 2007, but

**United States District Court**
For the Northern District of California

2

1  plaintiff asks that it be heard on an expedited basis in light of the pending conditional transfer

2  order. Plaintiff is a resident of California, as is defendant McKesson Corporation. Merck is

3  headquartered elsewhere, while AmerisourceBergen's citizenship is uncertain.

4      A hearing on defendant's motion to stay proceedings was held on March 8, 2007.

5  Plaintiff did not appear.

6  <div align="center">**ANALYSIS**</div>

7      The power to grant a temporary stay "is incidental to the power inherent in every court

8  to control the disposition of the causes on its docket with economy of time and effort for itself,

9  for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). Plaintiff argues

10  that the Court should rule on his motion for remand before deciding to stay this action despite

11  its being filed later. Whether a motion to remand or a motion to stay should be decided first,

12  however, is "extremely sensitive to the facts of the case." *Burse v. Purdue Pharma Co.*, 2004

13  WL 1125055 at *1 (N.D. Cal. 2004). In these actions, the MDL panel correctly noted that a

14  remand motion can just as easily be presented to and decided by the transferee judge (Thomas

15  Decl. Exh. C. at 2). There are a large number of VIOXX®-related actions that have been stayed

16  by other federal district courts despite pending motions to remand (*id.* at ¶ 6). Of the actions

17  stayed, a number of the actions from California have faced the same issue raised here by

18  plaintiff: whether the distributor defendants were fraudulently joined to defeat diversity. *See,*

19  *e.g. Johnson v. Merck & Co., Inc.*, Case No. C-05-02881 (N.D. Cal. Oct. 4, 2005) (Patel, J.);

20  *Leeson v. Merck & Co., Inc.*, Case No. C-05-02240-WBS-PAN (E.D. Cal. Jan, 27, 2006).

21      Plaintiff argues that the merits of his motion to remand should be addressed before a

22  motion to stay is granted. In view of the MDL, however, doing so would unnecessarily

23  duplicate work, and could lead to inconsistent results. Plaintiff also argues at length in his

24  memorandum in support of his motion to remand that defendant cannot show fraudulent joinder

25  here because Judge Chaney of the California VIOXX Coordinated Proceeding in California

26  Superior Court ruled that pharmaceutical distributors, such as McKesson, could be held liable

27  for failure to warn (Woodruff Decl. Exh. A). This result will likely be taken into consideration

28

*United States District Court*
For the Northern District of California

<div align="center">3</div>

1  in deciding similar motions to remand, however, to prevent inconsistent results, this should be

2  done by the MDL panel.

3        It would be an inefficient use of resources to unnecessarily duplicate the efforts of the

4  transferee judge, who will undoubtedly face most (if not all) of the same issues in dealing with

5  the other pending remand motions.  Staying the proceedings will best serve the interests of

6  judicial economy.  Moreover, granting Merck's motion for a temporary stay avoids the

7  possibility of inconsistent rulings, which is particularly important here, because a decision to

8  remand is not subject to appeal. 28 U.S.C. 1447(d).  Finally, plaintiff has not shown that he

9  would be unduly prejudiced by the stay.  His conclusory statement regarding his deteriorating

10  helath is insufficient.  The MDL panel has already been notified of this potential tag-along

11  action, and a conditional transfer order issued on February 1, 2007.  Any delay will be minimal.

<div align="center">CONCLUSION</div>

13        For all the above-stated reasons, defendant's motion for a temporary stay pending the

14  potential transfer of this action is GRANTED.  In the interim, this order declines to rule on

15  plaintiff's motion to remand.

17  **IT IS SO ORDERED.**

19  Dated: March 8, 2007

                                        WILLIAM ALSUP
20                                      UNITED STATES DISTRICT JUDGE

United States District Court
For the Northern District of California

15

LEXSEE 1997 U.S. DIST. LEXIS 18365



Caution
As of: Dec 19, 2007

**GLORIA WILKINSON LYONS, et al., Plaintiffs, v. THE AMERICAN TOBACCO
COMPANY INC., et al., Defendants.**

**CIVIL ACTION NO. 96-0881-BH-S**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF
ALABAMA, SOUTHERN DIVISION**

*1997 U.S. Dist. LEXIS 18365*

**September 30, 1997, Decided
October 1, 1997, Filed**

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Contending that complete
diversity did not exist among the parties, plaintiff smok-
ers filed a motion to remand their actions for fraud and
deceit, suppression, negligent misrepresentation, breach
of express warranty, and breach of implied warranty.
Defendant cigarette manufacturers filed motions to dis-
miss for lack of personal jurisdiction.

**OVERVIEW:** Alleging that defendants, cigarette manu-
facturers and distributors, fraudulently failed to inform
consumers that nicotine was addictive and that defen-
dants manipulated the level of nicotine in cigarettes to
sustain their addictive nature, plaintiff smokers brought a
class action seeking compensation for the injury of nico-
tine addiction. The court denied plaintiffs' motion to re-
mand because complete diversity existed between the
properly joined parties. The court held that plaintiffs'
attempt to join smokers who resided in a foreign state to
avoid diversity jurisdiction was fraudulent in light of the
obvious lack of predominance of any common legal
principle or fact related to plaintiffs' addiction claims.
The court held that defendant distributors were also
fraudulently joined to avoid diversity jurisdiction be-
cause there were no factual allegations that would sup-
port plaintiffs' claims against the distributors. Defen-
dants' motions to dismiss for lack of personal jurisdiction
were granted only where plaintiffs failed to demonstrate
that the particular defendant had sufficient minimum
contacts with the state.

**OUTCOME:** The court denied plaintiffs' motion to re-
mand, denied the motion to dismiss one of the defen-
dants, and granted another defendant's motion to dismiss
for lack of personal jurisdiction.

**LexisNexis(R) Headnotes**

*Civil Procedure > Parties > Joinder > Misjoinder*
[HN1] Misjoinder of parties is not ground for dismissal
of an action. Parties may be added or dropped by order
of the court on motion of any party or of its own initia-
tive at any stage of the action and on such terms as are
just. Any claim against a party may be severed and pro-
ceeded with separately. *Fed. R. Civ. P. 21.*

**COUNSEL:** [*1]  For GLORIA WILKINSON LYONS,
WYATT TUCK, ELEANOR TUCK, plaintiffs: Steven
A. Martino, Esq., Mobile, Al.

For GLORIA WILKINSON LYONS, WYATT TUCK,
ELEANOR TUCK, plaintiffs: Ralph L. Knowles, Ken-
neth S. Canfield, Doffermyre, Shields, Canfield &
Knowles, Atlanta, GA.

For GLORIA WILKINSON LYONS, WYATT TUCK,
ELEANOR TUCK, plaintiffs: John W. Barrett, Lexing-
ton, MS.

1997 U.S. Dist. LEXIS 18365, *

For GLORIA WILKINSON LYONS, WYATT TUCK, ELEANOR TUCK, plaintiffs: Francis H. Hare, Jr., Scott A. Powell, The Park Woods Building, Birmingham, AL.

For GLORIA WILKINSON LYONS, WYATT TUCK, ELEANOR TUCK, plaintiffs: Plaintiff's Legal Committee, New Orleans, LA.

For THE AMERICAN TOBACCO COMPANY, defendant: A. Danner Frazer, Jr., Mobile, AL.

For THE AMERICAN TOBACCO COMPANY, BROWN & WILLIAMSON, defendants: George G. Lynn, Birmingham, AL.

For THE AMERICAN TOBACCO COMPANY, defendant: Richard A. Schneider, Jody Hunt, KING & SPALDING, Atlanta, GA.

For THE AMERICAN TOBACCO COMPANY, PHILIP MORRIS, INC., LORILLARD TOBACCO COMPANY, defendants: Gary R. Long, Craig E. Gustafson, SHOOK, HARDY & BACON LLP, Kansas City, MO.

For R.J. REYNOLDS, defendant: Samuel H. Franklin, Lightfoot, Franklin, White & Lucas, [*2] Birmingham, AL.

For R.J. REYNOLDS, defendant: Mark A. Belasic, Richard M. Kirby, Hugh R. Whiting, JONES, DAY, REAVIS & POGUE, Cleveland, OH.

For B.A.T. INDUSTRIES, defendant: W. Stancil Starnes, STARNES & ATCHISON, Birmingham, AL.

For B.A.T. INDUSTRIES, defendant: Joseph McLaughlin, Ellen Bonaventura, SIMPSON THACHER & BARTLETT, New York, NY.

For PHILIP MORRIS, INC., defendant: Charles F. Gay, Jr., Scott E. Delacroix, Deborah B. Rouen, ADAMS AND REESE, LLP, New Orleans, LA.

For PHILIP MORRIS, INC., THE COUNCIL FOR TO-BACCO RESEARCH-U.S.A., INC., defendants: Archibald T. Reeves, IV, Esq., Edward S. Sledge, III, Esq., McDowell Knight Roedder & Sledge, L. L. C., Mobile, AL.

For LORILLARD TOBACCO COMPANY, defendant: Mack B. Binion, Esq., Mobile, AL.

For LORILLARD TOBACCO COMPANY, defendant: William C. Knight, Jr., John C. Morrow, Esq., Burr & Forman, Birmingham, AL.

For TOBACCO INSTITUTE INC., defendant: Robert A. Huffaker, Rushton, Stakley, Johnston, Garrett, P. A., Montgomery, Al.

For THE COUNCIL FOR TOBACCO RESEARCH-U.S.A., INC., defendant: Steven Klugman, Joseph P. Moodhe, DEBEVOISE & PLIMPTON, New York, NY.

For THE COUNCIL FOR TOBACCO [*3] RE-SEARCH-U.S.A., INC., defendant: Robert B. Reneau, RENEAU & THORNTON, Wetumpka, AL.

For CITY WHOLESALE GROCERY COMPANY, INC., AMERICAN CANDY & TOBACCO, CO., defendants: Frederick G. Helmsing, Esq., Mobile, AL.

For CITY WHOLESALE GROCERY COMPANY, INC., AMERICAN CANDY & TOBACCO, CO., defendants: Mark A. Belasic, Hugh R. Whiting, JONES, DAY, REAVIS & POGUE, Cleveland, OH.

For BROWN & WILLIAMSON, defendant: Richard A. Schneider, KING & SPALDING, Atlanta, GA.

For BROWN & WILLIAMSON, defendant: A. Danner Frazer, Jr., Frazer, Greene, Upchurch & Baker, Mobile, AL.

For BROWN & WILLIAMSON, defendant: Andrew C. Hall, Atlanta, GA.

JUDGES: W. B. Hand, SENIOR DISTRICT JUDGE.

OPINION BY: W. B. Hand

OPINION

ORDER

This action is before the Court on the following matters: (1) Plaintiffs' motion (Doc. 12) to remand; (2) the motion (Doc. 17) of defendant B.A.T. Industries, p.l.c. (B.A.T. Industries) to dismiss for lack of personal jurisdiction; and (3) the motion (Doc. 21) of defendant The Tobacco Institute, Inc. (Tobacco Institute) to dismiss for lack of personal jurisdiction. Upon consideration of these motions, the respective briefs filed in support thereof and opposition thereto [*4] and all pertinent portions of the record, the Court concludes that the motion to remand and the Tobacco Institute's motion to dismiss are due to be denied while the motion to dismiss B.A.T Industries is due to be granted.

As an introductory matter, it is undisputed that in 1994 counsel for the plaintiffs filed a lawsuit in the United States District Court for the Eastern District of Louisiana, and obtained from the district court a nationwide class certification order. *Castano v. The American Tobacco Company, 160 F.R.D. 544 (E.D. La. 1995)*. Plaintiffs concede that they were members of the *Castano* class during its pendency. Plaintiffs' Memorandum (Doc. 13) at 7. On May 23, 1996, the United States Court of Appeals for the Fifth Circuit reversed the district court's certification order as an abuse of discretion. *Castano v. The American Tobacco Co., 84 F.3d 734 (5th Cir. 1996)*. The case at bar was filed shortly after the *Castano* decertification and asserts five causes of action against various cigarette manufacturers and distributors: (1) Fraud and Deceit; (2) Suppression; (3) Negligent Misrepresentation; (4) Breach of Express Warranty; and (5) Breach of Implied Warranty. [*5] [1] The claims asserted in this action are virtually identical to those asserted in *Castano*; plaintiffs seek compensation solely for the injury of nicotine addiction and essentially assert a theory that the defendants fraudulently failed to inform consumers that nicotine is addictive and manipulated the level of nicotine in cigarettes to sustain their addictive nature.

### MOTION TO REMAND

Plaintiffs motion to remand is predicated on the assertion that complete diversity does not exist among the parties because (1) plaintiffs Wyatt Tuck and Eleanor Tuck are properly joined plaintiffs who are citizens of North Carolina as is the defendant R. J. Reynolds Tobacco Company and (2) plaintiff Gloria Wilkinson Lyons is a citizen of Alabama as are certain properly joined distributors. The Court, however, agrees with the defendants that complete diversity does exist between the properly joined parties in this litigation. The Court finds its unnecessary to conduct oral arguments on this matter as requested by the plaintiffs (Doc. 49) and such request is therefore **DENIED**.

1 What plaintiffs label as their sixth "cause of action" is simply a prayer for injunctive relief.

### [*6] A. Plaintiffs Wyatt and Eleanor Tuck

Plaintiffs concede that the claims of Wyatt and Eleanor Tuck did not arise in Alabama but rather from acts occurring in North Carolina. [2] Plaintiffs also assert that the state law claims they raise are in no way preempted by federal law. Plaintiff's Reply Memorandum (Doc. 36) at 10-11. Plaintiffs, however, offer no explanation for the joinder of Alabama and North Carolina plaintiffs beyond a mere assertion of an alleged right to do so under a class action aegis.

2 *See*, Plaintiffs' Memorandum (Doc. 13) at 15.

Although the Fifth Circuit in *Castano*, plaintiffs' predecessor class action litigation, emphasized that "in a multi-state class action, variations in state law may swamp any common law issues and defeat predominance," plaintiffs herein have, without further explanation, continued their efforts to join two separate and distinct state law actions for fraud and product liability and have claimed a right of action "as provided by any state's law and/or as authorized [*7] by the choice of law provisions of the state in which this Court sits." *Cf., Castano, 84 F.3d at 741* and Plaintiffs' Complaint at P 63. With specific respect to the acts which give rise to the Tucks' claims for fraud, misrepresentation, suppression and breach of express or implied warranties, plaintiffs expressly acknowledge that such claims are "cognizable under North Carolina law." Plaintiffs' Reply Memorandum (Doc. 36) at 13, n. 1. The issues addressed in the *Castano* opinion, although directed toward the appropriateness of class certification in general and the specific designation of the class, is nonetheless relevant to the issue before this Court, namely whether the North Carolina plaintiffs have been joined in an effort to avoid diversity jurisdiction. It is particularly relevant to the case at bar inasmuch as the only explanation given by the plaintiffs for the joinder relates to the alleged appropriateness of joining the plaintiffs' class claims. [3]

3 Plaintiffs specifically argue that "pursuing the North Carolina Class Members' claims in this action is far more convenient to the parties than would be pursuing two separate actions in different locales." Plaintiffs' Reply Memorandum (Doc. 36) at 13. Plaintiffs also argue that "joinder of the North Carolina Plaintiffs will greatly enhance judicial economy, and likewise greatly reduce the expenses to the parties [and] will reduce the risk of conflicting determinations of fact on the question of conspiracy, and lessen the risk of inconsistent damages awards or of multiple punishment for the same offense. *Id.* at 14-15.

[*8] Another concern expressed by the Fifth Circuit in *Castano*, which is also of concern to this Court, involves the predominance of the alleged common issues of law and/or fact. As stated in *Castano*:

A district court certainly may look past the pleadings to determine whether the requirements of rule 23 have been met. [Footnote omitted] Going beyond the pleadings is necessary, as a court must understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues. *See*, MANUAL

1997 U.S. Dist. LEXIS 18365, *

FOR COMPLEX LITIGATION § 30.11 (3d ed. 1995).

The district court's predominance inquiry demonstrates why such an understanding is necessary. ... Absent knowledge of how addiction-as-injury cases would actually be tried, however, it was impossible for the court to know whether the common issues would be a "significant" portion of the individual trials. The court just assumed that because the common issues would play a part in every trial, they must be significant. [n. 18: "The district court in the instant case did not, and could not, have determined that the common issues would be a significant part of each case. ... [*9] The district judge *a quo* had no experience with this type of case and did not even inquire into how a case would be tried to determine whether the defendants' conduct would be a significant portion of each case.] The court's [analysis] would write the predominance requirement out of the rule, and any common issue would predominate if it were common to all the individual trials. [n. 19: "An incorrect predominance finding also implicates the court's superiority analysis: The greater the number of individual issues, the less likely superiority can be established."]

*Castano, 84 F.3d at 744-45.* The Fifth Circuit also noted Professor Charles Allen Wright's opinion that "Judge Jones in Louisiana would be creating a Frankenstein's monster if he should allow certification of what purports to be a class action on behalf of everyone who has ever been addicted to nicotine." *Id., quoting,* Letter of Professor Charles Allen Wright to N. Reid Neureiter, Williams & Connolly, Washington, D.C. The importance of these observations is enhanced by the findings in *Castano* that:

The plaintiffs initially defined the class as "all nicotine dependent persons in the United States," [*10] including current, former and deceased smokers since 1943. Plaintiffs conceded that addiction would have to be proven by each class member; the defendants argued that proving class membership will require individual mini-trials to determine whether addiction actually exists.

. . .

[and] the district court refused to certify the issues of injury-in-fact, proximate cause, reliance, affirmative defenses, and compensatory damages, concluding that the "issues are so overwhelmingly replete with individual circumstances that they quickly outweigh predominance and superiority." Specifically, the court found that whether a person suffered emotional injury from addiction, whether his addiction was caused by the defendants' actions, whether he relied on the defendants' misrepresentations, and whether affirmative defenses unique to each class member precluded recovery were all individual issues. As to compensatory damages and the claim for medical monitoring, the court concluded that such claims were so intertwined with proximate cause and affirmative defenses that class certification would not materially advance the individual cases.

*Castano, 84 F.3d at 738* and 740. Plaintiffs herein [*11] have asserted the same claims as were previously raised in *Castano* and seek the same class certification, albeit restricted to Alabama and North Carolina plaintiffs' classes. The statistical facts alleged by the plaintiffs in their complaint at paragraphs 32 support a conclusion similar to that reached in *Castano* that "the issues of injury-in-fact, proximate cause, reliance, affirmative defenses, and compensatory, damages ... are so overwhelmingly replete with individual circumstances" that class certification on such issues would be inappropriate. *Cf.,* Complaint at P 32 and *Castano, 84 F.3d at 738* and 740. Plaintiffs also acknowledge that tobacco addiction involves both "pharmacologic and behavioral processes" (Complaint at P33) which of necessity requires individual analysis. Consequently, the observations in *Castano* which are quoted above are again particularly relevant to the case at bar because plaintiffs' rationale for joining the North Carolina plaintiffs and North Carolina class claims is solely the alleged superiority of the class action form of litigation.

The joinder of Wyatt and Eleanor Tuck, either individually or as representatives of similarly situated [*12] North Carolina residents, to assert nicotine addiction claims which are inherently separate and distinct from the claims asserted by the Alabama plaintiff, is clearly improper. The attempted joinder of the Tucks, particularly in light of *Castano, supra,* is therefore nothing more than a transparent artifice to defeat the diversity jurisdic-

1997 U.S. Dist. LEXIS 18365, *

tion of this Court. [4] As plaintiffs have appropriately recognized, the Eleventh Circuit explicitly rejected the argument that "misjoinder [under Rule 20], no matter how egregious, is not fraudulent joinder." *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996). To the contrary, the Eleventh Circuit held that "misjoinder may be just as fraudulent as the joinder of a resident defendant against whom a plaintiff has no possibility of a cause of action." *Id.* Nothing in the *Tapscott* opinion limits its application to joinder of defendants; its reasoning is equally applicable to cases involving the misjoinder of named representative plaintiffs in a putative class action. Plaintiffs nonetheless contend that the mere assertion of a conspiracy among the defendants is sufficient to limit the application of Tapscott's fraudulent [*13] misjoinder principle to this case. Plaintiffs' Reply Memorandum (Doc. 36) at 17: Such a contention is specious, particularly in light of the obvious lack of predominance of any common legal principle or fact related to plaintiffs' addiction claims with their inherent individual issues of injury-in-fact, proximate cause, reliance, affirmative defenses and compensatory damages.

> 4 The Court does not hold that a party is *per se* fraudulently joined merely because plaintiff's counsel's subjective intent motivating the attempted Rule 20 joinder is to avoid federal diversity jurisdiction. *Tapscott* requires an "egregious misjoinder" in order for fraudulent joinder to exist and the Court finds such on this record and in view of *Castano*.

In *Tapscott*, the district court severed the nondiverse portion of the case and granted the motion to remand with respect to that portion. In this case, however, such a disposition would result in two nicotine addiction lawsuits: one proceeding in this Court with Ms. Lyons [*14] potentially representing a class of nicotine addicted Alabama smokers, and one proceeding in an Alabama state court with North Carolina plaintiffs purporting to represent nicotine addicted North Carolina smokers. *Rule 21 of the Federal Rules of Civil Procedure* [5] explicitly places it within the sound discretion of this Court to sever and dismiss misjoined parties "on such terms as are just." *Beritiech v. Metropolitan Life Ins. Co.*, 881 F. Supp. 557 (S.D. Ala. 1995); Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 1682. Dismissal of the claims of Wyatt and Eleanor Tuck will be just to all parties involved in this litigation. Defendants will not be deprived of their right to defend themselves in a federal forum through the sophistic pleadings of the plaintiffs. Neither the Alabama nor the North Carolina plaintiffs will be prejudiced by the dismissal as Ms. Lyons will remain the putative class representative of all nicotine addicted Alabama smokers and the Tucks and proposed class of North Carolina plaintiffs were joined for

no legitimate reason in the first instance. Moreover, the Tuck plaintiffs remain free to re-file a similar class action either in a court [*15] in North Carolina or in any other state in which they contend such may be maintained with or without joinder of a resident of that state.

> 5 Rule 21 of the Federal Rules of Civil Procedure provides:
>
> > [HN1] Misjoinder of parties is not ground for dismissal of an action. Parties may be added or dropped by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just. Any claim against a party may be severed and proceeded with separately.

*Fed.R.Civ.P. 21* (emphasis added).

B. The Distributor Defendants

The Court also agrees with the defendants that plaintiffs have attempted to defeat diversity jurisdiction by naming two Alabama distributors, City Wholesale Grocery Company, Inc. and American Candy Corporation [6], and one North Carolina distributor, Thomas & Howard Company of Hickory, Inc, against whom plaintiffs have no possible claim. [7] Although plaintiffs in their complaint as in their respective briefs filed in support of their motion [*16] to remand generally refer to all defendants collectively in conjunction with at least three of their causes of action, namely their claims for fraud and deceit and for breaches of express and implied warranties, there exists no specific factual allegations in the Complaint to support such claims against the distributors. *See,* Defendants' Memorandum in Opposition (Doc. 35) at 7-11, which the Court adopts as its opinion. To the extent plaintiffs might have raised such fraud and breach of warranty claims against the distributors, the Court also concludes that such claims are barred by the applicable two year statute of limitations. *See,* Defendants' Memorandum in Opposition (Doc. 35) at 11-16, which the Court also adopts as its opinion.

> 6 Although plaintiffs avoid the issue, they do not dispute the contention that American Candy Corporation does not distribute tobacco products while an entity known as American Candy and Tobacco Company which does so distribute tobacco products was not named at the time of removal.

1997 U.S. Dist. LEXIS 18365, *

7  The Court also agrees with the defendants that a party fraudulently joined to defeat removal based on federal diversity jurisdiction need not join in or consent to removal but that, in any event, the distributor defendants had so consented in this case. See, Defendants' Surreply (Doc. 41) at 2 and cases cited therein.

[*17]  Although plaintiffs cite no legal support for the proposition, they essentially contend that their alleged conspiracy claim [8] constitutes a catch-all mechanism by which to boot-strap claims against tobacco distributors, who themselves are not alleged to have been involved either in the manufacturing process or in any specific direct contact with any of the plaintiffs, to the alleged misconduct of tobacco manufacturers. It is indeed a novel, albeit ludicrous, proposition.

8  The Court agrees with the defendants that paragraphs 36 through 47, cited by the plaintiffs as their conspiracy claim, neither alleges any agreement between the tobacco manufacturers and the distributors nor alleges any actions taken by any entity other than the tobacco manufacturers acting individually.

Plaintiffs also argue that "The Resolution Of Issues Of Law Regarding The Named Distributor Defendants Is Premature ... [because] discovery has yet to be conducted." Plaintiffs' Reply Memorandum (Doc. 36) at 7. Plaintiffs subsequently [*18] contend that "discovery is essential for the Plaintiffs to fully prepare arguments concerning the jurisdictional status of the defendant distributors." Id. at 7-8. Plaintiffs rely solely on the discretion given the Court in Fed.R.Civ.P. 56 to delay ruling on a motion for summary judgment until the opposing party is permitted to complete all necessary discovery. Plaintiff cites no authority for such fishing expeditions prior to a judicial determination that certain parties have been fraudulently joined in order to avoid or destroy federal diversity jurisdiction. The issues raised as a result of plaintiffs' motion to remand, specifically the manner in which plaintiffs have pled their claims on behalf of North Carolina residents and against distributors and whether the North Carolina plaintiffs and the distributors have been fraudulently joined to avoid federal diversity jurisdiction, are essentially, as plaintiff first acknowledged, legal issues which do not require the conduct of discovery as authorized by Fed.R.Civ.P. 26, et seq. In addition, Fed.R.Civ.P. 11 prohibits the assertion of unfounded claims on behalf of or against any party. If plaintiffs were unable at the time [*19] they formulated their complaint to set forth any specific factual allegations against the distributor defendants upon which could be based any claim of fraud or breach of warranty, there can be no better admission of fraudulent joinder of these de-

fendants. Consequently, the Court concludes that the distributor defendants have been fraudulently joined and are due to be dismissed without prejudice pursuant to Fed.R.Civ.P. 21.

Inasmuch as the Court has concluded that the North Carolina plaintiffs and the distributor defendants are due to be dismissed, complete diversity does exist between the properly joined parties in this litigation and plaintiffs' motion to remand is due to be denied. [9]

9  Although not specifically referred to in the text, the Court's decision on plaintiffs' motion to remand followed consideration of all the briefs filed in support of or opposition to the motion, including the various supplemental briefs. See e.g., Docs. 53, 55, 57 and 59.

MOTIONS TO DISMISS

The Court has also considered [*20] the motions (Docs. 17 and 21) filed by B.A.T. Industries, p.l.c. (B.A.T. Industries) and the Tobacco Institute, Inc. (Tobacco Institute) to dismiss for lack of personal jurisdiction, together with plaintiffs' responses in opposition thereto (Docs. 37 and 38), the reply briefs of these defendants (Docs. 41 and 46), and the various supplemental filings of the moving and opposing parties (Docs. 39, 46, 54, 56, 60, 61 and 63). To the extent these defendants have moved the Court for leave to file supplemental authority, i.e. Docs. 60 as duplicative of 61 and 63, such motions are **GRANTED**.

Upon consideration of these arguments, the Court first concludes that the plaintiffs have carried their burden to demonstrate that the Tobacco Institute has sufficient minimum contacts with the State of Alabama to satisfy the requirements of either the Due Process Clause or Alabama's Long-Arm Statute. Consequently, the Tobacco Institute's motion to dismiss is due to be denied.

In conjunction with the Court's consideration of B.A.T Industries motion to dismiss, the Court first concludes that plaintiffs' motion (Doc. 50) to strike B.A.T. Industries' Reply brief (Doc. 46) is due to be denied. In addition, [*21] the Court has reviewed the objections (Doc. 44) filed by defendant Brown & Williamson Tobacco Corporation (B&W) to certain exhibits submitted by the plaintiffs to their Memorandum (Doc. 38) in Opposition to B.A.T. Industries' motion to dismiss and concludes, as did the Court in Smith v. Brown & Williamson Tobacco Corp., 1996 U.S. Dist. LEXIS 19669, No. 96-0459- CV-W-3, 1996 WL 751399 (W.D. Mo. Dec. 19, 1996), that "there is no need to expend the parties' (and judicial) resources to determine whether these documents are privileged[;] the documents will be considered for purposes of [B.A.T Industries'] motion without ruling or waiving B&W's objections."

1997 U.S. Dist. LEXIS 18365, *

Finally, the Court concludes, for the reasons set forth in B.A.T. Industries' motion to dismiss (Doc. 17), as thereafter supplemented (Docs. 46 and 54), and in *Smith v. Brown & Williamson Tobacco Corp., 1996 U.S. Dist. LEXIS 19669*, No. 96-0459- CV-W-3, 1996 WL 751399 (W.D. Mo. Dec. 19, 1996), that plaintiffs have failed to carry their burden to demonstrate that B.A.T. Industries has sufficient minimum contacts with the State of Alabama to satisfy the requirements of either the Due Process Clause or Alabama's Long-Arm Statute. [10] Consequently, B.A.T. Industries' motion to dismiss [*22] is due to be granted.

> 10    The Court has found it unnecessary to rely upon any of the redacted portions of the B.A.T. Industries' brief which was filed under seal.

CONCLUSION AND ORDER

As stated above, the Court concludes and it is therefore **ORDERED** as follows:

1. Plaintiffs' motion to remand (Doc. 12) is due to be and is hereby **DENIED**.

2. Plaintiffs Wyatt and Eleanor Tuck are due to be and are hereby **DISMISSED without prejudice** pursuant to *Fed.R.Civ.P. 21*.

3. The distributor defendants, City Wholesale Grocery Company, Inc., American Candy Corporation and Thomas & Howard Company of Hickory, Inc, are due to be and are hereby **DISMISSED without prejudice** pursuant to *Fed.R.Civ.P. 21*.

4. The motion to dismiss (Doc. 17) filed by B.A.T. Industries, p.l.c. is due to be and is hereby **GRANTED**.

5. The motion to dismiss (Doc. 21) filed by the Tobacco Institute, Inc. is due to be and is hereby **DENIED**.

As also stated above, it is **FURTHER ORDERED** that plaintiffs' motions (Docs. [*23] 49 and 50) for oral arguments on their motion to remand and to strike B.A.T. Industries' reply brief are hereby **DENIED**; the motions of B.A.T. Industries and the Tobacco Institute to file supplemental materials (Docs. 53, 54, 55, 60, 61 and 63) are hereby **GRANTED**; and the objections of defendant B & W (Doc. 44) to the exhibits submitted by the plaintiffs in opposition to B.A.T. Industries' motion to dismiss are **OVERRULED** only to the extent they were considered in connection with B.A.T. Industries' motion to dismiss. The Court will not otherwise rule on B&W's objections and the same shall therefore be presently considered MOOT.

DONE this 30th day of September, 1997.

W. B. Hand

SENIOR DISTRICT JUDGE

16

UNITED STATES  DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MURPHY

                              Plaintiff(s),                    No. C 06-04794 MHP

        v.
                                                        **MEMORANDUM & ORDER**
MERCK & COMPANY INC. ET AL                             **Re: Motion to Stay**

                              Defendant(s).
_____/

On April 28, 2006, plaintiff filed a complaint against MERCK & COMPANY INC. ET AL in the Superior Court of the State of California for the County of San Francisco. The complaint seeks damages allegedly resulting from plaintiff's use of Vioxx, a drug manufactured by Merck. On August 8, 2006, Merck removed the action to this court on the basis of diversity jurisdiction. Presently before the court is Merck's motion to stay the action pending its transfer to the multidistrict litigation ("MDL") proceeding that has been established to deal with the large volume of Vioxx-related cases in federal court.

The power to stay proceedings in the interest of judicial economy is an inherent power left to the discretion of the court. Landis v. North Am. Co., 299 U.S. 248, 254 (1936). Upon entry of this order, Merck's motion to stay shall be deemed submitted. Unless plaintiff timely files a motion to remand, Merck's motion to stay will be GRANTED and further proceedings in this action shall be STAYED pending transfer of the action to MDL Proceeding No. 1657.

IT IS SO ORDERED.

Dated: September 22, 2006

                                              MARILYN HALL PATEL
                                              United States District Court Judge
                                              Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

17

1

2

3

4

5        IN THE UNITED STATES DISTRICT COURT

6        FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8    FRANKIE PARKER,                           No. C 07-2333 SI

9            Plaintiff,                        **ORDER GRANTING DEFENDANT**
                                               **MERCK & COMPANY, INC.'S MOTION**
10        v.                                   **TO STAY PROCEEDINGS PENDING A**
                                               **DECISION ON TRANSFER BY THE**
11   MERCK CO INC., et al.,                    **JUDICIAL PANEL ON MULTIDISTRICT**
                                               **LITIGATION**
12           Defendants.
                                    /
13

14        Various motions are scheduled for a hearing on June 29, 2007. Pursuant to Civil Local Rule 7-

15   1(b), the Court determines that the matters are appropriate for resolution without oral argument, and

16   VACATES the hearing. For the reasons set forth below, the Court GRANTS defendant Merck's motion

17   to stay all proceedings in this case pending a final decision on transfer by the Judicial Panel on

18   Multidistrict Litigation. In the event Panel does not transfer this action, the Court will rule on plaintiff's

19   motion for remand and the medical defendants' motion to dismiss.

20

21                                   **DISCUSSION**

22        This case is one of thousands involving Vioxx® currently pending in federal court. Plaintiff

23   originally filed this case in the Superior Court for the County of Alameda against defendants Merck &

24   Co. Inc., J.H. Guadagni, M.D., Visalia Medical Clinic Inc., and Does 1 - 20. The complaint seeks

25   damages allegedly resulting from plaintiff's use of Vioxx, a drug manufactured by Merck. On April 30,

26   2007, Merck removed the action to this Court on the basis of diversity jurisdiction. The Notice of

27   Removal asserts that defendants Guadagni and Visalia Medical Clinic were fraudulently joined.

28        On May 21, 2007, the Judicial Panel on Multidistrict Litigation issued a Conditional Transfer

*United States District Court*
*For the Northern District of California*

<div style="vertical: left margin">United States District Court<br>For the Northern District of California</div>

1   Order conditionally transferring this case to the Vioxx MDL proceeding pending before Judge Fallon

2   in the Eastern District of Louisiana, *In re VIOXX Prods. Liab. Litig.*, MDL No. 1657. *See* Thomas Decl.

3   Ex. A. Plaintiff has filed a notice of opposition to the conditional transfer order, and that matter is

4   currently being addressed by the Panel. Presently before this Court are defendant Merck's motion to

5   stay the action pending its transfer to the MDL proceeding, plaintiff's motion for remand to state court,

6   and a motion to dismiss filed by defendants Guadagni and Visalia Medical Clinic.

7          The Court's power to stay proceedings is "incidental to the power inherent in every court to

8   control the disposition of the causes on its docket with economy of time and effort for itself, for counsel,

9   and for litigants." *Landis v. North American Co.*, 299 U.S. 248, 254 (1936). The Court finds that a stay

10  is in the interest of judicial economy and consistency because there are a number of cases presenting

11  issues similar to this action already pending before Judge Fallon. Merck asserts, and plaintiff does not

12  dispute, that many of the cases transferred to the Vioxx MDL proceeding were also removed from

13  California state court on the basis of fraudulent joinder. *See* Thomas Reply Decl. ¶¶ 2-3. If the Panel's

14  transfer ruling becomes effective, Judge Fallon can address these issues in a uniform manner. Plaintiff's

15  one page opposition asserts that a stay is not warranted because this case is "at the beginning stages."

16  However, this fact only weighs in favor of a stay if this case is ultimately transferred to the MDL

17  proceeding.

18         For the foregoing reasons and good cause shown, the Court GRANTS Merck's motion to stay

19  this action (Docket No. 16), and DEFERS ruling on plaintiff's motion for remand and the medical

20  defendants' motion to dismiss. (Docket Nos. 2 and 22).

21

22         **IT IS SO ORDERED.**

23

24  Dated: June 26, 2007

25                                                                    SUSAN ILLSTON
                                                                      United States District Judge

26

27

28

                                                     2

18

Westlaw.

Not Reported in F.Supp.2d                                          Page 1
Not Reported in F.Supp.2d, 2003 WL 25598915 (C.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d)**

In reRezulinLitigation
C.D.Cal.,2003.
Only the Westlaw citation is currently available.
United States District Court,C.D. California.
In reREZULINLITIGATION
Diane SKINNER; and Diane Ybarra, Plaintiffs,
v.
WARNER-LAMBERT CO.; Pfizer Inc.; Jerrold
Olefsky; McKesson Corp., et al. Defendants.
**No. CV 03-1643-R(RZX).**

April 28, 2003.

Robert Barnes, for Defendants, Warner-Lambert
Company and Pfizer Inc.

ORDER DENYING PLAINTIFFS' MOTION FOR
REMAND

REAL, J.
*1 Defendants removed this action from state court to
this Court alleging diversity jurisdiction. Defendants
asserted that Jerrold Olefsky and McKesson Corp.,
both of whom are California residents, were
fraudulently joined. Plaintiffs moved to remand to
state court. The motions came on for hearing by the
Court on April 21, 2003.

Having considered the motions and other documents
in support of and in opposition to the motions, having
heard the arguments of counsel, and being fully
advised in the matter, the Court denies the motion.

The Court finds that Dr. Jerrold Olefsky
("Dr.Olefsky"), a patent-holder and clinical
investigator owed no legal duty to any of the
plaintiffs, and, therefore, there is no possibility that
the plaintiffs can prove a cause of action against Dr.
Olefsky. Thus, Dr. Olefsky must be disregarded for
purposes of determining federal diversity jurisdiction.

The Court further finds that there is no possibility
that plaintiffs could prove a cause of action against
McKesson, an entity which distributed this FDA-
approved medication to pharmacists in California.
Pursuant to comment k of the Restatement (Second)
of Torts Section 402A and California law following
comment k, a distributor of a prescription drug is not
subject to strict liability.

Accordingly, this Court has diversity jurisdiction
over each of these actions. The motion to remand is
denied.

IT IS SO ORDERED.

C.D.Cal.,2003.
In re Rezulin Litigation
Not Reported in F.Supp.2d, 2003 WL 25598915
(C.D.Cal.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

19

LEXSEE 2007 U.S. DIST. LEXIS 45809



Cited
As of: Dec 21, 2007

THERESA WALDON, Plaintiff, v. NOVARTIS PHARMACEUTICALS CORP.,
Defendant.

No. C07-01988 MJJ

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF
CALIFORNIA

2007 U.S. Dist. LEXIS 45809

June 14, 2007, Decided
June 18, 2007, Filed

CASE SUMMARY:

PROCEDURAL POSTURE: Plaintiff filed a motion to
remand after defendants, pursuant to *28 U.S.C.S. §
1441(b)*, removed plaintiff's action that alleged harm
from an allergic reaction suffered as a result of the inges-
tion of the prescription medication Trileptal.

OVERVIEW: Plaintiff, a Georgia resident, filed suit
against defendants in California state court. Prior to ser-
vice upon any of the defendants, one defendant noticed
removal to federal court. Plaintiff filed the motion to
remand on the grounds that there was not complete di-
versity. The court noted that the language of *28 U.S.C.S.
§ 1441(b)* provided that a case could be removed on di-
versity grounds only if none of the parties in interest
properly joined and served was a citizen of the state in
which the action was sought. The case was filed in Cali-
fornia, and the parties to the action did not dispute that
one defendant was a citizen of California. However, the
court found that that defendant's citizenship should not
be considered because of improper joinder and service of
process at the time of removal. The court determined that
on all grounds, removal was appropriate.

OUTCOME: The court denied plaintiff's motion to re-
mand.

LexisNexis(R) Headnotes

*Civil Procedure > Jurisdiction > Subject Matter Juris-
diction > Jurisdiction Over Actions > General Overview
Civil Procedure > Removal > Elements > General
Overview*
[HN1] Pursuant to *28 U.S.C.S. § 1441(a)*, a defendant in
a civil action may remove a case from state court to fed-
eral district court if the district court has subject matter
jurisdiction over the case. The district court has subject
matter jurisdiction over a case if there is diversity of citi-
zenship between the parties or if the action is founded on
a claim arising under the Constitution, laws, or treaties of
the United States. *28 U.S.C.S. § 1441(b); 28 U.S.C.S. §
1331*. *Section 1441(b)* provides that if federal jurisdiction
is based on diversity of citizenship, removal is available
only if no defendant is a citizen of the forum state. *28
U.S.C.S. § 1441(b)*. As the party seeking to remove the
action, the defendant bears the burden of establishing
that subject matter jurisdiction exists. Because the court
strictly construes the removal statute against removal, if
there is any doubt as to the existence of federal jurisdic-
tion, the court should remand the matter to state court.

*Civil Procedure > Removal > Proceedings > General
Overview*
[HN2] The procedure for removal is set forth in *28
U.S.C.S. § 1446*. This section provides that a defendant
seeking to remove a civil action to federal court must file
a notice identifying the basis for removal within 30 days
after the receipt by the defendant, through service or oth-
erwise, of a copy of the initial pleading setting forth the

2007 U.S. Dist. LEXIS 45809, *

claim for relief upon which such action or proceeding is based. *28 U.S.C.S. § 1446(b)*.

*Civil Procedure > Removal > Proceedings > General Overview*

[HN3] Pursuant to *28 U.S.C.S. § 1447(c)*, a plaintiff may challenge the propriety of removal based on procedural defects and move to remand a case to state court within 30 days after the filing of the notice of removal.

*Civil Procedure > Removal > Basis > Diversity of Citizenship*

[HN4] The language of *28 U.S.C.S. § 1441(b)* provides that a case may be removed on diversity grounds only if none of the parties in interest properly joined and served as defendants is a citizen of the state in which such action is brought. *28 U.S.C.S. § 1441(b)*.

*Governments > Legislation > Interpretation*

[HN5] A court may depart from the plain language of a statute only under rare and exceptional circumstances.

**COUNSEL:** [*1] For Theresa Waldon, Plaintiff: Robert F. Clarke, LEAD ATTORNEY, Lowell W. Finson, Phillips & Associates, Phoenix, AZ.

For Novartis Pharmaceuticals Corporation, a Delaware corporation, Novartis Corporation, a New York corporation, Defendants: Andrew Wood Ingersoll, LEAD ATTORNEY, James A. Bruen, Farella Braun and Martel LLP, San Francisco, CA.

For McKesson Corporation, a Delaware corporation, Defendant: Monali Subhash Sheth, Farella Braun & Martel LLP, San Francisco, CA.

**JUDGES:** MARTIN J. JENKINS, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** MARTIN J. JENKINS

**OPINION**

**ORDER DENYING PLAINTIFF'S MOTION TO REMAND**

**INTRODUCTION**

Before the Court is Plaintiff Theresa Waldon's ("Plaintiff" or "Waldon") Motion to Remand. [1] Defendant Novartis Pharmaceuticals Corporation ("NPC") and Novartis Corporation (collectively, "Novartis") oppose

the Motion to Remand. [2] For the following reasons, the Court **DENIES** Plaintiff's Motion to Remand.

   1 Docket No. 8

   2 Docket No. 14

**FACTUAL & PROCEDURAL BACKGROUND**

On March 28, 2007, Plaintiff Theresa Waldon, a resident of Georgia, filed suit in California state court against Defendants NPC, Novartis, and McKesson Corporation ("McKesson") (collectively, "Defendants"). NPC is incorporated in Delaware, with its [*2] principal place of business in New Jersey. Novartis is incorporated in New York, with its principal place of business in New York. McKesson is incorporated in Delaware, with its alleged principal place of business in California. Plaintiff alleged harm from an allergic reaction suffered as a result of the ingestion of the prescription medication Trileptal.

On April 9, 2007, prior to service upon any of the Defendants, Novartis noticed removal to federal court pursuant to *28 U.S.C. § 1441(b)*. Subsequently, on April 12, 2007, Plaintiff properly served all Defendants. On May 4, 2007, Plaintiff filed a Motion to Remand on the grounds that there was not complete diversity. In opposition, Novartis asserts that McKesson's citizenship should not be considered, as they were not properly joined and served at the time of removal. Novartis further argues that McKesson is fraudulently joined, and that this Court should ignore McKesson's citizenship in its removal analysis.

**LEGAL STANDARD**

[HN1] Pursuant to *28 U.S.C. § 1441(a)*, a defendant in a civil action may remove a case from state court to federal district court if the district court has subject matter jurisdiction over the case. The district court has [*3] subject matter jurisdiction over a case if there is diversity of citizenship between the parties or if the action is founded on a claim arising under the Constitution, laws, or treaties of the United States. *28 U.S.C. § 1441(b)*; *28 U.S.C. § 1331* (federal question); *28 U.S.C. § 1332* (diversity jurisdiction); *Ethridge v. Harbor House Restaurant, 861 F.2d 1389, 1393 (9th Cir. 1988)*. Section *1441(b)* provides that if federal jurisdiction is based on diversity of citizenship, removal is available only if no defendant is a citizen of the forum state. *28 U.S.C. § 1441(b)*. As the party seeking to remove the action, the defendant bears the burden of establishing that subject matter jurisdiction exists. *Ethridge, 861 F.2d at 1393*. Because the Court strictly construes the removal statute against removal, if there is any doubt as to the existence of federal jurisdiction, the Court should remand the mat-

ter to state court. *See Gaus v. Miles, Inc.,* 980 F.2d 564, 566 (9th Cir. 1992).

[HN2] The procedure for removal is set forth in *28 U.S.C. § 1446*. This section provides that a defendant seeking to remove a civil action to federal court must file a notice identifying the basis for removal "within 30 days after [*4] the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." *28 U.S.C. § 1446(b).*

[HN3] Pursuant to *28 U.S.C. § 1447(c),* a plaintiff may challenge the propriety of removal based on procedural defects and move to remand a case to state court within 30 days after the filing of the notice of removal. *See N. Cal. Dist. Council of Laborers v. Pittsburg-Des Moines Steel Co.,* 69 F.3d 1034, 1037 (9th Cir. 2003). [3]

> 3 Untimely removal is a procedural, rather than
> a jurisdictional, defect. *Maniar v. Fed. Deposit
> Ins. Corp.,* 979 F.2d 782, 785 (9th Cir. 1992).

## ANALYSIS

### A. Does Removal Prior to Service of Any Defendant Satisfy *28 U.S.C. § 1441(b)*?

Because Plaintiff chose to file in state court and Novartis noticed removal, the dispute over ' this Court's jurisdiction arises under the right to removal governed by *28 U.S.C. § 1441(b).* Plaintiff asks the Court to remand on the basis that *Section 1441(b)* prohibits removal if a party "joined and served" shares common citizenship with the venue in which the suit is filed. Plaintiff argues that to hold otherwise would sanction a "procedural trap" and [*5] create a "very strange anomaly." In opposition, Novartis urges the Court to adhere to a strict interpretation of the statutory language of *Section 1441(b).* Novartis asserts that because McKesson remained an unserved defendant at the time of removal, it should not be considered "properly joined and served" as specified by *Section 1441(b),* and as such, their citizenship should not bear on this Court's consideration of the validity of the removal.

[HN4] The language of *28 U.S.C. § 1441(b)* provides that a case may be removed on diversity grounds "only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." *28 U.S.C. § 1441(b).* This case was filed in California state court, and the parties to this action do not dispute that McKesson is a citizen of California. Thus, the remaining question is whether McKesson's citizenship should be taken into account for purposes of removal. If McKesson is included, *Section 1441(b)* would bar removal as McKesson's California citizenship aligns with the California court in which suit

was filed. If McKesson is excluded, removal under *Section 1441(b)* would be permitted, as complete diversity [*6] existed at the time of removal. For the reasons set forth below, the Court finds that McKesson's citizenship should not be considered because McKesson was not properly joined and served at the time of removal.

### B. McKesson Was Not Properly "Joined and Served" At the Time of Removal.

As explained below, the Court finds that McKesson was not properly "joined and served" at the time of removal as required by *28 U.S.C. § 1441(b).*

District Courts are split as to the issue of unserved defendants removing prior to service of any defendants. This Court finds guidance from the court's reasoning in *City of Ann Arbor Employees ' Retirement Sys. v. Gecht,* 2007 U.S. Dist. LEXIS 21928, 2007 WL 760568 (N.D. Cal. March 9, 2007). In *Gecht,* the court addressed a removal noticed by an unserved defendant prior to service of any defendants. *Id.* 2007 U.S. Dist. LEXIS 21928 *[WL] at *1.* The court in *Gecht* was sympathetic to the plaintiff's arguments, which align with those of the Plaintiff in the instant case, noting that they possessed "a great deal of appeal." *Id.* 2007 U.S. Dist. LEXIS 21928 *[WL] at *6.* However, the court found the plain language of *Section 1441(b)* persuasive, recognizing that[HN5] "a court may depart from the plain language of a statute only under 'rare and exceptional circumstances.'" *Id.* [*7] *(quoting Demarest v. Manspeaker,* 498 U.S. 184, 111 S. Ct. 599, 112 L. Ed. 2d 608 (1991)). *Gecht* found that a court could only "look beyond the express language of a statute where a literal interpretation would thwart the purpose of the overall statutory scheme or lead to an absurd or futile result." *Id.* (quoting *Albertson 's Inc. v. Commissioner of Internal Revenue,* 42 F.3d 537, 545 (9th Cir. 1994); *see also Delgado v. Shell Oil Co.,* 231 F.3d 165, 177 (5th Cir. 2000) (finding that a lack of service was no bar to removal). The Court finds the reasoning of *Gecht* to be persuasive.

Plaintiff urges otherwise and requests this Court to find that "public policy and fundamental fairness should prevail over an overly technical reading..." (Pl.'s Reply at 4:21-22.) Plaintiff cites *Holmstrom v. Harad,* 2005 U.S. Dist. LEXIS 16694, 2005 WL 1950672 (N.D. Ill. 2005) in support of her argument that the exclusion of McKesson would result in an unfair outcome. Beyond descriptions of potentially unfair results arising from a plain text interpretation of *Section 1441(b)* and the *Holmstrom* court's analysis of the effects of service on removal, [4] Plaintiff does not cite any authority to suggest a different legislative purpose than that apparent from the text of the statute. [*8] The court in *Gecht* speaks to this eloquently in its criticism of *Holmstrom:*

[I]f Congress had wanted to ensure that removal would not be appropriate until it was clear that Plaintiff was trying to prevent removal by speciously naming resident defendants, Congress could have provided that no removal petition could be filed until one or more nonresident defendant had been joined and served. The statute also could have been written to give a plaintiff, *e.g.,* 30 or 60 days to effect service before permitting a defendant to remove.

*Gecht, 2007 U.S. Dist. LEXIS 21928, 2007 WL 760568 at *9.*

4    While this Court recognizes that the *Holmstrom* court presents an appealing interpretation of *Section 1441(b)*, this Court does not find *Holmstrom's* justification for departing from the statutory language persuasive.

Because this Court finds no compelling reason to depart from the plain text of *section 1441(b)*, the Court finds that McKesson's citizenship has no bearing on the sufficiency of the removal at its time of notice.

Additionally, because the Court has already determined, on other grounds, that removal is appropriate, the Court need not reach the merits of the Defendant's arguments addressing improper joinder of McKesson. [5]

5    Plaintiff [*9] asks the Court to "realign" the parties to conform with "their true interests in the litigation." (Pl.'s Mot. to Remand. p. 13.) Realignment is appropriate when "no actual, substantial controversy exists between the parties on one side of the dispute and their named opponents." *32A Am. Jur. 2d Federal Courts § 787.* The potentially similar interests of Novartis and McKesson in the instant action have no bearing on realignment, as they are both named as defendants.

## CONCLUSION

For the foregoing reasons, the court **DENIES** Plaintiff's Motion to Remand.

**IT IS SO ORDERED.**

Dated: June 14, 2007

MARTIN J. JENKINS

UNITED STATES DISTRICT JUDGE

20

Westlaw.

Not Reported in F.Supp.2d                                                                          Page 1
Not Reported in F.Supp.2d, 2001 WL 34013629 (N.D.Ala.)
**(Cite as: Not Reported in F.Supp.2d)**

**H**
Wiggins v. American Home Products Corp.
N.D.Ala.,2001.
Only the Westlaw citation is currently available.
United States District Court, N.D. Alabama,
Northwestern Division.
Phillip WIGGINS, et al., Plaintiffs,
v.
AMERICAN HOME PRODUCTS
CORPORATION, et al., Defendants.
No. CV-01-J-2303-NW.

Oct. 2, 2001.

*MEMORANDUM OPINION and ORDER*
JOHNSON, J.
**\*1** This action is before the court on the plaintiffs' motion to remand (doc. 5) and defendant Redmont Pharmacy, Inc.'s motion to dismiss (doc. 3). The plaintiffs have filed a supplemental brief in support of their motion to remand.

The plaintiffs filed this action in the Circuit Court of Franklin County, Alabama under the Alabama Extended Manufacturer's Liability Doctrine and other state law theories to recover for injuries sustained by Andrew Wiggins, the child of the plaintiffs, after his ingestion of Dimetapp, which contains Phenylpropanolamine ("PPA"). Plaintiffs motion to remand at 1. The plaintiffs assert that Deborah Wiggins purchased this product, manufactured by defendant American Home Products Corporation ("American Home"), from defendant Redmont Pharmacy ("Redmont"). Complaint at ¶ 54. This product was distributed as an over-the-counter remedy. Complaint at ¶ 4. No allegation that the prescription form of this drug was purchased is made by plaintiffs, nor do they assert that the product was purchased based on the recommendation of a pharmacist at Redmont.

American Home filed a Notice of Removal (doc. 1), asserting that complete diversity exists among all properly joined parties as defendant Redmont was fraudulently joined. Notice of Removal at ¶ ¶ 3, 7. American Home also asserts that the amount in controversy exceeds $75,000.00 exclusive of interest and costs, giving this court jurisdiction pursuant 28 U.S.C. § 1332. Notice of Removal at ¶ 3. The plaintiffs do not claim that the amount in controversy is less than the jurisdictional minimum.

When fraudulent joinder is alleged, the Eleventh Circuit has placed on the defendant the burden of showing that the plaintiff has no possible cause of action under Alabama law, based upon the allegations of the complaint.*Cabalceta v. Standard Fruit Company,* 883 F.2d 1553, 1562 (11th Cir.1989) (where district court found "no possibility" that plaintiffs would be able to state a colorable cause of action against the resident defendant). The removing party bears the burden of proving that the joinder of the resident defendant was fraudulent. *Pacheco de Perez v. AT & T Co .,* 139 F.3d 1368, 1373 (11th Cir.1998); *Triggs v. John Crump Toyota, Inc.,* 154 F.3d 1284 (11th Cir.1998)."Joinder has been deemed fraudulent in two situations. The first is where there is no possibility that the plaintiff can prove a cause of action against the resident (non-diverse) defendant. The second is when there is outright fraud in the plaintiff's pleading of jurisdictional facts."*Triggs,* 154 F.3d at 1287. "The burden of the removing defendant is a 'heavy one.' To determine whether the case should be remanded, the district court must evaluate the factual allegations in the light most favorable to the plaintiff and must resolve any uncertainties in favor of the plaintiff."*Crowe v. Coleman,* 113 F.3d 1536, 1538 (11th Cir.1997).

American Home asserts that the plaintiffs cannot prove a cause of action against Redmont under the facts before this court. American Home states that Redmont is a "healthcare provider" as that term is used in the Alabama Medical Liability Act, § 6-5-542, Alabama Code 1975, as amended. Notice of Removal at ¶ 9. As such, the only cause of action the plaintiff may bring against Redmont is for a breach of the standard of care. Notice of Removal at ¶ ¶ 9, 10. The plaintiff, however, sues under the AEMLD, as well as stating claims for failure to warn, breach of warranty, negligence, wantonness, fraud, misrepresentation, and suppression against both defendants. Plaintiff's motion to remand at 2. No claim for breach of the standard of care is stated. *Id.*

**\*2** The plaintiffs argue that *Cackowski v. Wal-Mart Stores, Inc.,* 767 So.2d 319 (Ala.2000), on which American Home relies, only addressed the issue of whether a pharmacy is a "health care provider" when a suit has been filed for negligent filling of a prescription.[FN1]Plaintiff's motion to remand at 2. The

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 34013629 (N.D.Ala.)
(Cite as: Not Reported in F.Supp.2d)

plaintiff thus states it may bring a product liability action against Redmont as part of the chain of distribution and commerce, and not health care. Plaintiff's motion to remand at 3.

> FN1. The plaintiff relies on the case of *Skelton v. Druid City Hospital,* 459 So.2d 818 (Ala.1984) for the proposition that a pharmacy is a "seller" of the product it distributes under the AEMLD because a hospital is a "seller" of products it distributes pursuant to U.C.C. § 7-2-135. The plaintiff seems to be arguing that the pharmacy here, because it distributed a prepackaged, over-the-counter drug, should be treated as any other retail store selling someone else's product. The court considers the motion to remand under this allegation.

To establish liability under the AEMLD, the plaintiff must prove:
(1) he suffered injury or damage to himself or his property by one who sells a product in a defective condition unreasonably dangerous to the plaintiff as the ultimate user or consumer, if:
(a) the seller is engaged in the business of selling such a product, and
(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

*Casrell v. Altec Industries, Inc.* 335 So.2d 128, 132-33 (Ala.1976). The affirmative defense of lack of causal relation is available in AEMLD cases.*Brock v. Baxter Healthcare Corp.,* 96 F .Supp.2d 1352, 1356 (S.D.Ala.2000).

The Eleventh Circuit has stated that if there is *even a possibility* that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to state court. *Triggs,* 154 F.3d at 1287. Thus, the question before this court is whether, in the light most favorable to the plaintiff, the plaintiff has plead facts sufficient to state a claim against Redmont under the AEMLD. If not, Redmont has been fraudulently joined.

"As long as there is a causal relationship between the defendant's conduct and the defective product, he is held liable because he has created an unreasonable risk of harm."*Casrell,* 335 So.2d at 132. The plaintiffs seek to impose liability upon Redmont as a

distributor. Given this stance, the court notes that the fact Redmont is a pharmacy, run by a pharmacist, is not central to the plaintiffs' claim. Unlike prescription medication, over the counter Dimetapp is available not only from pharmacies but from grocery stores, discount stores, and in some cases convenience stores. As such, given plaintiffs' claim that Redmont is sued as a distributor, plaintiffs' can state no greater claim against Redmont then if they purchased the Dimetapp from their local grocery store.[FN2]In other words, the court is lead to the conclusion that, while the plaintiffs contend that the owner of Redmont pharmacy, as a pharmacist, should have had knowledge superior to theirs about Dimetapp, this is not why they are suing him. Rather, to state a claim under the AEMLD, the plaintiffs sue Redmont as a retail store, and not a health care provider.

> FN2. The court thus considers whether the owner of a grocery store could be sued under the plaintiffs' theory, and concludes not. The court also considered that, under the plaintiffs' theory that Redmont is a distributor, Redmont, or any business for that matter, could be sued for the sale of any of the products it sells. For example, many pharmacies also sell garden hoses. Under the plaintiffs' theory, a suit against a pharmacy as a distributor of garden hoses would be allowed to stand. The court notes that this quickly leads to an illogical world of lawsuits where all businesses open themselves to liability for the sale of any product.

The cases upon which plaintiffs rely are distinguishable. In *Kelly v. Trigg Enterprises, Inc.,* 605 So.2d 1185 (Ala.1992), the Court held that summary judgment was inappropriate for the seller of a product because of the possibility that the jury could find a product sold as an air freshener was really intended for use as an inhalent, and thus the seller was not entitled to summary judgment on the grounds the plaintiff misused the product in using it as an inhalent. *Id.* at 1191-1192.In *Dillard v. Pettway,* 719 So.2d 188 (Ala.1998), the seller of smoke alarms did not stock them for sale. Rather, the seller purchased the smoke detector for the consumer, opened it, explained how to use it and where to install it. *Id.* at 191.

*3 In their supplemental brief, the plaintiffs also cite to *Pace v.. Parke Davis,* CV 00-J-3046-NW, where this court held that a doctor who prescribed a

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 34013629 (N.D.Ala.)
(Cite as: Not Reported in F.Supp.2d)

medication for a patient could possibly be found liable for injuries based on the taking of that prescription drug. The plaintiffs there alleged that after prescribing the medication in question, the doctor failed to monitor his patient. This too is distinguishable from the case before this court, where all the plaintiffs allege is that they purchased the product in question from Redmont.[FN3]

> FN3. The court finds that the plaintiff's allegations of knowledge about PPA are stated in the singular and clearly refer to the manufacturer of Dimetapp, not the retail seller of this product. *See* Complaint at ¶ ¶ 41-51.

In consideration of the foregoing, the court finds no causal relationship between Redmont's sale of the product and the plaintiffs' injuries. The plaintiffs allege no action by Redmont as a retail store which contributed to the harm alleged. *See Baxter,* 96 F.Supp.2d at 1358;*Wakeland v. Brown & Williamson Tobacco Corp.,* 996 F.Supp. 1213, (S.D.Ala.1998). This court notes that this case is factually similar to *Wakeland v. Brown & Williamson Tobacco Corp.,* 996 F.Supp. 1213 (S.D.Ala.1998). That court considered in some depth each element of the lack of casual relation defense. *Id* at 1219.In respect to "superior opportunity to inspect" the product, the court noted that such opportunity must be a meaningful one. "If the defect was latent and could not be discovered by either consumer or distributor by a reasonable inspection, neither had a superior opportunity ... (citations omitted).*Id* at 1220.The plaintiffs make no allegation of a specific, reasonable method by which Redmont could have discovered the allegedly defective nature of Dimetapp or PPA in general.[FN4]

> FN4. For example, no allegation that Redmont Pharmacy did testing or analysis on the product in question is made. No allegation that Redmont Pharamcy had knowledge that PPA could cause the alleged injuries is made. In fact, the plaintiffs make no specific allegation against Redmont Pharmacy at all in any of the eight counts of the complaint.

The plaintiffs have failed to state a cognizable claim against Redmont that could be pursued under the AEMLD. As such, this court finds that the joinder of resident defendant Redmont was fraudulent and the

motion to remand must be denied. *See Triggs,* 154 F.3d at 1287;*Wakeland,* 996 F.Supp at 1221 ("If plaintiffs were unable at the time they formulated their complaint to set forth any specific factual allegations against the distributor defendants upon which could be based any claim for fraud or breach of warranty, there can be no better admission of fraudulent joinder").

Having found that the plaintiff has stated failed to a claim against the non-diverse defendant, this court must disregard the citizenship of Redmont and thus concludes that complete diversity exists. The amount in controversy exceeds the sum of $75,000.00 exclusive of interests and costs. As such, this court has subject matter jurisdiction over this civil action pursuant to U.S. Const. Art III, § 2 and 28 U.S.C. § 1332(a).

It is therefore ORDERED by the court that the plaintiffs' motion to remand (doc. 5) be and hereby is DENIED. The defendant Redmont's motion to dismiss (doc. 3) is GRANTED.

N.D.Ala.,2001.
Wiggins v. American Home Products Corp.
Not Reported in F.Supp.2d, 2001 WL 34013629 (N.D.Ala.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.